1  WHATLEY KALLAS, LLC
   Alan M. Mansfield (Of Counsel)
2  (SBN 125998)
   amansfield@whatleykallas.com
3  580 California Street, 16th Floor
   San Francisco, CA 94104
4  Tel: (415) 860-2503
   Fax: (888) 331-9633
5
   10200 Willow Creek Rd., Ste 160
6  San Diego, CA 92131
   Tel: (619) 308-5034
7  Fax: (855) 274-1888

8  WHATLEY KALLAS, LLC
   Joe J. Whatley, Jr.
9  (To Apply *Pro Hac Vice*)
   380 Madison Avenue, 23rd Floor
10 New York, NY 10017
   Tel: (212) 447-7060
11 Fax: (800) 922-4851

12 Attorneys for Plaintiff
   (Additional Counsel Appeal on Signature Page)

FILED
AUG 2 4 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

13                 **UNITED STATES DISTRICT COURT**

14        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND COURTHOUSE**

15 SANDRA McKINNON, individually and on        Case No. **C12-4457**    DMR
   behalf of all others similarly situated,
16                                             **CLASS ACTION**
17              Plaintiffs,
                                               CLASS ACTION COMPLAINT FOR
18       v.                                    VIOLATION OF:

19 DOLLAR THRIFTY AUTOMOTIVE        1) Calif. Bus. & Prof. Code § 17200, *et seq.* –
   GROUP, INC. d/b/a DOLLAR RENT A      Unlawful Business Acts and Practices;
20 CAR;                            2) Calif. Bus. & Prof. Code § 17200, *et seq.* –
   DOLLAR RENT A CAR, INC.;            Unfair Business Acts and Practices;
21 DTG OPERATIONS, INC. d/b/a DOLLAR  3) Calif. Bus. & Prof Code § 17200, *et seq.* –
   RENT A CAR; and                     Fraudulent Business Act and Practices;
22 DOES 1-10, inclusive,           4) Calif. Civ. Code § 1750, *et seq.* – Consumers
                                       Legal Remedies Act;
23              Defendants.       5) Breach of Contract and Breach of the
                                     Covenant of Good Faith and Fair Dealing;
24                               6) Unconscionability; and
                                 7) Common Counts/Common Law Restitution,
25                                   and Assumpsit

26                               JURY TRIAL DEMANDED

27

28                                      **ORIGINAL**

                                      1

CLASS ACTION COMPLAINT

Plaintiff Sandra McKinnon ("Plaintiff"), by and through her undersigned counsel, files this Class Action Complaint for violation of the laws stated herein on behalf of herself and all other consumers similarly situated throughout California, and residents of other states throughout the United States as determined to be appropriate, against Dollar Thrifty Automotive Group, Inc. d/b/a Dollar Rent A Car, Dollar Rent A Car, Inc., DTG Operations, Inc. d/b/a Dollar Rent A Car, and DOES 1-10, inclusive (collectively referred to herein as "Dollar" or "Defendants"). Plaintiff hereby alleges as follows on information and belief except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the proposed Class (defined below) exceed the sum or value of $5,000,000, and there is diversity of citizenship between proposed Class members and Dollar.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§1391(a)(1) & (2). Substantial acts in furtherance of the alleged improper conduct occurred within this District. Defendants engage in business and transactions in this District, and Plaintiff McKinnon and other Class members signed up for Dollar's services in this District and/or reside here.

## THE PARTIES

3.      On personal knowledge, Plaintiff Sandra McKinnon is an individual consumer who, at all times material hereto, was a resident of San Ramon, California. As detailed below she signed up for Dollar's services in this District utilizing, either directly or indirectly, the interactive website operated by Defendants nationwide, including in this District. She is over 65 years old and is thus a "senior citizen" for purposes of the California Consumers Legal Remedies Act.

4.      Defendant Dollar Thrifty Automotive Group, Inc. d/b/a/ Dollar Rent A Car is organized and existing under the laws of the State of Delaware, with its principal place of business located in Tulsa, Oklahoma. For the purposes of diversity jurisdiction, Dollar may be

2

1  considered a "citizen" of either Delaware or Oklahoma. At all times relevant hereto, Dollar was

2  and is doing business within this District either directly or indirectly through the use of its car

3  rental services in this District at the Oakland-Alameda International Airport, as well as its

4  operation of an interactive website that permits consumers to order goods and services from it

5  and thereby engage in transactions in this District.

6       5.    Defendant Dollar Rent A Car, Inc., a wholly-owned subsidiary of Dollar Thrifty

7  Automotive Group, Inc., is organized and existing under the laws of the State of Oklahoma, with

8  its principal place of business located in Tulsa, Oklahoma. For the purposes of diversity

9  jurisdiction, Dollar may be considered a "citizen" of Oklahoma. At all times relevant hereto,

10  Dollar was and is doing business within this District either directly or indirectly through the use

11  of its car rental services in this District at the Oakland-Alameda International Airport, as well as

12  its operation of an interactive website that permits consumers to order goods and services from it

13  and thereby engage in transactions in this District.

14       6.    Defendant DTG Operations, Inc. d/b/a Dollar Rent A Car, a wholly-owned

15  subsidiary of Dollar Thrifty Automotive Group, Inc., is organized and existing under the laws of

16  the State of Oklahoma, with its principal place of business located in Tulsa, Oklahoma. For the

17  purposes of diversity jurisdiction, Dollar may be considered a "citizen" of Oklahoma. At all

18  times relevant hereto, Dollar was and is doing business within this District either directly or

19  indirectly through the sale of its car rental services in this District at the Oakland-Alameda

20  International Airport, as well as its operation of an interactive website that permits consumers to

21  order goods and services from it and thereby engage in transactions in this District.

22       7.    DOES 1-10 are individuals, associations or corporations that are affiliated or

23  related to Defendants Dollar Thrifty Automotive Group, Inc. d/b/a/ Dollar Rent A Car, Dollar

24  Rent A Car, Inc. or DTG Operations Inc. d/b/a Dollar Rent a Car who will be specifically

25  identified and named as discovery progresses and their roles in the wrongdoing at issue is

26  revealed.

27       8.    At all times mentioned in the Causes of Action alleged herein, each and every

28  Defendant was an agent, representative, affiliate, or employee of each and every other

3

1 Defendant, and in doing the things alleged in the Causes of Action stated herein, each and every

2 Defendant was acting within the course and scope of such agency, representation, affiliation, or

3 employment and was acting with the consent, permission and authorization of the other

4 Defendants.  Each Defendant actively cooperated in the scheme herein at issue, aiding and

5 abetting the commission of the wrongs at issue herein, as during the relevant time period

6 Defendants agreed to misrepresent or not disclose to the Class members the material facts at

7 issue herein and/or not to notify Class members about the scope and nature of the illegal business

8 practices as detailed herein.  They thus engaged in a conspiracy and aided and abetted such

9 conduct, which resulted in injury in fact to members of the Class, which conspiracy is still on-

10 going.  All actions of each Defendant, as alleged in the Causes of Action stated herein, were

11 ratified and approved by the other Defendants or their respective directors, officers and/or

12 managing agents, as appropriate for the particular time period alleged herein.

13       9.       At all times herein mentioned, the employees of Defendants, their subsidiaries,

14 affiliates and other related entities, were the agents, servants and employees of Defendants, and

15 at all times herein mentioned, each was acting within the purpose and scope of said agency and

16 employment, and pursuant to Defendants' training and directives.  Whenever reference in this

17 Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to

18 mean that the principals, officers, directors, employees, agents, and/or representatives of

19 Defendants committed, knew of, performed, authorized, ratified and/or directed such act or

20 transaction on behalf of Defendants while actively engaged in the scope of their duties.

21                                    **FACTUAL ALLEGATIONS**

22       10.       As set forth below, Dollar Rent A Car has organized a scheme to defraud

23 consumers so as to increase revenues.  The scam is simple – the company tricks consumers into

24 buying insurance they did not want.  The scheme allows Dollar to cheat consumers out of

25 millions of dollars.  Consumers now demand their money back.

26       11.       Over at least the last four years Dollar has implemented a systematic program

27 nationwide through which its employees and agents illegally dupe customers into signing up for

28 collision damage waiver ("CDW"), car insurance and other added services that consumers have

4

1    specifically declined.  This is not an isolated incident with one consumer, but rather a systematic

2    pattern of conduct that has occurred at a number of Dollar locations located throughout the

3    United States and reported nationwide to Dollar at its corporate headquarters.  This practice has

4    allowed Dollar and its employees to pocket millions in fees at no cost to themselves, but at the

5    direct expense of victimized consumers, including Plaintiff.

6         12.    Plaintiff Sandra McKinnon made an on-line reservation through Dollar's

7    reservation system (accessed through its "partner", Southwest Airlines) at her home in San

8    Ramon, California on or about February 1, 2012, for a car reservation in Tulsa, Oklahoma for

9    between March 29 and April 13, 2012.  She specifically declined all available additional optional

10   add-ons at that time.  She visited the Dollar facility at the Tulsa airport to pick up a car on

11   March 29, 2012.  At the facility, the Dollar agent tried to up-sell Ms. McKinnon a variety of

12   CDW, insurance and other options during the limited time of the transaction.  She declined all of

13   these offers, telling the agent she was covered by both her own existing insurance and her credit

14   card.  She then signed an electronic signature pad and initialed the areas the employee indicated

15   to her were to be checked to decline the Dollar add-ons.  At no time did the agent go over the

16   proposed total charges with her.  After signing as directed by the agent, Ms. McKinnon was

17   handed a folded up copy of the contract in a Dollar folder.

