United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McKINNON and KRISTEN TOOL, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>DOLLAR THRIFTY AUTOMOTIVE GROUP, INC. d/b/a DOLLAR RENT A CAR; DOLLAR RENT A CAR, INC.; DTG OPERATIONS, INC. d/b/a DOLLAR RENT A CAR; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 12-4457 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE |

I.   **INTRODUCTION**

Plaintiffs Sandra McKinnon ("Ms. McKinnon") and Kristen Tool ("Ms. Tool") (collectively "Plaintiffs") bring this putative class action against Dollar Thrifty Automotive Group, Inc., a Delaware corporation headquartered in Oklahoma, and its subsidiaries Dollar Rent A Car, Inc. and DTG Operations, Inc. (collectively "Defendants"), both Oklahoma corporations.  Plaintiffs, customers of Defendants, allege that Defendants defrauded Plaintiffs and

**United States District Court**
For the Northern District of California

1   other customers in California and Oklahoma, and potentially

2   elsewhere as well.  ECF No. 26 ("FAC").  Defendants now move to

3   dismiss Plaintiffs' FAC and strike Plaintiffs' class allegations.

4   ECF No. 33 ("MTS"); ECF No. 34 ("MTD").  The motions are fully

5   briefed,[1] and are suitable for determination without oral argument,

6   Civ. L.R. 7-1(b).  For the reasons explained below, Defendants'

7   motion to dismiss is GRANTED in part and DENIED in part, and

8   Defendants' motion to strike is DENIED.

9

10  **II.   BACKGROUND**

11      Defendants are car rental companies.  FAC ¶¶ 5-7.  Named

12  Plaintiffs were customers of Defendants who rented cars in

13  California (Ms. Tool) and Oklahoma (Ms. McKinnon).  Id. ¶¶ 3-4.

14  Plaintiffs allege that Defendants organized a scheme to defraud

15  consumers either by fraudulently signing customers up for collision

16  damage waivers, car insurance, and other added services, or by

17  misleading customers into signing up for such services.  Id. ¶ 1.

18  Plaintiffs claim that Defendants' conduct amounted to a systematic,

19  nationwide program through which Defendants' employees and agents

20  would dupe customers into buying services that those customers had

21  specifically declined or attempted to decline.  Id. ¶ 12.

22      Ms. McKinnon, a California resident, alleges that she made an

23  online reservation through Defendants' reservation system and

24  specifically declined all available optional add-ons at that time.

25  Id. ¶ 13.  However, Plaintiffs aver that when Ms. McKinnon picked

26  up her car from Defendants' facility in the Tulsa airport,

27

28  _____
    [1] ECF No. 40 ("Opp'n to MTD"); ECF No. 41 ("Opp'n to MTS"); ECF No.
    44 ("Reply ISO MTS"); ECF No. 45 ("Reply ISO MTD").

**United States District Court**
For the Northern District of California

Defendants' agent tried to offer her a variety of additional services, all of which she orally declined.  Id.  When Ms. McKinnon was asked to sign an electronic signature pad to complete her transaction, Defendants' agent told her to initial certain areas in order to decline the add-ons.  Id.  She did so and was handed a folded-up copy of her rental contract, though the agent allegedly did not discuss the total amount charged.  Id.  When Ms. McKinnon returned the car to Defendants, she was allegedly charged an additional $359.65, almost the total cost of the rental car.  Id.  Defendants' manager at the Tulsa airport would not discuss the charges with her, and Defendants' other employees allegedly said in reference to Defendants, "They never give the money back.  You are not going to get your money back."  Id. ¶ 14.  Ms. McKinnon tried contacting Defendants after that, including by sending them a written demand for the return of her money, but to no avail.  Id.  Ms. Tool's experience was substantially similar, though she (unlike Ms. McKinnon) allegedly disputed her charges with her credit company.  See id. ¶ 15.  Plaintiffs' FAC includes a litany of other consumers' reviews of Defendants' services, all reporting experiences similar to Ms. McKinnon's and Ms. Tool's.  See id. ¶¶ 17-20.