18        13.    Ms. McKinnon returned the car to Dollar on April 13, 2012, with the gas tank

19   full, and was given a receipt.  At that time for the first time Dollar claimed she had accepted

20   CDW and was charging her an additional $359.65 – almost the same as the cost of the rental car.

21   She complained and demanded to see a manager, who would not see her.  When Ms. McKinnon

22   complained that she had declined the optional CDW and also any other coverage and that she

23   definitely had not signed any acceptance of additional items, she was told by Dollar employees

24   there was nothing they could do.  Finally the Dollar employee she dealt with admitted to her:

25   "They never give the money back.  You are not going to get your money back".

26   As she (as do all other returning customers) had to catch a flight, she had no choice but to pay

27   the amount.  Her contacts with customer service to resolve this issue were futile.  On June 6,

28   2012 she sent a written demand by certified mail to Dollar demanding a return of all monies

5

unlawfully taken from her and all other similarly situated persons.  Dollar has failed to provide any substantive relief in response to this letter, necessitating this action.  A true and correct copy of Dollar's rejection letter is attached hereto as Ex. 1 and incorporated herein by reference.

14.    Dollar is aware of these practices, as similar complaints are processed through corporate headquarters, and in many respects are handled by the same person, Josh Wells, who is located at Dollar's corporate headquarters.  Mr. Wells' standard response to consumers is similar to the following e-mail response:

> Please accept my apologies for any misunderstanding regarding the purchase of the Loss Damage Waiver and Roadsafe on your rental.  A review of our records indicates you viewed and accepted the optional coverage and the related charges using the electronic signature pad (touch screen) at the counter.  I have copies of the screens you viewed and accepted below.

> Based on the above information and the fact that you had the benefit of the protection for the rental period the local charges are correct.  If you have any questions regarding your case please feel free to reply to this email.  Again, I thank you for contacting Dollar.

15.    This response from corporate headquarters, similar to that provided Ms. McKinnon attached hereto, indicates that Dollar not only is aware of consumers from around the country making identical complaints about these swindles, but that Dollar stands behind the practice of tricking consumers into insurance they told agents they did not want.  If this purported "consent" was obtained by trickery, fraud, or outright forgery, it does not matter if consumers had the ephemeral benefit of insurance they did not order, want, know they had or actually used.  If Dollar was not in on or tacitly approved of this scheme, it would have initiated an immediate investigation into this practice.  There would have been firings of those responsible and refunds and apologies sent out to consumers.  Instead Dollar stands solidly behind the scheme, which has netted the company significant monies.

16.    According to at least one Dollar employee, agents at the counter are paid minimum wage and make up to 12% commission on the sales of CDW, insurance and other products.  As a result, experienced representatives can take home up to $6,000 per month as a result of such practices.  Dollar has received multiple complaints about these issues but incentivizes its employees to make such sales, even if by illegal means.  If employees fail to

6

obtain an average 30 per day upsales of additional options for three months they may be terminated and not eligible for unemployment.  Employees are thus incentivized to take advantage of the customer's irritation, long lines, and misleading or high pressure sales tactics, by just telling them to tap certain lines to decline coverage when it may have the opposite result, or simply to forge their signature.

17.     Over the past several years, consumers have submitted reports detailing the same conduct occurring in different Dollar offices around the country, including at some of the busiest airports in the country in addition to Tulsa and DIA – Dulles, O'Hare, Philadelphia, Phoenix, Honolulu, Orlando, Columbus, Tampa and Los Angeles International.  Such a common complaint received from locations throughout the United States, being directed to the same person at Dollar without being remedied and subject to the same canned response, provides significant evidence this is a systematic yet unresolved problem within Dollar.  How can Dollar continue to blame consumers if consumers around the country are all saying they were tricked in the same way?  Either all the consumers are lying or Dollar has sanctioned and approved a company-wide conspiracy to trick and defraud consumers.  The fact that Dollar has not told a single consumer that has complained that in fact many other consumers have made the exact same complaint suggests that Dollar is actively engaged in a cover up.  The following is a sampling of the complaints lodged against Dollar from across the United States:

> On November 9, 2011, I rented a car at Dollar Rent a Car at Dulles Airport in Virginia.  The rental was paid for by a pre-paid voucher.  At the rental counter, I declined additional insurance, as I was covered by my own insurance and credit card.  At the counter I was asked to sign an electronic pad acknowledging the rental on a signature screen.  I was told that by signing the screen I was declining insurance.  The screen I signed made no mention of insurance.  Through the credit card company, I was able to obtain the original contract and my alleged signature requesting insurance.  A review of the contract revealed that my signature, which only appears on the signature pad, was then transposed to an electronic contract that requested insurance.  Until I obtained the new contract from Dollar, I had never seen the "signed contract."  I also obtained the electronic pages from the screen of his transaction, none of which indicate any acceptance of insurance.

> ###

> I rented a car at Philadelphia Airport and declined any insurance fees.  I was charged another $25 per day extra (Ripped off) the car only cost $19 per day.  After my bank statement was received I was charged $100 more than I was supposed to be charged.  I called Dollar twice and was actually sent documents

7

with a signature (NOT MINE).  They said there was nothing THEY could do for me…Something is wrong…fishy…

### 

After being HOUNDED to purchase extras like toll savers, multiple types of insurance for over fifteen minutes (and repeatedly saying NO to each and every one) at a counter in Orlando Florida I finally said "I DO NOT WANT ANY EXTRAS, I JUST WANT MY CAR.  How can I do that?"  The SCAM ARTIST behind the counter said 'Just sign and click accept, and it's yours'.  At the end of the week the bill was double what I agreed to.

### 

The Dollar car rental out of LAX airport in Los Angeles, CA has overcharged my credit card by $99.90.  They are severely understaffed.  As a result, they make you wait in unreasonably long lines and then they will ask you to sign your rental contract on a small screen which does not show you what they have forced upon you without your knowledge or asking, i.e. more insurance that you asked for.

They have found a way to extract unauthorized money out of me.  Then, they claim that since I signed their scrolled down little digital check out, I have given them permission to charge me whatever they want.

### 

I rented a van from LAX on December 19.  The customer rep asked me if I wanted the additional insurance coverage.  As an auto insurance broker, I know that my auto policy would cover the vehicle and I verbally declined the coverage three times.  My husband also chimed in and declined the coverage.

When the paperwork was completed the customer service rep put a big "D" beside the additional insurance coverage and I initialed it as I was declining the coverage.  When I got the bill, they charged me anyway.  I contacted customer service and they say that I didn't initial beside the tiny little "decline" so they are saying the charges stand.  I will not let this go away because there is absolutely no reason why I would need to have paid for the coverage.  I am out over $300 and I will fight until I get it back.

### 

We were asked about insurance coverage which we explicitly declined.  Upon returning the car on June 30, 2011, I requested that the charges be billed to my credit card.  Much to my surprise, I was billed the estimated charge of $604.02 as opposed to the original quote of $361.98 on my email confirmation (R6385796).  Apparently, although we declined the insurance coverage, the DollarNE sales agent ("DXE1") inserted language on the car rental agreement (L1106627) indicating otherwise.

### 

At Chicago OHare Airport I rented a car from Dollar Rental.  At the rental terminal the agent asked me if I would like to include a loss damage waiver, and Supplemental Liability Insurance.  I declined both.  I signed a pin pad device authorizing the transaction.  I did not sign the actual the contract.  It turns out the

8

agent included both options, and charged my card an extra $370. I appealed to Dollar Rental and my bank for falsely charging my card, both to no avail. By the looks of it, after reading the many other complaints against this company for the very same reason, this is a common practice. I'm very disgusted with this deceptive policy and the scruples of this company. I will never rent from them again, and implore everyone to do the same.

### 

The same thing just happened to me at Dollar Rent-A-Car at the Orlando International Airport. I specifically told the rental agent that I did not want any kind of insurance coverage and made the mistake of assuming that he would honor that directive. Instead, he rushed me through the initialing/signing process on the electronic screen and skipped right over the part about insurance being included. Then he prints off a copy of the rental agreement, folds it up, and puts in an envelope with a bunch of other paperwork. Every part of this process is a carefully planned and rehearsed piece of their scam puzzle. They know that most of their renters are already tired from traveling and tired of waiting in lines – including their own – so the chances are pretty good that they can sneak something past an unsuspecting customer. Don't think for a second that these rental agents aren't rewarded for "selling" the add-ons like unnecessary insurance.

### 

Dollar Rent a Car in Honolulu airport was told when I picked up my car that I had already purchased insurance on it because I wanted to be covered for everything. The girl at the counter (at 9:30 at night after 16 hours in the air) said uh huh, so you already have the insurance, I said yes…she wrote up the slip and I signed it without checking to see what she had done. She signed me up for EVERY POSSIBLE INSURANCE THEY PROVIDE and a 465.00 bill turned into a 798.00 payment. Their response? "Well, I don't know what the conversation you had with our representative was but you signed it so there's nothing we will do about it." I asked for their legal department, she gave me a P.O. Box number.