In both Ms. Tool and Ms. McKinnon's cases, Defendants' records allegedly show that Plaintiffs' electronic signatures and checked boxes from the touchpads they were offered when picking up their cars indicate that Plaintiffs accepted Defendants' additional services instead of declining them, as Defendants' agents allegedly led Plaintiffs to believe.  See id.  Defendants therefore told Plaintiffs that, since their records indicate that Plaintiffs opted

into all charges, Plaintiffs have no recourse against Defendants. Id. ¶¶ 16-17. Plaintiffs aver that they never intended to accept any of these charges and that Defendants' agents instructed them that signing and checking the electronic forms they were offered would decline the add-ons. See id. ¶¶ 15-20. Plaintiffs further allege that Defendants never reviewed the final contract or final charges with them, suggesting that Defendants rely on the hustle and rush of airports to send their customers away without having reviewed their rental charges. Id. ¶¶ 19-20. According to Plaintiffs, Defendants' business model is built on incentivizing this sort of fraud, because Defendants' employees are paid minimum wage but make commissions of up to 12 percent on the sales of add-ons, while employees who fail to obtain "an average 30 per day up-sales of additional options for three months" may be terminated without eligibility for unemployment. Id. ¶ 18.

Plaintiffs therefore brought this action on behalf of themselves and other similarly situated customers of Defendants, asserting the following causes of action: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., for unlawful, unfair, and fraudulent business acts and practices; (2) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (3) violation of the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, § 751 et seq.; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) unconscionability; and (7) common counts, assumpsit, unjust enrichment, and restitution. Id. ¶¶ 29-78. Defendants now move to dismiss Plaintiffs' FAC and strike Plaintiffs' class allegations.

**United States District Court**
For the Northern District of California

III. **LEGAL STANDARD**

    A.   **Motions to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).  A court's review of a motion to dismiss is generally "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." See Kourtis v. Cameron, 419 F.3d 989, 994 n.2 (9th Cir. 2005).

///

**United States District Court**
For the Northern District of California

### B.   Motions to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike "are generally disfavored . . . [and] are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation."  Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

## IV.   DISCUSSION

### A.   Defendants' Motion to Dismiss

Defendants argue that all of Plaintiffs' claims, except Ms. Tool's UCL claims, should be dismissed because (1) the presumption against extraterritorial application of statutes means that Plaintiffs' UCL, CLRA, and OCPA claims all fail where Plaintiffs' allegations would cause these statutes to operate extraterritorially; (2) Plaintiffs' OCPA claims are barred by the voluntary payment doctrine, a defense that a payment knowingly made may not be recovered; and (3) Plaintiffs' common law claims fail because Plaintiffs fail to plead essential elements of those claims.  Plaintiffs' opposition brief includes extensive argument about whether Plaintiffs have sufficiently pled elements of the UCL, CLRA, and OCPA, but since Defendants' arguments concern whether Plaintiffs' claims are barred for threshold reasons, the Court does not address the substance of Plaintiffs' claims at this point.

///

6

**United States District Court**
For the Northern District of California

### a.   <u>OCPA and the Voluntary Payment Doctrine</u>

OCPA prohibits, among other things, knowingly making false or misleading statements or trade practices concerning consumer transactions.  Okla. Stat. tit. 15, §§ 751, 753, 753(13).  Plaintiffs claim that Defendants' acts in the Tulsa airport violate OCPA because Defendants' agents allegedly "knowingly made false and misleading statements, and engaged in deceptive trade practices" when they misled Ms. McKinnon into paying for services she did not want.  FAC ¶ 58.  Defendants argue that Ms. McKinnon's claim under OCPA is foreclosed by the "voluntary payment doctrine, under which money voluntarily paid with full knowledge of the facts under which it was demanded cannot be recovered."  MTD at 7 (internal citations and quotations omitted).