### 

Same thing happened to me at Denver International Airport. I verbally declined additional insurance as I am already covered by my company and additionally covered by American Express Gold Card. Why would I want to pay for it a third time? By Dollar Rent a Car's employee physically indicating to me where to sign, he knowingly and wantonly intended to defraud me. A consumer has a reasonable expectation that when they enter a Dollar Rent a Car to do business, that Dollar Rent a Car will act in "Good Faith" and deal honestly with the customer. It is clear and evident that Dollar Rent a Car engages in deceptive business practices.

### 

Exact same thing happened to us at Tampa International Airport in March 2012. Rep did not review charges (like they say they do on their webpage) and we did not realize we were being charged for the insurance until the car was returned. If he would have done his job properly and reviewed all charges, etc at the end, then we would have advised him again that we did not want the insurance. We are irate and will continue to pursue this with Dollar. Never will use them again.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

###

We rented a car from Dollar on March 2, 2012 at the Tampa International Airport. On December 31, 2011, we reserved a rental for a total of $266.67 for Friday, March 2, 2012 through March 10, 2012. On March 1, 2012, Dollar Rent A Car sent a Reservation Reminder Email which also listed $266.67 as the total for the rental. We arrived at the Dollar Rent A Car counter at the Tampa International Airport on March 2, 2012. First thing, we presented the Confirmation #Q1630690 to the sales rep and inquired about a AARP Discount and he replied yes proceeding to inform us the total would be approximately $216 for the 9 days. At that time, we advised the sales rep that we DID NOT want/need the insurance from Dollar since our insurance extended to rental vehicles. When it came to signing, the rep stated to "hit agree" on the computer (not explaining what it was) and to sign where indicated. As stated in a email from Angela Jones, Customer Svc Rep from Dollar Rent a Car "it is their goal that every customer understands the terms, conditions and pricing of their rental". The rep did not review pricing at any time and proceeded to place the receipt in the folder. If the rep had properly explained the coverages, we would have at that time declined the coverage again. He did not review the charges, provide a breakdown of the contract on point of sales screen, nor show us a breakdown of the rental cost. It was not until we returned the car on March 10th did we learn of what the charges were. [When] we inquired about the charges, the agent sent us to the airport car rental office who in turn said there was nothing she could do and we would need to contact corporate office on Monday.

We feel that this practice is very unethical and a rip off to the consumer. We both have our insurance licenses and are very well educated on automobile policies. We have rented from Dollar in the past and have never had an issue.

We requested the insurance charges of $290.84 be removed that should have never been included originally. The sales rep did not abide by our request and therefore should be removed.

###

I have rented a car from Dollar Rent A Car - Sky Harbor Car Rental - Phoenix Airport and told the customer service rep I do not want the "ROADSAFE @ $5.99 per day" (Insurance) and "Lbw1 @ $24.99 per day" (Loss Damage Waiver) because my card that I was using will cover me. The customer service rep acknowledged my needs and said:

Rep – "Okay, I will not add them to the bill. Please tap I agree to the message on the screen, it talk about the 'UNDER AGE 25'."

Me – "Okay, to confirm that it talks about the under 24 and that is it, correct?"

Rep – "Correct. (next I Agree screen) ... This one is talking about agreeing to deny the road safe insurance."

Me – "So, by selecting I agree ... agrees to me denying the insurance"

Rep – "Correct. (Next I Agree screen) ... This one is talking about agreeing to deny the loss damage waiver"

Me – "Again, by selecting I agree...agrees me to denying the loss damage waiver"

10

Rep - "Correct.  Ok your total will be $241.30 for 4 days."

Me – "Wow...really?  What did I pay for when I reserved this car?"

Rep – "You pay just to reserve the car and the car, there is a fee because your are under 24"

Me – "Jeez, ok really that much for just the under age?..."

Rep – "yes"

I pay for the car, and I rush out because I needed to check in to my hotel.  After, arriving at my hotel I wanted to check the receipt (the rep folded the receipt up in the folder type pamphlet so I could see it clearly when I left) and what do I see.....yep charges for:

| Lbw1 | 4 dy@24.99 | $99.96 |
| ROADSAFE | 4 dy@5.99 | $23.96 |
| AGE24 | 4 dy@15.00 | $60.00 |

After, my trip I called the Dollar Customer Assistance @ 1-800-800-5252 and filed for a dispute from the false information the customer server rep supplied me with they said I would get a call/e-mail in 72 hours.

Finally, after waiting 8 business days I get an email (with attachment pictures of the I Agree screens with my signature at the bottom):

Mr. ******, Thank you for contacting Dollar Rent a Car regarding your rental in Phoenix.  Please accept my apologies for any misunderstanding regarding the purchase of the Loss Damage Waiver and Roadsafe on your rental.  A review of our records indicates you viewed and accepted the optional coverage and the related charges using the electronic signature pad (touch screen) at the counter.  I have copied the screens you viewed and accepted below.

Based on the above information and the fact that you had the benefit of the protection for the rental period the local charges are correct.  If you have any questions regarding your case please feel free to reply to this email.  Again, I thank you for contacting Dollar.  Regards, Josh Wells, Dollar Thrifty Automotive Group, Inc.

### ###

Last weekend [January 2011] I traveled to Connecticut from Dallas, Texas again.  I flew to Bradley International Airport (Hartford) from Dallas.  The cheapest car rental deal we found was with Dollar, which was not directly on the airport (unlike the other car rental agencies).

Unlike the other car rental agencies at Bradley they did not check the gas meter before and after to determine if I had filled it up enough.  Instead you had to fill the gas tank within a 10 miles radius of the rental car agency and keep the receipt as proof (no one mentioned this but I guess it was in the papers).  I usually fill the gas tank at a place about 20-30 miles from Bradley International Airport but I top it off and end up with a gas tank that is as full (or more) when return the car as it

11

was when I got the car. Therefore I have never had to pay for gas at any of the other car rental agencies. At Dollar I had to pay seven dollars because I was not within a seven miles radius.

When I signed the documents they seemed to be in a hurry and wanted me to initialize here and sign there and be off. They removed the document before I could read it and no information was given. It made me a little suspicious but I was not asking any questions. I realize now that this was not clever of me.

Typically car rental agencies tell you what you are signing and initializing and they ask you if you want things like insurance. They don't tell you to sign something and then quickly remove the paper.

When I returned the car I had to pay a little bit more then I planned. They had charged a so called LDW1 fee (Liability Damage Waiver fee) without mentioning anything about it, and it cost more per day than the entire car rental ($23.00 versus $19.00). Then LDW1 was also significantly more than the insurance at the other car rental places. My car insurance includes insurance for rental cars so I would have said no to additional insurance. This was completely unnecessary. The bill also had some other strange miscellaneous fees I did not understand but I did not argue about. I ended up paying $118.00 instead of $38.00 as I thought I would.

###

This scam has just happened to me in Orlando – I had a voucher which was paid for well before my holiday – on arrival at Dollar after a ten hour flight I was asked to sign three times on a small screen – i said I didnt want any extras and he said thats right. On returning the car I was given a receipt for $298 so headed straight back to desk to enquire and they said I had signed for two extra insurances and roadside recovery totaling $298 on top of the £300 I paid in advance – no one mentioned this when I was signing two weeks before and he said 'we have hundreds of custromers so we don't have time to go through all the screens explaining what you are signing for' – I feel I was blatently conned and was furious but as our flight was due to leave there was nothing I could do – please warn others using Dollar not to sign anything! I have now contacted rental company with view to a refund!!

###

Exact thing just happened to me in the San Antonio Dollar rental car office. An employee with a thick russian accent told me I could not rent the car without the extra insurance. I picked the cheapest type available, $13.95. Then, I was asked to sign a digital agreement with a number of options – I never thought she would actually switch to the $23.95 option, but that is what she did. Also brought the car back full, yet was charged for two gallons of gas at $9.85 per gallon.
this scam is deliberate and continues to happen.

###

I had the same thing happen, i was in hawaii and refused the insurance and initialed to accept the insurance waiver but they charged me the insurance anyway, it turns out the "waiver" is accepting their insurance of $350. i want a class action lawsuit!

CLASS ACTION COMPLAINT

###

Just got back from a few days in L.A. When I rented the car I was presented with the option for "Basic Insurance". Knowing that rental cars MUST actually carry proper insurance, paid for by the rental company, regardless of whether you buy their ridiculous CDW, I stated that I did not want any insurance. I assumed, having been presented with only two choice, that "Basic" referred to what is included in the rental I had already paid for. I told the clerk that my personal auto package extended to rental vehicles as well as my having coverage through the Gold VISA that I rented with. I told him in no uncertain terms that I did not wish to have any optional insurance coverages. As I was given only two choices between the basic and the premium, I assumed basic was the insurance included. I had also been very clear that I did not wish to pay for insurance. The crook behind the counter nodded his agreement and then walked me through the items on the touch screen display, instructing me what option to hit each time. At no time was there ANY mention of an additional cost. I would absolutely have restated my choice that the rental NOT include any insurance through the company. It is a well-orchestrated scam, NOT an honest misunderstanding!