California law treats the voluntary payment doctrine as an affirmative defense.  <u>See, e.g.</u>, <u>Ellsworth v. U.S. Bank, N.A.</u>, --F. Supp. 2d. --, No. C 12-02506 LB, 2012 WL 6176905, *14 (N.D. Cal. Dec. 11, 2012).  Motions to dismiss based on affirmative defenses can be granted if the complaint's allegations, with all inferences drawn in the plaintiff's favor, nonetheless show that the affirmative defense is obvious on the face of the complaint.  <u>See Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010).  The Court does not find that the affirmative defense of the voluntary payment doctrine was obvious on the face of the FAC.  The parties dispute whether Ms. McKinnon's payment was made "with full knowledge of the facts," and the cases Defendants cite to resolve this issue, <u>C9 Ventures v. SVC-West, L.P.</u>, 202 Cal. App. 4th 1483, 1501 (Cal. Ct. App. 2012), and <u>Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.</u>, 89 Cal. App. 4th

1042, 1049 (Cal. Ct. App. 2001), are inapposite because they state the rule that parties to a valid contract must be held to the provisions of that contract regardless of whether they were aware of those provisions.  That is a different question from whether a party actually had knowledge of those provisions for purposes other than contract enforcement.

Plaintiffs' OCPA claims as to Ms. McKinnon are therefore undisturbed.  Plaintiffs' OCPA claims as to Ms. Tool are discussed below.

### b. <u>Extraterritorial Application of the UCL, CLRA, and OCPA</u>

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Similarly, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  OCPA prohibits, among other things, knowingly making false or misleading statements or trade practices concerning consumer transactions.  Okla. Stat. tit. 15, §§ 751, 753, 753(13).

California law presumes that the Legislature did not intend a statute to be "operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history."  <u>Sullivan v. Oracle Corp.</u>, 51 Cal. 4th 1191, 1207 (Cal. 2011) (citations and quotations omitted).  With regard to the UCL and CLRA, non-California residents' claims are not supported "where none of the alleged misconduct or injuries occurred in California."  <u>Clothesrigger, Inc. v. GTE Corp.</u>, 191 Cal. App. 3d 605, 612-13 (1987) (citing <u>Norwest Mortg. Inc. v.</u>

**United States District Court**
For the Northern District of California

<u>Superior Court</u>, 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999));
<u>Banks v. Nissan N. Am., Inc.</u>, 2012 U.S. Dist. LEXIS 37754, *3 (N.D. Cal. Mar. 20, 2012).  Oklahoma law is in accord with the presumption against extraterritoriality.  <u>Harvell v. Goodyear Tire & Rubber Co.</u>, 164 P.3d 1028, 1037 (Okla. 2007) ("Courts have generally determined that the focus of the inquiry concerning application of [consumer protection statutes] to out-of-state consumers is whether the offending consumer transaction occurred with[in] the state.")

Defendants argue that Ms. McKinnon's UCL and CLRA claims are barred by the presumption against extraterritoriality since they "depend on actions and alleged injuries occurring in Oklahoma," because Plaintiffs allege that Defendants' agents "tried to up-sell" Ms. McKinnon in the Tulsa airport, that she was fraudulently charged by Defendants in Tulsa, and that she paid Defendants in Tulsa.[2]  <u>See</u> MTD at 7.  Defendants conclude that if Ms. McKinnon's injuries took place in Oklahoma, then no California statute can encompass those injuries.  Defendants make the same territorial argument as to Ms. Tool's OCPA claim, since the core of Ms. Tool's allegations about Defendants' behavior is located in California, not Oklahoma.  <u>Id.</u> at 7-8.

Plaintiffs allege that Defendants do business in California through their website and at California airports, thereby linking Defendants to this jurisdiction.  FAC ¶¶ 5-7.  Further, as to Ms.