###

I was quoted about $00 for a two week rental. After verbally denying insurance 3 or 4 times, I was asked to initial. Lo and behold, they signed me up for insurance. On the contract it was listed as LDW, or loss-damage-waiver; hidden in plain site.

In the end I was charged $340+ for this LDW, which I had declined outright. When trying to work with Dollar for a credit, they refused to budge and refund my money because I initialed the "LDW" option.

Stay away. Dollar is a bunch of scammers and thieves, no better than your average sidewalk conman. I would even say they are worse because they hide under the guise of a "legitimate" business.

###

COLUMBUS, OHIO – I rented a car at the Columbus, Ohio, in May from Dollar Rent a Car as they advertised the lowest rate online. Having a safe driving record a using a credit card that covers insurance, I "verbally" declined the offered car rental insurance . . . TWICE. Unfortunately, I did not read that they added this charge to the contract anyway. So I was unpleasantly surprised to see this $150 UNNECESSARY UNWANTED CHARGE on my bill.

When I called the 1-800 number to complain and request this charge be dropped, I was told that I had to pay, that I "signed" the contract.

LESSON FOR EVERYONE: Always read the car rental contract you are signing to avoid extra unwanted services/ charges no matter how rushed or tired you are at the car rental counter.

I feel DOLLAR in "good service" should have refunded the unwanted unnecessary charge on my bill. Since they didn't, I won't go back

###

13

CLASS ACTION COMPLAINT

We rented a car from Dollar on March 2, 2012 at the Tampa International Airport. On December 31, 2011, we reserved a rental for a total of $266.67 for Friday, March 2, 2012 through March 20, 2012. On March 1, 2012, Dollar Rent Car sent a Reservation Reminder Email which also listed $266.67 as to total for the rental.

We arrived at the Dollar Rent A Car counter at the Tampa International Airport on March 2, 2012. First thing, we presented the Confirmation #Q1630690 to the sales rep and inquired about a AARP Discount and he replied yes proceeding to inform us the total would be approximately $216 for the 9 days. At that time, we advised the sales rep that we DID NOT want/need the insurance from Dollar since our insurance extended to rental vehicles. When it came to signing, the rep stated to "hit agree" on the computer (not explaining what it was) and to sign where indicated. This is extortion and illegal. As stated in the email from Angela Jones, 'it is their goal that every customer understands the terms, conditions and pricing of their rental'. The rep did not review pricing at any time and proceeded to place the receipt in the folder. This issue is not that we signed for it, it is the scam of adding insurance which we did not want. If the rep had properly explained the coverages, we would have at that time declined the coverage again. He did not review the charges, provide a breakdown of the contract on point of sales screen, nor show us a breakdown of the rental cost. It was not until we returned the car on March 10th did we learn of what the charges were. When we inquired about the charges, the agent sent us to the airport car rental office who in turn said there was nothing she could do and we would need to contact corporate office on Monday. We feel that this practice is a scam very unethical and a rip off to the consumer. We both have our insurance licenses and are very well educated on automobile policies. We have rented from Dollar in the past and have never had an issue. We have sent 1 letter to Dollor requesting a refund and am sending a 2nd request

18.     This is not the first time Dollar has been accused of engaging in practices involving the illegal upsale of products such as CDW using deceptive sales practices. In *People v. Dollar Rent A Car*, 211 Cal.App.3d 119, 131 (1989), the California Court of Appeal upheld a judgment obtained by the California State Attorney General's Office against Dollar Rent-A-Car Systems, Inc. for overcharging consumers and misrepresenting the scope and nature of CDW provisions as a result of improper training. Employees were instructed to sell such products aggressively in return for high commissions, using contracts in tiny print that could not be read by the reasonable consumer in the limited transaction window at the airport, such that according to the Court, "this entire process makes confusion not only likely, but inevitable." Thus, Dollar has been previously found liable in this State for engaging in the same practices it is presently engaging in now in California and across the United States.

/ / /

/ / /

14

**CLASS ACTION ALLEGATIONS**

19.     Pursuant to F.R.C.P. 23, Plaintiff brings this action on behalf of herself and a Class of persons comprised of all consumers in California and such other states within the United States the Court finds appropriate who paid for CDW, insurance or other products from Dollar that they specifically declined or did not authorize during the past four years (the "Class"). Dollar's practices as detailed above were applied consistently to all members of the Class throughout the relevant time period, so that the questions of law and fact detailed herein are common to all members of the Class.  All Class members were and are similarly affected by having paid for these unrequested and/or specifically declined items as set forth in detail above.

20.     Based on the systematic practices at issue, the number of Class members would be in the many thousands, thereby making individual joinder impossible.  The Class is therefore so numerous that joinder of all members would be impracticable.  Questions of law and fact common to the Class exist and predominate over questions affecting only individual members, including, *inter alia*:

        (a)     Whether Dollar's acts and practices undertaken in connection with the sale of the products or services detailed herein were illegal acts of unfair competition or constitute a systematic breach of contract;

        (b)     Whether Dollar's acts and practices in connection with the promotion and sale of these products or services unjustly benefitted Dollar at the expense of, and to the detriment of, Plaintiff and other Class members; and

        (c)     Whether Dollar's conduct as set forth above injured consumers and, if so, the extent of such injury.

21.     The claims asserted by Plaintiff in this action are typical of the claims of other Class members as these claims arise from the same course of conduct by Dollar as detailed above, and the relief sought is common.

22.     Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

15

23.     Certification of this action is appropriate under F.R.C.P. 23(b)(1), (b)(2) and/or (b)(3) because the questions of law or fact common to the Class members as detailed above predominate over questions of law or fact affecting only individual members.     This predominance makes class litigation superior to any other methods available for the fair and efficient group-wide adjudication of these claims.    Absent a class action remedy, it would be highly unlikely that other Class members would be able to protect their own interests because the cost of litigation through individual lawsuits would exceed any expected recovery.    Certification is also appropriate because Dollar has acted or refused to act, and continues to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

24.     A class action is an appropriate method for the group-wide adjudication of this controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be claimed with regard to the management of this action.

## FIRST CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq.* – Unlawful Business Acts and Practices

### (By Plaintiff McKinnon Against All Defendants)

25.     Plaintiff McKinnon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

26.     Business & Professions Code § 17200, *et seq.* prohibits acts of "unfair competition", which is defined as including "any unlawful, unfair or fraudulent business act or practice . . . ."

/ / /

27.     Dollar's conduct, as described above, constitutes "unlawful" business acts and practices.

28.     Dollar has violated and continues to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, *inter alia*, violating sections 1670.5 and 1671 of the Civil Code as well as relevant provisions of the CLRA as set forth herein, and engaging in the systematic breach of express or implied contracts and the implied covenant of good faith and fair dealing, as set forth herein.

29.     Plaintiff McKinnon and/or members of the Class, as applicable, have been injured in fact and lost money or property as a result of Dollar's business acts and practices by, *inter alia*, either paying or being told after the fact they will need to pay greater amounts than they had agreed or elected to pay for optional items they did not order, as well as through the expenditure of time and resources in an effort to avoid or minimize the consequences from such conduct. These acts and practices resulted in Plaintiff McKinnon and/or members of the Class paying for insurance, CDW or other products they would not have purchased absent Dollar's conduct.

30.     As a result of Dollar's violations of the unlawful prong of the UCL, Plaintiff McKinnon and members of the Class are entitled to equitable relief in the form of full restitution of all monies paid for illegally imposed charges and disgorgement of the profits derived from Dollar's unlawful business acts and practices.

31.     Plaintiff McKinnon also seeks an order enjoining Dollar from continuing its unlawful business practices and from engaging in the present, threatened or future conduct set forth herein.

32.     THEREFORE, Plaintiff McKinnon prays for relief as set forth below as applicable to this cause of action and the members of the Class.

/ / /

/ / /

/ / /

/ / /

/ / /

17

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### Violation of Business and Professions Code § 17200, *et seq.* – Unfair Business Acts and Practices

### (By Plaintiff McKinnon Against All Defendants)

33.   Plaintiff McKinnon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

34.   The acts of Dollar, as described above, individually and collectively, constitute "unfair" business acts and practices.

35.   Dollar's conduct, as described above, does not benefit consumers or competition. Indeed, the harm to consumers and competition is substantial.

36.   Plaintiff McKinnon and members of the Class could not have reasonably avoided the injury each of them suffered and are threatened with at this time.

37.   The gravity of the consequences of Dollar's conduct as described above outweighs any justification, motive or reason therefore and is immoral, unethical, unscrupulous, offends established public policy, is tethered to a legislatively declared policy as set forth in the statutes prohibiting unconscionable contract practices and/or is substantially injurious to Plaintiff McKinnon and other members of the Class as set forth in more detail above.

38.   As a result of Dollar's violations of the UCL, Plaintiff McKinnon and members of the Class are entitled to equitable relief in the form of full restitution of all monies paid as a result of the illegal practices at issue and disgorgement of the profits derived from Dollar's unfair business acts and practices.