---

[2] Defendants' footnotes also raise the argument, which Plaintiffs join, that applying California statutes to an Oklahoma transaction would violate the Dormant Commerce Clause.  <u>See</u> MTD at 7 n.7; Opp'n to MTD at 8 n.2; Reply ISO MTD at 4 n.3.  The Court declines to address this argument at this point, because the Court finds that the presumption against extraterritoriality bars Plaintiffs' claims as to Ms. McKinnon as pled in Plaintiffs' FAC.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

McKinnon's injuries, Plaintiffs argue that "even though [Ms. McKinnon] picked up the vehicle in Oklahoma, she made the reservation for the rental, where she specifically placed [Defendants] on notice that she specifically declined all available additional optional add-ons, in California.  As such her injury also occurred in the State of California."  Opp'n to MTD at 8.

With regard to Ms. McKinnon, Plaintiffs also argue that "California residents . . . may bring claims under the UCL and CLRA regardless of where the 'injury' took place."  Opp'n to MTD at 7. In support of this, Plaintiffs cite Allstate Ins. Co. v. Hague, 449 U.S. 302, 315 (1981), for the principle that "[n]umerous cases have applied the law of a jurisdiction other than the alleged situs of the injury where there existed some other link between that jurisdiction and the occurrence."  Id.  Plaintiffs cite Allstate's holding correctly, but the issue in Allstate involved choice of law, not the reach of one particular state's statute.  Allstate does not support Plaintiffs' broad claim that California residents can bring UCL and CLRA claims regardless of where their injuries take place.

Plaintiffs further cite Stop Youth Addiction v. Lucky Stores, Inc., 17 Cal. 4th 553, 570 (Cal. Ct. App. 1998), to argue that because the California Legislature deleted the language "in this state" from the UCL in 1992, they meant for the UCL to encompass past activity and out-of-state activity.  Id.  However, California courts have already rejected this argument.  Norwest, 72 Cal. App. 4th at 223-24 ("The 1992 amendment did not expand the conduct regulated by the UCL. It clarified the scope of injunctive relief available to a plaintiff who was already entitled to pursue a claim

**United States District Court**
For the Northern District of California

1  under the UCL.").

2      None of Plaintiffs' other cases are apposite.  Both <u>Yu v.</u>

3  <u>Signet Bank/Virginia</u>, 69 Cal. App. 4th 1377, 1381-82 (Cal. Ct. App.

4  1999), and <u>Speyer v. Avis Rent A Car System, Inc.</u>, 415 F. Supp. 2d

5  1090, 1099 (S.D. Cal. 2005), affirm the rule that California

6  residents can bring claims against out-of-state defendants if their

7  injuries occurred in California.  Moreover, <u>Speyer</u> noted that

8  similarly situated plaintiffs could state a UCL claim if they were

9  harmed at the moment they received unlawful online rental quotes

10  from the out-of-state car rental defendants, but that is not what

11  Plaintiffs pled here.  In any event, <u>Speyer</u> partly concerned an

12  underlying California statute that specifically prohibited car

13  rental companies from offering misleading quotes to customers.  415

14  F. Supp. 2d at 1095.

15      The Court finds that Plaintiffs' UCL and CLRA claims are too

16  attenuated as to Ms. McKinnon.  Everything Plaintiffs plead

17  regarding Ms. McKinnon suggests that any harms actually arose in

18  Oklahoma, when Defendants' agents allegedly tricked Ms. McKinnon

19  into purchasing unwanted add-ons at the point of sale.  Ms.

20  McKinnon's online reservation, made from California, was not enough

21  to bring Defendants' Oklahoma activity within the scope of the UCL

22  and CLRA, since Plaintiffs did not plead, for example, that

23  Defendants engaged in any injurious or fraudulent activity at the

24  time Ms. McKinnon made her reservation.