39.   Plaintiff McKinnon also seeks an order enjoining Dollar from such present, future or threatened conduct.

40.   THEREFORE, Plaintiff McKinnon prays for relief as set forth below as applicable and appropriate.

/ / /

/ / /

/ / /

18

CLASS ACTION COMPLAINT

# THIRD CAUSE OF ACTION

### Violation of Business and Professions Code § 17200, *et seq.* – Fraudulent Business Acts and Practices

### (By Plaintiff McKinnon Against All Defendants)

41.     Plaintiff McKinnon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

42.     Such acts of Dollar as described above, and each of them, constitute deceptive, misleading or "fraudulent" business practices under California Business & Professions Code § 17200, *et seq.*

43.     As more fully described herein, Dollar's failure to inform consumers about the true nature of its practices is likely to deceive members of the Class regarding their statutory rights.   Dollar's misrepresentations or omissions of fact they were bound to disclose were material and were a substantial factor in decisions to engage in transactions with Dollar.

44.     Additionally, Dollar's omissions are likely to deceive consumers that the rates they are charged are being imposed in accordance with the law when they are not.

45.     As a result of Dollar's violations of the UCL, Plaintiff McKinnon and members of the Class are entitled to equitable relief in the form of full restitution of all monies paid for unwanted products and disgorgement of the profits derived from Dollar's fraudulent business acts and practices.

46.     Plaintiff McKinnon also seeks an order enjoining Dollar from such present, threatened and future conduct as set forth herein.

47.     THEREFORE, Plaintiff McKinnon prays for relief as set forth below.

# FOURTH CAUSE OF ACTION

### Violation of California Civil Code § 1750, *et seq.* – Consumers Legal Remedies Act

### (By Plaintiff McKinnon Against All Defendants)

48.     Plaintiff McKinnon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

19

49.     Plaintiff McKinnon and members of the Class are consumers insofar as they obtained the goods and services in question for personal, family or household purposes. Dollar's offering of the vehicles and products in question constitute transactions involving a "good" or a "service" in that a significant component of the contracts in question is Dollar's provision of tangible goods, work, labor and services.

50.     Dollar violated and continues to violate the CLRA by engaging in the following deceptive practices, by, *inter alia*:

> (a)     Representing that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

> (b)     Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

> (c)     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and

> (d)     Inserting unconscionable terms in contracts.

51.     Plaintiff McKinnon and other members of the Class, in making decisions to enter into such transactions, reasonably acted in response to Dollar's representations as set forth above or would have considered the omitted facts detailed herein material to their decision to do so. Plaintiff McKinnon and members of the Class have suffered damage by the wrongful acts and practices of Dollar set forth herein and/or expended time and resources in connection with and as a result of the acts and practices set forth above in an attempt to avoid the consequences of such conduct.

52.     Written notice pursuant to the provisions of the CLRA was provided to Dollar by Plaintiff McKinnon on June 6, 2012. As Dollar failed to provide all requested relief in response to this notice, Plaintiff McKinnon seeks general, actual, consequential, statutory and exemplary damages as permitted under the CLRA and Civ. Code § 3345. As a result of Dollar's violations of the CLRA, Plaintiff McKinnon and other members of the Class are also entitled to equitable relief in the form of full restitution of all monies paid, an injunction to prevent Dollar from

1 | engaging in present or imminent conduct as set forth above, and disgorgement of the profits

2 | derived from Dollar's illegal business acts and practices.

### FIFTH CAUSE OF ACTION

**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

**(By Plaintiff McKinnon Against All Defendants)**

53.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

54.     Plaintiff McKinnon and Dollar have contracted for rental car services, as embodied in Dollar's form Rental Agreement and related documentation. With minor variances not relevant to the claims at issue herein, Dollar uses the same form Rental Agreement throughout the United States. True and correct copies of an exemplar of Dollar's Rental Agreement, and the notice of terms sent with on-line reservations, are attached hereto as Ex. 2 and incorporated herein by reference.

55.     Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. The parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form and not engaging in any conduct in violation of law in doing so. Tricking and misrepresenting the boxes for consumers to check to attempt to claim consumers ordered unwanted products and services, or inputting their signature without authorization, and evading the spirit of their advance bargain constitute examples of bad faith in the performance of contracts. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

56.     Dollar has breached these contracts as well as the covenant of good faith and fair dealing through its system-wide implementation of the policies and practices set forth above and its failure to correct them despite being placed on notice at its corporate headquarters these practices are taking place nationwide.

57.     Plaintiff McKinnon and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Rental Agreement, and through Plaintiff's demand has previously made written demands to rectify such breaches of the form Rental Agreements on their behalf, which demand has been ignored or refused.

58.     Plaintiff and members of the Class have sustained damages as a result of Dollar's breach of contract and the covenant of good faith and fair dealing, entitling them to both actual, compensatory and exemplary damages.

### SIXTH CAUSE OF ACTION

#### Unconscionability

#### (By Plaintiff McKinnon Against All Defendants)

59.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

60.     Dollar's policies and practices as set forth above are or were substantively and procedurally unconscionable in the following respects, among others:

(a)     Prior to the effective date of the Rental Agreement Dollar did not disclose or reasonably disclose to customers that they were purchasing CDW, insurance or other products;

(b)     Prior to the effective date of the Rental Agreement and thereafter, Dollar did not obtain proper affirmative consent from Class members prior to charging them for CDW, insurance or other products; or

(c)     Dollar forged Class members' signatures authorizing the purchase of CDW, insurance or other products.

61.     The Rental Agreement and related documents, including the General Policies posted on www.dollar.com, are contracts of adhesion in that they are standardized forms, imposed and drafted by Dollar, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety.

62.     Considering the great business acumen and experience of Dollar in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness

22

1    of the terms, the commercial unreasonableness of the terms, the purpose and effect of the terms,

2    the allocation of the risks between the parties, notice of prior illegal practices, and similar public

3    policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of

4    law.  Such claims are actionable pursuant to, *inter alia*, Calif. Civ. Code § 1670.5.

5       63.    Plaintiff and members of the Class have sustained damages as a result of Dollar's

6    unconscionable policies and practices alleged herein.

7                              **SEVENTH CAUSE OF ACTION**

8              **Common Counts/Common Law Restitution, and Assumpsit**

9                    **(By Plaintiff McKinnon Against All Defendants)**

10      64.    Plaintiff incorporates by reference each of the preceding paragraphs as though

11   fully set forth herein.

12      65.    Dollar received money from Plaintiff and many Class Members in the form of

13   revenues and profits for unwanted and/or unauthorized services that were intended to be used for

14   the benefit of Plaintiff and the Class.  Dollar accepted or retained these economic benefits with

15   awareness that Plaintiff and many members of the Class had improperly had such charges

16   imposed upon then for the reasons set forth above.

17      66.    Allowing Dollar to retain the benefits conferred by many of the Class Members

18   under these circumstances is unjust and inequitable.  Under common law principles of assumpsit,

19   unjust enrichment and/or restitution, such excess monies must in equity and good conscience be

20   returned to Plaintiff and members of the Class.

21      67.    As a result of Dollar's illegal enrichment in violation of these common law

22   principles, Plaintiff and the Class have suffered harm and thus seek an order for disgorgement

23   and restitution of Dollar's excess revenues, profits and other benefits retained in violation of

24   applicable law.

25                              **PRAYER FOR RELIEF**

26      WHEREFORE, Plaintiff prays for judgment as follows, as appropriate for the particular

27   cause of action set forth above:

28   ///

CLASS ACTION COMPLAINT

1.    Certification of the Class, certifying Plaintiff as a representative of the Class, and designating her counsel as counsel for the Class;

2.    For a declaration that Dollar has committed the violations of law alleged herein all Class members are entitled to full restitution of all monies illegally obtained from them;

3.    For an injunction prohibiting Dollar from engaging in the unlawful conduct alleged herein;

4.    For actual, compensatory, statutory and exemplary damages, the amount of which is to be determined at trial;

5.    For equitable monetary relief;

6.    For pre- and post-judgment interest at the legal rate on the foregoing sums; and

7.    For such further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all claims so triable.

DATED: August 23, 2012         WHATLEY KALLAS, LLC

By: _____
     ALAN M. MANSFIELD (Of Counsel)
     (SBN 125998)
     amansfield@whatleykallas.com
     580 California Street, 16th Floor
     San Francisco, CA 94104
     Tel: (415) 860-2503
     Fax: (888) 331-9633

     10200 Willow Creek Rd., Suite 160
     San Diego, CA 92131
     Tel: (619) 308-5034
     Fax: (855) 274-1888

     WHATLEY KALLAS, LLC
     Joe R. Whatley, Jr.
     (To Apply *Pro Hac Vice*)
     380 Madison Avenue, 23rd Floor
     New York, NY 10017
     Tel: (212) 447-7060
     Fax: (800) 922-4851

24

CLASS ACTION COMPLAINT

WHATLEY KALLAS, LLC
Patrick J. Sheehan
(To Apply *Pro Hac Vice*)
psheehan@whatleykallas.com
60 State Street, Seventh Floor
Boston, MA  02109
Tel: (617) 573-5118
Fax: (617) 573-5090

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

June 15, 2012



Mrs. Sandra McKinnon

Case ID: 1790233

Dear Mrs. McKinnon,

Thank you for notifying us of your recent experience with Dollar Rent A Car in Tulsa. We appreciate the opportunity to respond to your concerns.