25      Similarly, as to Ms. Tool's OCPA claims, the injuries in

26  question took place in California, and there is no indication that

27  OCPA encompasses injury to a non-Oklahoma-resident occurring

28  outside Oklahoma.  Plaintiffs argue that Oklahoma courts do not

1  follow the "<u>lex</u> <u>loci</u> <u>delicti</u>" rule,[3] but rather the "most

2  significant relationship" test, in determining which jurisdiction's

3  law should govern a dispute.  Opp'n to MTD at 12-13 (citing

4  <u>Brickner</u>, 525 P.2d at 635-37).  However, the issue here is not

5  choice of law but rather whether a state consumer protection

6  statute should apply extraterritorially -- and the answer is that

7  it cannot.  <u>See</u> <u>Harvell</u>, 164 P.3d at 1037 ("[T]he focus of the

8  inquiry concerning the application of [a consumer protection

9  statute] to out-of-state consumers is whether the offending

10  consumer transaction occurred with[in] the state.").

11      Plaintiffs' CLRA and UCL claims as to Ms. McKinnon are

12  DISMISSED with leave to amend.  Plaintiffs may amend if they can

13  plead that Ms. McKinnon's injuries occurred within those statutes'

14  territorial scopes.  Plaintiffs' OCPA claims as to Ms. Tool are

15  DISMISSED with leave to amend for the same reasons.  Plaintiffs'

16  OCPA claims as to Ms. McKinnon remain undisturbed, as do

17  Plaintiffs' UCL and CLRA claims as to Ms. Tool.

18          **c.   <u>Notice Under the CLRA</u>**

19      Consumers bringing actions under CLRA provisions must give

20  notice to the alleged offender at least thirty days prior to the

21  commencement of an action for damages, demanding that the offender

22  "correct, repair, replace, or otherwise rectify the goods or

23  services alleged to be in violation of [the CLRA]."  Cal. Civ. Code

24  § 1782.  The purpose of this requirement is to give defendants the

25  opportunity to cure their alleged violations before they may be

26

27  _____

   [3] The <u>lex loci delicti</u> rule is a choice of law rule.  It states
28  that "the law of the place of the injury or where the cause of
   action arose[] determines the substantive rights and liabilities of
   the parties."  <u>Brickner v. Gooden</u>, 525 P.2d 632, 634 (Okla. 1974).

United States District Court
For the Northern District of California

1  held liable for damages.  Outboard Marine Corp. v. Super. Ct., 52

2  Cal. App. 3d 30, 41 (Cal. Ct. App. 1975).

3      Plaintiffs pled, as to the notice requirement, that "[w]ritten

4  notice pursuant to the provisions of the CLRA was provided to

5  [Defendants] by Ms. McKinnon on behalf of all Class members on June

6  6, 2012."  FAC ¶ 56.  Defendants argue that because Ms. McKinnon

7  lacks standing to bring a CLRA claim (per the arguments addressed

8  in Section IV.A.b, supra), her notice is insufficient to allow Ms.

9  Tool or other putative class members to bring a CLRA action,

10 because no class has yet been certified, and Plaintiffs' prayer for

11 damages under the CLRA as to Ms. Tool would be impermissible

12 without her having filed a CLRA notice of her own.  Reply ISO MTD

13 at 6-7 (citing Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d

14 939, 949 (S.D. Cal. 2007) (holding that CLRA claims for damages

15 must be dismissed with prejudice if a plaintiff does not comply

16 with CLRA notice procedures)).

17     Defendants' arguments are unavailing.  First, the Court has

18 not determined that Ms. McKinnon definitively lacks status to bring

19 a CLRA claim.  As noted in Section IV.A.b supra, Ms. McKinnon may

20 yet plead a CLRA claim that is not barred by California's

21 presumption against extraterritoriality.

22     Second, Defendants' allegations that the named Plaintiffs

23 cannot give notice on behalf of a class that does not exist yet

24 raises an irrelevant issue.  The cases Defendants cite, Lierboe v.

25 State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022-23 (9th Cir.

26 2003), and Boyle v. Madigan, 492 F.2d 1180, 1182 (9th Cir. 1974)),

27 rightly state that named plaintiffs in a putative class action who

28 lack standing to bring certain claims cannot litigate those claims

13

**United States District Court**
For the Northern District of California

on behalf of those not present.  But the Court has not held that Plaintiffs lack standing to bring a CLRA claim, and moreover, those cases do not state that plaintiffs cannot give notice under the CLRA on a class's behalf.