Please accept my personal apology for any misunderstanding regarding the purchase of the Loss Damage Waiver. While we do expect our agents to produce the agreement in accordance with the verbal information provided to them, they are capable of making mistakes. Since it is ultimately the responsibility of the renter to read and accept the terms of the contract before signing, we strongly suggest our clients review the contract carefully before signing to accept. Our records indicate you initialed to accept the Loss Damage Waiver charge. I have included a copy of the signed agreement for your records. Since you had the full benefit of the coverage for the duration of your rental as well, we must respectfully decline your request for reimbursement of the Loss Damage Waiver.

We do value your business, Mrs. McKinnon. I am very sorry you are unhappy with the final resolution of your case. I hope you have a nice day.

Sincerely,

Britni S. McNiel

Britni McNiel
Consumer Response Representative

Dollar Rent A Car, Inc.          Worldwide Reservations
5330 E. 31st Street              800-800-4000
P.O. Box 33167                  dollar.com
Tulsa, OK 74153-1167
918-669-3000

## RENTAL AGREEMENT:

**1. RENTERS AND DRIVERS.** This agreement for the rental of a vehicle is between "you" (the renter and any additional drivers) and "us" (the rental company, whose name appears in the lines of rental and who signs the agreement). "You," "your" refer to the renter, the "Authorized Driver") and the rental car company. By entering into this agreement, you agree to comply with all the terms and conditions herein. Additional Drivers are parties and specially liable for the obligations of this Agreement. The rental vehicle may only be driven by an Authorized Driver. If you are an employee using the Vehicle while acting within the scope of your employment duties. All Authorized Drivers warrant they satisfy our age requirements, have a valid driver's license and fulfill our other qualifications. **No other persons are authorized to drive the Vehicle.**

**2. VEHICLE AND EQUIPMENT; PROHIBITED USES.** Except for ordinary wear and tear, you agree to return the Vehicle and any equipment you acquire from us in the same condition you received it. You acquire no title to the Vehicle or equipment, and no one, other than us, may transfer any interest in good mental condition and without our consent. We make no express or implied warranties of merchantability or fitness of the Vehicle or equipment for any particular purpose. In no event shall we be liable directly or indirectly for any breach of this agreement.

**3. PROHIBITED USES.** The Vehicle may not be used: (A) by other than an Authorized Driver; (B) to push or tow anything, carry persons for hire, or in a race, test, contest, or for any illegal purposes, or drive the Vehicle while under the influence of alcohol or drugs; (C) to transport anything for resale or as a common carrier; (D) to transport hazardous or toxic materials; (E) by anyone who gives a false name, age or address; (F) outside of our geographic driving restriction or as a felony; (G) if it was obtained through fraud or misrepresentation. Use of the Vehicle in violation of this section makes you liable to us and the Vehicle will be treated as stolen.

**4. DAMAGE OR LOSS.** Unless you purchase LDW, you are absolutely liable and responsible for all loss or damage to the Vehicle, theft, hail, flood, or damage caused by or to the Vehicle, and all costs associated with the loss or damage, regardless of fault or cause, including but not limited to the value of the Vehicle, plus actual towing and storage charges, loss of use, and diminution in value (which is the difference in the value of the Vehicle before the damage and after), if not repaired to our satisfaction. You will pay all rental charges, whichever is later, plus any of our out of pocket expenses, a reasonable administrative fee and pre-rata license plate fees. Your personal insurance may or may not cover any loss. You should check with your own insurance carrier. If you make a claim to the condition of the Vehicle at the time you report the incident, we will accept it. However, your responsibility will not exceed these damages expressly permitted by the applicable law. In this form of Agreement, you agree to pay us an amount up to our limit of liability.

Open flap for Damage/Incident Report ↓

**5. LOSS DAMAGE WAIVER ("LDW").** A. If you accept LDW, we will waive your responsibility for loss of or damage to the Vehicle in full or in part, depending on the LDW option plan accepted. (1) LDW1 a waiver of all damage or loss charged up to the first $500 (the "$500 Waiver Option"); (2) LDW2: a waiver for all loss and damage up to the first $3,000 (the "$3,000 Waiver Option"); (3) LDW3: a waiver for all loss up to the value of the Vehicle minus LDW2 and LDW3 are not available at all locations. B. NEW RENT: ON LDW DOES NOT APPLY IF: THIS SECTION OF THIS AGREEMENT. (2) YOU FAIL TO RETURN AND SECURE THE KEYS, OR CLOSE AND LOCK ALL WINDOWS, DOORS AND TRUNK AND THE VEHICLE IS STOLEN OR VANDALIZED; (3) YOU FAIL TO IMMEDIATELY FILE AND REPORT ANY ACCIDENT OR THEFT COMPLETE OUR INVOLVING THE VEHICLE; (4) YOU FAIL TO PAY THE CHARGES UNDER THIS AGREEMENT; (5) IMPROPER INSTALLATION OF ADDITIONAL EQUIPMENT, CHAINS. SNOW CHAINS, WHICH RESULTS IN DAMAGE TO THE VEHICLE; AND (6) WHEN OTHER EXCLUSIONS ARE ALLOWED BY STATE LAW. LDW DOES NOT APPLY IN MEXICO. LDW does not apply to optional equipment or accessories rented from us unless otherwise noted on the Agreement.

BEFORE DECIDING WHETHER TO PURCHASE LDW, YOU MAY WISH TO DETERMINE WHETHER YOUR OWN INSURANCE AFFORDS YOU COVERAGE FOR DAMAGE TO THE RENTAL VEHICLE AND THE AMOUNT OF THE DEDUCTIBLE UNDER YOUR OWN COVERAGE. THE COVERAGE MAY BE DETERMINING THE PURCHASE OF SUCH COVERAGE ALONG WITH THE TERMS AND SCOPE OF LDW COVERAGE. LDW IS NOT MANDATORY AND MAY BE DECLINED.

THE CHARGES FOR LDW MAY VARY BY DOLLAR LOCATION. LDW CHARGES ARE SUBJECT TO CHANGE WITHOUT NOTICE. YOU AGREE TO REVIEW THE DAILY CHARGE OF LDW AND THE ESTIMATED TOTAL CHARGE FOR LDW FOR YOUR RENTAL PRIOR TO ACCEPTING LDW.

**6. RETURNING AND REPOSSESSING THE VEHICLE.** You agree to return the Vehicle to the rental location on the date and time listed in this Agreement, or sooner if we demand it. If you fail to return the Vehicle at our request, you agree to pay all our expenses and changes including a Drop Fee. You are responsible for the Vehicle until we have inspected and have title to it. You agree to pay all costs and expenses including, but not limited to any loss if you attempt to monitor the Vehicle through remote tracking, devices or otherwise and locate, disable and repossess the Vehicle at your cost and without notice to you if it is being used in violation of the law, illegally parked, apparently abandoned or used in breach of this Agreement.

**7. REFUELING OPTIONS.** You must refill the gas tank of the vehicle to mark a 10 mile radius of the rental return facility and present a fuel receipt or mail a refueling charge unless you choose the Fuel Service Option at the beginning of the rental. Prepaid Fuel Option: If you prepay for a flat fee for the full tank of fuel in the Vehicle with a full tank of fuel. At most of our locations the prepaid fuel charge is calculated by multiplying the stated rate per gallon charge listed in the Agreement by the manufacturer's specified fuel tank capacity for the Vehicle. You acknowledge and agree that this charge is an approximation and you agree to pay the approximate amount of fuel needed to refill the tank (for example, one-half tank) and multiplying that number by the manufacturer's specified fuel tank capacity; or (2) if you did not purchase any fuel during the rental, by dividing the number of gallons needed to refill the Vehicle's estimated average fuel efficiency (in miles per gallon) based on the manufacturer's fuel efficiency specifications.

**8. PERSONAL PROPERTY.** We are not responsible for any loss or damage to any of your or your passenger's personal property that is located, transported in or on the Vehicle, our premises or in an off any other Vehicle, colormark to us. You agree to

**9. THE CHARGES.** You agree to pay us for all charges due under this Agreement, including any applicable taxes and surcharges. These charges are listed at the end of the Agreement. (THE CHARGES ARE BASED UPON A 24-HOUR RENTAL DAY STARTING AT THE TIME OF RENTAL. The minimum charge is one day, plus mileage. The number of miles driven is determined by the odometer reading at the beginning and end of the rental. You will be charged for each hour up to the applicable daily rate. You will be charged a one-day "early return" fee if you return the vehicle more than 24 hours prior to the return date and time on the rental agreement; and, you will be charged a per-day late return fee if you return the vehicle more than the maximum of 6 rental days if you fail to comply with the conditions applicable to the rate, including any special rates, driving restrictions, a mileage charge, surcharge or other rates may apply.