Third, the CLRA's notice function is in place to ensure that Defendants are aware of alleged wrongdoing and given an opportunity to correct it before they are sued.  That purpose was served when Ms. McKinnon gave notice to Defendants of an impending class action lawsuit concerning Defendants' add-on service sales practices. Defendants were "on notice that [they were] being sued by a putative class, and thus the notice was sufficient 'to facilitate pre-complaint settlement,' which is the purpose of the CLRA notice requirements." See In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (quoting Outboard Marine, 52 Cal. App. 3d at 41).

Therefore the Court declines to dismiss Plaintiffs' CLRA claims for lack of notice, though as stated above, Plaintiffs' CLRA claims as to Ms. McKinnon are dismissed with leave to amend for other reasons.

### d.   **Plaintiffs' Common Law Claims**

Defendants also argue that Plaintiffs' common law claims must fail primarily because Plaintiffs fail to plead requisite elements of those claims.

### i.   **Breach of Contract**

"To state a cause of action for breach of contract, a party must plead [1] the existence of a contract, [2] his or her performance of the contract or excuse for nonperformance, [3] the defendant's breach, and [4] resulting damage." Mora v. U.S. Bank,

1   <u>N.A.</u>, No. 11-6598 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012)

2   (citing <u>Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307

3   (Cal. Ct. App. 1999)).  Additionally, if the plaintiff alleges the

4   existence of a contract, the plaintiff may set forth the contract

5   verbatim, attach it as an exhibit, or plead it according to its

6   legal effect.  <u>See</u> <u>Lyons v. Bank of America, N.A.</u>, No. 11-01232 CW,

7   2011 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011).

8        Plaintiffs point to the contracts that Ms. McKinnon and Ms.

9   Tool signed when they picked up their rental cars in Oklahoma and

10  California, arguing that Defendants breached those contracts by

11  tricking Plaintiffs into checking boxes in order to claim that

12  Plaintiffs ordered unwanted products and services, or by "inputting

13  [Plaintiffs'] signature without authorization."  FAC ¶ 66.

14  Plaintiffs do not cite, attach, or explain in real detail the

15  contract provisions that Defendants allegedly breached.

16  Plaintiffs' allegations appear to align more with a

17  misrepresentation claim or some other cause of action sounding in

18  fraud.  Plaintiffs have failed to plead a breach of contract, so

19  this claim is DISMISSED with leave to amend so that Plaintiffs can

20  specify exactly which contract provisions Defendants breached.

21             **ii.    Breach of the Implied Covenant of Good**

22                      **Faith and Fair Dealing**

23       "The covenant of good faith and fair dealing, implied by law

24  in every contract, exists merely to prevent one contracting party

25  from unfairly frustrating the other party's right to receive the

26  benefits of the agreement actually made."  <u>Guz v. Bechtel Nat.</u>

27  <u>Inc.</u>, 24 Cal. 4th 317, 349 (Cal. 2000).  The covenant thus prevents

28  a contracting party from taking an action that, although

technically not a breach, frustrates the other party's right to the benefit of the contract.  Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1153 (Cal. Ct. App. 1990).  The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Guz, 24 Cal. 4th at 349-50.  The elements of a claim for breach of the covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

Woods v. Google, Inc., -- F. Supp. 2d --, 2012 WL 3673319, at *8 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by implementing systemic policies and practices meant to trick or mislead customers into buying unwanted services, despite having been placed on notice that those practices were taking place nationwide.  Plaintiffs do not, however, point to a specific part of the contract that serves as the premise for their claim.  The Court finds that allowing these claims to proceed given their identity with Plaintiffs' breach of contract claims would be superfluous.  Accordingly Plaintiffs' claims here are DISMISSED with leave to amend to correct these errors.