Optional products. You will pay us the daily rate for each day or partial day during the rental period. The optional products described below are any optional products accepted at the beginning of the rental, such as optional equipment, accessories, Loss Damage Waiver (LDW), Uninsured Motorist Protection (UMP), Personal Protection Plan (PPP), Emergency Sickness Protection (ESP). The cost, terms, availability and the optional products may vary from location to location. The optional products listed above are not insurance and may vary from location to location. Supplemental Liability Insurance (SLI). Other Charges. Unless you use the following fees, if applicable: (i) Fuel Charge. Unless you return the Vehicle to a location that is not the rental location, for loss a Drop Fee, which you agree to pay; (ii) Drop Charge. if you return the Vehicle with less than a full tank of fuel, you must refill the gas the roadside to a location, you will be charged the appropriate service fee, of aircraft fees, miscellaneous facility charges, airport concession fees, of the Vehicle within a 10 mile radius of the rental return facility and present a full tank of fuel; otherwise you will pay a fuel charge, the rate of which is fees, off-airport facility fees, license or registration costs, waive license fee; road tax; municipal fees; governmental recoupment fees or other taxes on Damage and fees; Loss of or damage to the Vehicle assessed at a reasonable amounts rent paid by our insurance; credit report costs and processing fees; any fees or charges related to the citations, violations, court costs, collection costs and other charges; reimbursement to any city, county, or municipality which you are responsible for pursuant to a governmental entity; Optional equipment and accessories provided by us including, but not limited to, ski racks, toll passes, GPS system, child seats; taxes, surcharges, recovery fees and other charges, which are imposed on us and which we are permitted by applicable law to pass on to you; and other administrative, service and processing fees; and handling, employment, services & transactions; fuel services; equipment services & transactions.

**10. PAYMENT OF CHARGES.** If you pay for the charges with a credit card or charge card or Authorization at the beginning of the rental an amount which may be the greater of the estimated charges or the amount stated on the Agreement. You authorize us to charge your card for any unpaid claims or other charges. The penalties assessed against you and damages that you are obligated to pay under this agreement. If you fail to return the Vehicle, you also authorize us to charge your card for the amount of any unpaid charges, or, if you pay by check, which is returned unpaid, you will pay an additional fee. Charges not paid when due are subject to a late pay and monthly interest at the lesser of: (1) 1% per month; or (2) the highest rate of interest permitted by applicable law. In the event of a dispute over a charge, if errors are discovered, you will be corrected and will continue to accrue until the Vehicle is required and inspected by us, or stolen, until your fees that's report with the police and us. All charges are subject to final audit. If errors are discovered, you will pay the corrected amount due and we are authorized to correct the charges with the card issuer.

**11. RENTER'S THIRD PARTY LIABILITY RESPONSIBILITY.** Where permitted by law we do not create any third-party liability protection coverage.

Open flap for Damage/Incident Report ↓

**OUT**
**BILITY**
**WAIVER**

mage to the
caused it or
sible for the
Vehicle, and
Your own
and You use
ay cover all
lity for the
Your insur-
to find out
unt of the
y be liable.
ovides cov-
hould check
must first
n insurance
es. We will
r loss of the
ject to the
ent.
0 to $15.00
icide rental is
he rental is
ting terms

**3. PROHIBITED USES:** The Vehicle may not be used...

**4. DAMAGE OR LOSS.** Unless you purchase LDW, you are absolutely liable and ...

**5. VEHICLE AND EQUIPMENT; PROHIBITED USE:** Except for ordinary wear and tear ...

**6. RETURNING AND REPOSSESSING THE VEHICLE.** You agree to return the Vehicle to the renting location ...

**7. REFUELING OPTIONS.** You must refill the gas tank of the vehicle within a 10 mile radius of the rental return facility and provide Avis with a fuel receipt to avoid a refueling charge...

**8. PERSONAL PROPERTY.** We are not responsible for any loss or damage to any of your personal property...

**9. RENTAL CHARGES** If you pay for the charges with a credit, debit or charge card...

**10.PAYMENT OF CHARGES.** ...

**11.RENTERS THIRD PARTY LIABILITY RESPONSIBILITY: Where permitted by law, you do not provide you any third-party liability insurance...**

RENTAL DAY: STARTING AT THE TIME OF RENTAL. The minimum charge is one day, plus mileage...

BEFORE DECIDING WHETHER TO PURCHASE LDW, YOU MAY WISH TO DETERMINE WHETHER YOUR OWN INSURANCE AFFORDS YOU COVERAGE...

injury, death or property damage caused by or arising from the use or operation of the Vehicle during the rental term ("Third-Party Claims"). The minimum amount of such protection is sufficient to satisfy the minimum financial responsibility limits required by law. In the event of an accident, you will provide proof of financial responsibility as required by state law. You agree to indemnify and hold us harmless for any damages whatsoever and will defend us against, and pay the use or operation of the Vehicle during the rental term... provide "uninsured" or "underinsured" motorist protection, physical damage protection for the Vehicle, "no fault" or other input, in the extent permitted by law, and all of such protection. Where we are required by law to provide any such protection, an insurance liability limits of the state in which the Vehicle is rented... Agreement, it shall be secondary over and above any other available insurance provided by or available to you under all other policies of... excess in an amount not to exceed the minimum statutory responsibility limits of the state in which this Agreement is executed. We can provide such protection, where we provide a certificate of self-insurance, an insurance policy, and/or an indemnification, as we choose.

YOU UNDERSTAND THAT A VIOLATION OF THE RENTAL AGREEMENT, OR THE FAILURE TO PAY FOR THE BENEFITS UNDER THE RENTAL AND/OR THE USE OF THE VEHICLE AS PROHIBITED BY SECTION 3 OF THE RENTAL AGREEMENT MAY VOID OR DEPRIVE YOU OF THE BENEFITS, PROTECTION AND LIMITATION OF YOUR RESPONSIBILITY UNDER THE FOLLOWING PROTECTION PLAN COVERAGES.

**12.** OPTIONAL SUPPLEMENTAL LIABILITY INSURANCE ("SLI"). If you accept SLI, you will be provided with protection against Third-Party Claims. Subject to the conditions below, in an amount sufficient to satisfy the minimum applicable financial responsibility liability limits required by law in the jurisdiction in which the Vehicle is rented, and shall be referred to in this policy "Protection" and. SLI will provide you with claims for the difference between the excess coverage against Third-Party Claims of a maximum combined single limit of $1,000,000 (U.S.) per occurrence. This protection provided under the Primary Protection and the SLI policy would have to be exhausted before any coverage for your own policy would be affected. SLI excludes coverage to anything while under the in breach of the Agreement limits and coverage following while under... injury claims by family members related by blood, marriage or adoption and any other person residing with you; (D) failure to accept SLI at the beginning of the rental; (E) failure to pay the charges under the Agreement... other specific occasions under the SLI... the counter... protection unless required by law. To the extent permitted by law, you agree to reject the inclusion in any such coverage. If you accept SLI you... defend, indemnify, and hold us harmless or covered by SLI or the Primary liability or for SLI to apply in Canada, the Vehicle must be both rented in the U.S. and returned to the renting location in the U.S. We can provide Primary Protection and SLI under a certificate of self-insurance, an insurance policy, and/or an indemnification as we choose. SLI DOES NOT APPLY IN MEXICO.

**13.** UNINSURED/UNDERINSURED MOTORIST PROTECTION. If you purchase SLI, you may have the opportunity to purchase UMP. Optional UMP provides you and anyone else occupying the Vehicle while operated by you with coverage for bodily injury and damages caused by an owner or operator of an uninsured or underinsured third party vehicle. The coverage is available up to the protection for law. UMP provides coverage for the difference between any uninsured and underinsured motorist coverage available to you (whether provided by law). In the Agreement, if any, up to $1,000,000 per accident... coverage for: (A) use of the Vehicle in breach of the Agreement... not related to driving while under the influence of drug or drugs in violation of law; (B) violation of the Agreement; (C) failure to purchase SLI; (D) failure to accept UMP at the beginning of the rental; (E) failure to pay the charges under the Agreement; and (F), the other specific exclusions summarized on the separate brochure available at the counter, which is incorporated in this Agreement by reference. For faster and complete summary... UMP is not offered in New York. For faster... the state, UMP is not available to residents of the starting location in the U.S. UMP DOES NOT APPLY IN MEXICO.

**14.** PERSONAL PROTECTION PLAN ("PPP"). PPP includes Personal Accident Insurance ("PAI") and Personal Effects Insurance ("PEI") and where diluted must be purchased together. PAI provides benefits for you and your... dental medical expenses, purchased. PAI will cover you 24-hours a day for all accidents: whether you are actually in the Vehicle or not at the time of the accident. Passengers in the Vehicle are only covered for accidents occurring while the passengers occupy the Vehicle. PEI insures the personal effects of you and your... members who normally reside with you. The amount of PEI per person, up to $1,500 for all persons. PEI pays covered claims even if the member's family members are traveling. The total maximum coverage, which may change from time to time, is currently $650 per person up to $1,950 for all persons. PEI pays covered claims even if the renter's family members are traveling. The total maximum coverage. Brochures available at the counter contain the coverage... by providing coverage. Brochures available at the counter contain the coverage... The purchase of PPP is not mandatory.

**15.** EMERGENCY SICKNESS PROTECTION ("ESP"). ESP is available to non-U.S. citizen renters who possess valid non-U.S. passports at the time of rental. ESP provides certain medical benefits for some sicknesses that may occur during certain periods of the trip (for some non-U.S. persons traveling with the renter, there is a maximum up to $10,000 per person for reasonable and customary cost of necessary medical care for covered sickness, including medical or surgical treatment, hospital services, supplies, x-rays and laboratory fees, local ambulance, visits to a physician's office, subject to a $100 deductible per person per sickness).