///

///

**United States District Court**
For the Northern District of California

1              **iii.  Common Counts, Unjust Enrichment,**

2                    **Restitution, and Assumpsit**

3         Count 8 of the FAC pleads a cause of action "[u]nder common

4    law principles of common counts, assumpsit, unjust enrichment,

5    and/or restitution," based on Defendants' alleged receipt of money

6    charged to Plaintiffs with the knowledge that those charges were

7    improper or illegal.  FAC ¶¶ 75-78.  Defendants argue that "there

8    is no cause of action for 'unjust enrichment' in California."  MTD

9    at 13 (citing Wolph v. Acer Am. Corp., No. C 09-0314 JSW, 2009 WL

10   2969467 (N.D. Cal. Sept. 14, 2009).  Defendants further argue that

11   even if there were, the Court should dismiss that claim -- as well

12   as claims for assumpsit, common counts, and common law restitution

13   -- because they would be duplicative of other theories of relief.

14   MTD at 13.  Plaintiffs respond that this Court has held that unjust

15   enrichment can be an alternative claim to breach of contract when,

16   for example, "the parties have a contract that was procured by

17   fraud or is for some reason unenforceable."  Opp'n to MTD at 21

18   (citing Monet v. Chase Home Fin. LLC, No. C 10-0135 RS, 2010 WL

19   2486376, at *8-9 (N.D. Cal. June 16, 2010)).  Plaintiffs continue

20   that their remaining claims under Count 8 do not fail because they

21   are pled as equitable alternatives to the breach of contract claim.

22   Id.

23        Plaintiffs are correct that this Court has recognized unjust

24   enrichment as an equitable alternative to breach of contract

25   claims.  See, e.g., Monet, 2010 WL 2486376, at *8-9; McBridge v.

26   Boughton, 123 Cal. App. 4th 379, 388 (Cal. Ct. App. 2004)

27   (construing a claim for "unjust enrichment" as an attempt to plead

28   a cause of action giving rise to restitution).  Construing the

1   pleadings liberally, Plaintiffs have pled that the contracts they
2   signed were obtained essentially through fraud, in which case
3   restitution under an unjust enrichment theory could be an
4   appropriate remedy.  The Court finds that Plaintiffs have
5   sufficiently pled an equitable unjust enrichment claim insofar as
6   it is an equitable alternative to and not duplicative of
7   Plaintiffs' other claims.  However, Plaintiffs' claims for
8   assumpsit, common law restitution, and common counts are DISMISSED
9   because Plaintiffs fail to state a legal basis for those claims,
10   and they would be duplicative of Plaintiffs' unjust enrichment
11   claim.

12                  **iv.    Unconscionability**

13       Plaintiffs plead that the contracts they have with Defendants
14   are procedurally and substantively unconscionable, because
15   Defendants did not disclose to Plaintiffs that they would be
16   charged for unwanted add-ons or obtain Plaintiffs' "free and proper
17   affirmative consent" prior to these charges, and because Defendants
18   allegedly forged Plaintiffs' signatures to the rental agreements.
19   FAC ¶¶ 70-75.  Further, Plaintiffs allege that the agreements they
20   signed were contracts of adhesion, and the parties' disparate
21   bargaining positions combined with the contracts' unfair terms
22   suffice to make Plaintiffs' claims here actionable under California
23   and Oklahoma statutes allowing Courts to refuse to enforce
24   unconscionable statutes.  Id. ¶ 73 (citing Cal. Civ. Code section
25   1670.5 and Okla. Stat. Tit. 12A, § 2-302.

26       Plaintiffs' claim must be dismissed because it fails to set
27   forth a cognizable legal theory.  Unconscionability under both
28   statutes Plaintiffs cite, as well as under common law, is a defense

**United States District Court**
For the Northern District of California

1  to the enforcement of a contract, not an independent cause of

2  action.  Plaintiffs' claim for unconscionability is DISMISSED with

3  prejudice.