**16.** OPTIONAL EQUIPMENT, SERVICES & ACCESSORIES. We offer child safety restraint seats, ski racks, GPS systems and electronic toll by-pass services ("Pass24"), upon request and subject to availability, for your use during the rental for an additional daily charge. We may offer other equipment and services from time to time. If you rent a child safety seat, we will inspect the seat before the... child seat into the Vehicle has the right safety... If you rent a GPS system, prior to leaving the rental premises you should familiarize yourself with the operation of the GPS. If you return the GPS in the same condition in which you received it, ordinary wear and tear excepted, you will pay us an amount that is equal to the actual costs to repair the retail value of the GPS, if available in our discretion, plus shipping charges and a reasonable administrative fee. If you subscribe to our Pass24, it will allow you to bypass all road tolls that are electronically monitored as many times as they want to... a flat fee per day. If you request a fixed control device to use with the road, you may be required to pay a per-day administrative fee. When using the hand control device; (H) any required prior operation of the device and accept the hand control and you agree not to modify, tamper with, or alter the device from the original installation. UOW does not apply to optional equipment or accessories rented from us unless otherwise noted in the Agreement.

**17.** DAMAGE/LOSS AND OTHER OCCURRENCES. You agree to immediately file and report any accident, theft or vandalism involving the Vehicle to us and to the police, complete our Damage/Accident report and deliver to us a legible copy of any... service of process, placing, or notice of any kind relating to a claim or lawsuit in connection with any accident involving the Vehicle. Your failure to cooperate with us in any manner may void any coverage and accurate report creates a rebuttable presumption that the incident was caused by your willful, wanton or reckless misconduct and, as a result, may void any optional products you purchased and make you absolutely liable for any loss or damage to the Vehicle.

**18.** GENERAL PROVISIONS. (A) Vehicle means the Vehicle rented or its replacement, its tires, tools, equipment, accessories, keys and documents. (B) No terms of this agreement may be waived or changed except by a written agreement signed by our authorized representative. (C) If any term of this Agreement is prohibited by law, it shall not affect the remaining terms. (D) Paragraph headings have no independent meaning. (E) You must not remove restraint laws... comply with all laws that may apply or assign this Agreement. (G) We reserve the right to replace a Vehicle or equipment if you have an accident, breakdown, violate the law or for any other reason. (H) We reserve the right to deny future rentals to you if you violate this Agreement. (I) If we revoke the right of driving and we determine in our discretion that your rental violates the terms of this Agreement, (J) you are in violation of any of your drivers' license, for which (I) other rentals in violation of this Agreement subject you to detect fraud, prevent fraud and/or to comply with law enforcement agencies. (J) The parties to this Agreement agree that an electronic signature will be treated as an original.

---

**For faster car return**

Please record odometer and fuel level reading.

Odometer: _____ 45577 _____

Did you purchase fuel? Yes ☐  No ☑

Fuel level: E  1/8  1/4  3/8  1/2  5/8  3/4  7/8  F

Date: _____  Time: _____

**Charge Account Rentals Only:**
Drop this envelope and a copy of your contract in the express return box. You will receive a copy of your invoice in the mail.

**More free benefits.**
**More hassle-free trips.**

**DOLLAR EXPRESS**
From speedy service FREE RENTALS, nothing gets you there faster or easier than Dollar EXPRESS. Enroll today...

**DOLLAR 4Business**
Whether your company is large or small, you're in the driver's seat with Dollar 4Business. SAVE BIG on travel expenses when you choose our distinct travel plans.

**Sign up at Dollar.com or**
**Do More with Your Dollar.**

Customer Service: 1-800-800-4000

service@dollar.com

24-Hour Roadside Assistance: 800-235-9393

Worldwide Reservations: 800-800-4000

Dollar features a wide selection of quality vehicles.
©2009 Dollar Rent A Car, Inc.

## ADDITIONAL DRIVERS

Additional drivers must qualify with a valid driver's license in their own name. There is no charge for additional drivers age 25 and older.

## DRIVING RESTRICTIONS

Driving is restricted to the continental United States and Canada. Vehicle may be driven into Mexico with the purchase of Mexican Insurance at the rental counter for $27.80 per day. A U.S. passport or U.S. passport card is required for re-entry into the United States. Mexican nationals may not drive our vehicles into Mexico.

## FINANCIAL POLICY

A hold will be placed on all credit/debit cards for the estimated amount of the rental plus 15% OR a minimum of $250.00, whichever is greater. We will remove the hold at the end of the rental when the final charges are settled. Dollar does not accept the small key ring credit cards. In the event a customer presents the key ring credit card at the time of rental, the location may ask you to present the standard size credit card or another form of payment.A major credit/debit card in the renter's own name must be presented at the time of pick-up. Customers using debit cards to qualify to rent at the beginning of the rental will be subject to a debit card screening. If the screening fails to meet our debit card criteria, the customer will be required to present a major credit card in order to qualify to rent. Prepaid credit cards and gift cards are accepted for payment at the end of the rental when the final charges have been settled.

## FREQUENT FLYER SURCHARGE

When the renter chooses to receive Frequent Flyer miles, we will collect a Frequent Flyer surcharge, not to exceed $1.50 per day, at the time of rental to offset a portion of the annual cost of participation in the Frequent Flyer program.

## HOLD POLICY

Reservations will be honored for 6 hours after original scheduled pick up time unless the location is closed. Customers with reservations who experience weather or mechanical delays with airlines will be accommodated.

## NON-SMOKING FLEET

Non-Smoking Fleet

## PICK UP INSTRUCTIONS

Courtesy shuttle will pick up at the airport. From Terminal 1, go over the sky bridge to the courtesy shuttle island. From Terminal 2, cross the street to the courtesy shuttle island. Pick up is available from 5am to 12am Sun thru Sat. For pick-up from the commuter terminal, customer must call the location. Phone: (619) 726-0171.

## REFUELING POLICY

Return the vehicle with a full tank of gas to avoid refueling charges.

## RENTALS 30 DAYS OR LONGER

For rentals 30 days or longer, the customer must return the vehicle for maintenance or to renew the contract every 30 days to the location.

## RENTER QUALIFICATIONS

A valid driver's license in the customer's own name must be presented at the time of pick up. Minimum age is 21 on all vehicles. Renters under 25 may be subject to an additional fee.

## RESERVATION AND RENTAL ADJUSTMENTS

Any changes to your reservation or rental may result in a change of rate or additional fees.

## ADDITIONAL DRIVERS

Additional drivers must qualify with a valid driver's license in their own name. There is no charge for additional drivers age 25 and older.

## DRIVING RESTRICTIONS

Driving is restricted to the continental United States and Canada. Vehicle may be driven into Mexico with the purchase of Mexican Insurance at the rental counter for $27.80 per day. A U.S. passport or U.S. passport card is required for re-entry into the United States. Mexican nationals may not drive our vehicles into Mexico.

## FINANCIAL POLICY

A hold will be placed on all credit/debit cards for the estimated amount of the rental plus 15% OR a minimum of $250.00, whichever is greater. We will remove the hold at the end of the rental when the final charges are settled. Dollar does not accept the small key ring credit cards. In the event a customer presents the key ring credit card at the time of rental, the location may ask you to present the standard size credit card or another form of payment.A major credit/debit card in the renter's own name must be presented at the time of pick-up. Customers using debit cards to qualify to rent at the beginning of the rental will be subject to a debit card screening. If the screening fails to meet our debit card criteria, the customer will be required to present a major credit card in order to qualify to rent. Prepaid credit cards and gift cards are accepted for payment at the end of the rental when the final charges have been settled.

## FREQUENT FLYER SURCHARGE

When the renter chooses to receive Frequent Flyer miles, we will collect a Frequent Flyer surcharge, not to exceed $1.50 per day, at the time of rental to offset a portion of the annual cost of participation in the Frequent Flyer program.

## HOLD POLICY

Reservations will be honored for 6 hours after original scheduled pick up time unless the location is closed. Customers with reservations who experience weather or mechanical delays with airlines will be accommodated.

## NON-SMOKING FLEET

Non-Smoking Fleet

## PICK UP INSTRUCTIONS

Courtesy shuttle will pick up at the airport. From Terminal 1, go over the sky bridge to the courtesy shuttle island. From Terminal 2, cross the street to the courtesy shuttle island. Pick up is available from 5am to 12am Sun thru Sat. For pick-up from the commuter terminal, customer must call the location. Phone: (619) 726-0171.

## REFUELING POLICY

Return the vehicle with a full tank of gas to avoid refueling charges.

## RENTALS 30 DAYS OR LONGER

For rentals 30 days or longer, the customer must return the vehicle for maintenance or to renew the contract every 30 days to the location.

## RENTER QUALIFICATIONS

A valid driver's license in the customer's own name must be presented at the time of pick up. Minimum age is 21 on all vehicles. Renters under 25 may be subject to an additional fee.

## RESERVATION AND RENTAL ADJUSTMENTS

Any changes to your reservation or rental may result in a change of rate or additional fees.