4    **B.**  **Defendants' Motion to Strike**

5    Plaintiffs bring this action on behalf of all of Defendants'

6  customers in California and Oklahoma who, within the last four

7  years, paid for add-ons that they either declined or did not

8  authorize with free consent.  FAC ¶ 21.  Defendants move to strike

9  all of Plaintiffs' class allegations pursuant to Rule 12(f),

10  arguing that "it is apparent from the face of the [FAC] that no

11  class can be certified."  MTS at 4.  Plaintiffs oppose this motion

12  on the grounds that it is premature.  Opp'n to MTS at 1.

13    Class allegations typically are tested on a motion for class

14  certification, not at the pleading stage.  See Collins v. Gamestop

15  Corp., C 10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6,

16  2010).  However, "[s]ometimes the issues are plain enough from the

17  pleadings to determine whether the interests of the absent parties

18  are fairly encompassed within the named plaintiff's claim." Gen.

19  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, some

20  courts have struck class allegations where it is clear from the

21  pleadings that class claims cannot be maintained.  E.g., Sanders v.

22  Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal.2009).

23    Defendants argue that Plaintiffs' class allegations should be

24  stricken because (1) the class is not ascertainable; (2) individual

25  inquiries predominate; (3) Plaintiffs' rental agreements

26  demonstrate the absence of any uniform, class-wide proof; and (4)

27  Plaintiffs cannot show class-wide injury and causation.  MTS at 4-

28  11.  Defendants' arguments on the first three points are

19

**United States District Court**
For the Northern District of California

1   essentially the same: they claim that the Court would have to

2   conduct individualized inquiries or "mini-trials" to decide whether

3   Plaintiffs were really eligible for class membership.  See MTS at

4   4-9.  Defendants' argument on the last point is that Plaintiffs'

5   claims sound in fraud, since they involve face-to-face interactions

6   and oral representations between Defendants' employees and

7   Plaintiffs, and that fraud-based claims are generally not amenable

8   to class-wide proof of injury and causation.  Id. at 9-10.

9        Whatever the merits of Defendants' claims, they are premature

10  at the pleading stage.  The parties have had no time to develop a

11  factual record, and so it is unclear whether Defendants' arguments

12  on this point have any merit.  Moreover, it is not clear from

13  Plaintiffs' pleadings that no class can be maintained.  See Sanders

14  v. Apple, 672 F. Supp. 2d at 990.  Defendants' motion to strike is

15  therefore DENIED.

16

17  **V.    CONCLUSION**

18       As explained above, the Court GRANTS IN PART and DENIES IN

19  PART Defendants Dollar Thrifty Automotive Group, Inc., Dollar Rent

20  A Car, Inc., and DTG Operations, Inc.'s motion to dismiss Sandra

21  McKinnon and Kristen Tool's complaint, and DENIES their motion to

22  strike.  The Court orders as follows:

23  • Plaintiffs' UCL claims are DISMISSED with leave to amend as to

24    Ms. McKinnon, but undisturbed as to Ms. Tool.

25  • Plaintiffs' CLRA claim is DISMISSED with leave to amend as to

26    Ms. McKinnon, but undisturbed as to Ms. Tool.

27  • Plaintiffs' OCPA claim is DISMISSED with leave to amend as to

28    Ms. Tool, but undisturbed as to Ms. McKinnon.

- Plaintiffs' breach of contract claim is DISMISSED with leave to amend.
- Plaintiffs' claim for breach of the covenant of good faith and fair dealing is DISMISSED with leave to amend.
- Plaintiffs' unconscionability claim is DISMISSED WITH PREJUDICE.
- Plaintiffs' common counts, common law restitution, and assumpsit claims are DISMISSED WITH PREJUDICE, but Plaintiffs' equitable unjust enrichment claim is undisturbed.

Plaintiffs have thirty (30) days from the signature date of this Order to file an amended complaint curing the defects described in Section III.A supra, or the Court may dismiss their defective claims with prejudice.  The status conference now scheduled for Friday, March 15, 2013, is hereby VACATED and rescheduled for Friday, May 24, 2013.



        IT IS SO ORDERED.


        Dated: MARCH  4 , 2013

                                    _____
                                    UNITED STATES DISTRICT JUDGE