United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McKINNON and KRISTEN TOOL, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>DOLLAR THRIFTY AUTOMOTIVE GROUP, INC. d/b/a DOLLAR RENT A CAR; DOLLAR RENT A CAR, INC.; DTG OPERATIONS, INC. d/b/a DOLLAR RENT A CAR; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 12-4457 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT |

I. **INTRODUCTION**

    Plaintiffs Sandra McKinnon and Kristen Tool (collectively "Plaintiffs") bring this putative class action against Dollar Thrifty Automotive Group, Inc., a Delaware corporation headquartered in Oklahoma, and its subsidiaries Dollar Rent A Car, Inc. and DTG Operations, Inc. (collectively "Defendants"), both Oklahoma corporations.  Plaintiffs, customers of Defendants, allege in their second amended complaint that Defendants defrauded

United States District Court
For the Northern District of California

Plaintiffs and other customers in California and Oklahoma.  ECF No.
50 ("SAC").  Defendants now move to dismiss portions of Plaintiffs'
SAC.  ECF No. 51 ("Mot.").  The Motion is fully briefed, ECF Nos.
55 ("Opp'n"), 60 ("Reply"), and is suitable for determination
without oral argument, Civ. L.R. 7-1(b).  For the reasons explained
below, Defendants' motion to dismiss portions of Plaintiff's SAC is
GRANTED IN PART and DENIED IN PART.

## II.   BACKGROUND

Defendants are car rental companies.  SAC ¶¶ 5-7.  Named
Plaintiffs were customers of Defendants who rented cars in
California (Ms. Tool) and Oklahoma (Ms. McKinnon).  Id. ¶¶ 3-4.

Ms. McKinnon, a California resident, alleges that she made an
online vehicle reservation with Defendants via their partner
Southwest Airlines's website.  Id. ¶ 13.  At that time, Defendants
apparently offered her a daily rental rate, including "approximate
taxes and fees," and stated that additional taxes, surcharges, or
fees "may apply."  Id.  Ms. McKinnon submitted her payment
information to Defendants via their website in order to confirm her
reservation, at which point she received a confirmation number from
Defendants, as well as a "rate breakdown" of two weeks' rental time
at $147.56 plus one extra day at $20.69 (totaling a "base rate" of
$315,81") and $160.46 in taxes and fees.  Id.; see also SAC Ex. 1
("Confirmation").[1]

Defendants offer their own damage waivers and insurance, but
at no point during the reservation process did Defendants disclose

---

[1] Plaintiffs refer to the Confirmation as if it generally
represents the "initial reservation agreements" they claim to have
entered.  The Court does the same.

that some of the waivers or insurance they offer might be
duplicative of what customers might already have through credit
card companies or private insurers.  See SAC ¶ 13.  Plaintiffs
allege that Defendants should have known such duplicative coverage
would be likely.  See id.  Further, Plaintiffs state that none of
Defendants' representations or agreements during their online
reservation process provided specific information about potential
add-on fees, though the Confirmation stated that additional fees,
surcharges, and taxes may apply.  See id.; see also Confirmation at
1-2.

    Plaintiffs aver that when Ms. McKinnon picked up her car from
Defendants' facility in the Tulsa airport, Defendants' agent tried
to offer her a variety of additional services, all of which she
orally declined.  Id.  When Ms. McKinnon signed Defendants'
electronic signature pad to complete her transaction, Defendants'
agent told her to initial certain areas in order to decline the
add-ons.  Id.  She did so and was handed a folded-up copy of her
rental contract.  Id.  The agent allegedly did not discuss the
total amount charged.  Id.  When Ms. McKinnon returned her rental
car to Defendants, she was allegedly charged an additional $359.65,
almost the total cost of the rental itself.  Id.  Defendants'
manager at the Tulsa airport would not discuss the charges with
her, and Defendants' other employees allegedly said in reference to
Defendants, "They never give the money back.  You are not going to
get your money back."  Id. ¶ 14.  Ms. McKinnon tried contacting
Defendants after that, including by sending them a written demand
for the return of her money, but she never received a refund or any
form of redress.  Id.

**United States District Court**
For the Northern District of California

1    Ms. Tool's experience renting a car from Defendants was

2  substantially similar, though she (unlike Ms. McKinnon) allegedly

3  disputed her charges with her credit card company, and Plaintiffs

4  allege that she (also unlike Ms. McKinnon) prepaid her reservation.

5  See id. ¶ 15.[2]

6    In both Ms. Tool and Ms. McKinnon's cases, Defendants' records

7  allegedly show that Plaintiffs' electronic signatures and checked

8  boxes from the touchpads they were offered when picking up their

9  cars indicate that Plaintiffs accepted Defendants' additional

10  services instead of declining them, as Defendants' agents allegedly

11  led Plaintiffs to believe.  See id. ¶¶ 15-17.  Defendants therefore

12  told Plaintiffs that they had no recourse against Defendants, since

13  Defendants' records indicated that Plaintiffs opted into all

14  charges.  Id. ¶¶ 16-17.

15    Plaintiffs aver that they never intended to accept any of

16  these charges and that Defendants' agents instructed them that

17  signing and checking the electronic forms they were offered would

18  decline the add-ons.  See id. ¶¶ 15-20.  Plaintiffs further suggest

19  that Defendants rely on the hustle and rush of airports to send

20  their customers away without having reviewed their rental charges,

21  thereby giving Defendants a basis for claiming that their customers

22  routinely agree to the add-on charges.  Id. ¶¶ 19-20.  According to

23  Plaintiffs, Defendants' business model is built on incentivizing

24  this sort of fraud, because Defendants' employees are paid minimum

25  wage but make commissions of up to twelve percent on the sales of

26  add-ons, while employees who fail to obtain "an average 30 per day

27  _____

28  [2] Plaintiffs' FAC includes a long list of other consumers' reviews
of Defendants' services, all reporting experiences similar to Ms.
McKinnon's and Ms. Tool's.  See id. ¶¶ 17-20.

1  up-sales of additional options for three months" may be terminated

2  without eligibility for unemployment.  <u>Id.</u> ¶ 18.

3      Based on the facts described above, Plaintiffs' SAC asserts

4  eight causes of action against Defendants: (1-3) violations of

5  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

6  §§ 17200 <u>et seq.</u>, for unlawful, unfair, and fraudulent business

7  acts and practices; (4) violation of California's Consumers Legal

8  Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 <u>et seq.</u>; (5)

9  violation of the Oklahoma Consumer Protection Act ("OCPA"), Okla.

10 Stat. tit. 15, § 751 <u>et seq.</u>; (6) breach of contract and breach of

11 the covenant of good faith and fair dealing; (7) declaratory

12 relief; and (8) unjust enrichment.  SAC ¶¶ 32-85.

13     Now Defendants move to dismiss Plaintiffs' UCL and CLRA claims

14 as to Ms. McKinnon, and their breach of contract and breach of the

15 implied covenant claims as to all Plaintiffs.  <u>See</u> MTD at 1-2.

16

17 **III.  LEGAL STANDARD**

18     A motion to dismiss under Federal Rule of Civil Procedure

19 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

20 <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

21 on the lack of a cognizable legal theory or the absence of

22 sufficient facts alleged under a cognizable legal theory."

23 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

24 1988).  "When there are well-pleaded factual allegations, a court

25 should assume their veracity and then determine whether they

26 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

27 <u>Iqbal</u>, 556 U.S. 662, 664 (2009).  However, "the tenet that a court

28 must accept as true all of the allegations contained in a complaint

**United States District Court**
For the Northern District of California

is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a
complaint must be both "sufficiently detailed to give fair notice
to the opposing party of the nature of the claim so that the party
may effectively defend against it" and "sufficiently plausible"
such that "it is not unfair to require the opposing party to be
subjected to the expense of discovery." Starr v. Baca, 652 F.3d
1202, 1216 (9th Cir. 2011).

**IV.   DISCUSSION**

   **A.   Plaintiffs' UCL and CLRA Claims**

   Plaintiffs make UCL and CLRA claims as to both named
Plaintiffs, but Defendants only challenge these claims as they
concern Ms. McKinnon, who picked up her rental car in Oklahoma.
Defendants argue that California's presumption against
extraterritoriality precludes Plaintiffs' claims as to Ms.
McKinnon, and also that Plaintiffs' allegations about Defendants'
violations of California laws are insufficiently pled.

   California law presumes that the legislature did not intend a
statute to be "operative, with respect to occurrences outside the
state, . . . unless such intention is clearly expressed or
reasonably to be inferred from the language of the act or from its
purpose, subject matter or history." Sullivan v. Oracle Corp., 51
Cal. 4th 1191, 1207 (Cal. 2011) (citations and quotations omitted).
With regard to the UCL specifically, and presumably the CLRA since
the presumption against extraterritoriality is broad, non-

6

California residents' claims are not supported "where none of the
alleged misconduct or injuries occurred in California." <u>Churchill</u>
<u>Village, LLC v. General Elec. Co.</u>, 169 F. Supp. 2d 1119, 1126
(citing <u>Norwest Mortg. Inc. v. Super. Ct.</u>, 72 Cal. App. 4th 214,
222 (Cal. Ct. App. 1999)).  In Order I, the special concern for the
UCL and CLRA's application to non-residents was heightened because
Ms. Tool is not a resident of California.  In Defendants' present
motion, that concern is somewhat dampened because Ms. McKinnon is a
California resident, and Defendants' motion only disputes
Plaintiffs' claims about her.

    In Order I, the Court dismissed Plaintiffs' UCL and CLRA
claims as to Ms. McKinnon because the harm -- being forced to pay
fraudulent charges -- actually occurred in Oklahoma, not
California, and Plaintiffs pled no other facts strongly linking
Defendants' behavior to California or justifying the application of
California law to Ms. McKinnon's situation.  Order I at 9-12.  The
Court gave Plaintiffs leave to amend their complaint to explain how
Ms. McKinnon's alleged harms fall within the territorial scope of
the UCL and CLRA.  <u>See</u> <u>id.</u> at 12.

    Now Plaintiffs plead that Defendants' statements during the
reservation process in California were harmful misrepresentations
or omissions giving rise to UCL and CLRA claims, and that Ms.
McKinnon was also harmed by ultimately paying the fraudulent
charges from a California bank account.  <u>See, e.g.,</u> SAC ¶¶ 13-15,
37, 54.  Plaintiffs no longer plead that Ms. McKinnon declined any
add-ons from California.
///
///

### a. **The UCL**

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. These three prongs are distinct, and Plaintiffs have accordingly asserted claims against Defendants for unlawful, unfair, and fraudulent business practices. The Court first discusses the unlawful prong, which would tie Plaintiffs' claims as to Ms. McKinnon firmly to California because Plaintiffs base this claim on Defendants' alleged violations of California laws within the state of California. The Court then discusses the unfair or fraudulent claims, which depend on facts inside and outside the state.

### i. **Unlawful Prong**

Plaintiffs can plead a UCL violation under the "unlawfulness" prong by pleading that one of Defendants' business practices violated a predicate federal, state, or local law. See <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (Cal. 1999) (citing <u>State Farm Fire & Cas. Co. v. Superior Court</u>, 45 Cal. App. 4th 1093, 1103 (Cal. Ct. App. 1996)).

Plaintiffs cite three California laws as predicates for Defendants' alleged violation of the UCL's unlawful prong: subsections (g)(1), (j), and (t)(2)(B) of California's car rental statute, California Civil Code section 1936 ("Section 1936"); California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 <u>et seq.</u>; and California Civil Code sections 1670.5 and 1671, which set out rules for, respectively, unconscionable contracts and liquidated damages provisions in contracts.

///

///

8

United States District Court
For the Northern District of California

1          **1.    Civil Code Sections 1670.5, 1671**

2     California Civil Code sections 1670.5 and 1671 are irrelevant

3  in this case, since Plaintiffs have pled nothing about

4  unconscionable contracts or liquidated damages.  Nor do Plaintiffs

5  clarify these statutory sections' applicability in their opposition

6  brief.  The Court finds that Plaintiffs' conclusory assertions that

7  Defendants violated these statutes are insufficient to support

8  Plaintiffs' claims under the UCL.

9               **2.    FAL**

10    Plaintiffs' FAL argument is no clearer than their statutory

11 contract claims.  Plaintiffs assert that the FAL applies to online

12 advertising meant to induce action in California, and that a

13 violation of the FAL occurs whenever the initial misrepresentation

14 or omission of a material fact is made.  Opp'n at 8-9 (citing

15 People ex rel Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th

16 508, 517 (Cal. Ct. App. 2002); People v. Dollar Rent-A-Car Systems,

17 Inc., 211 Cal. App. 3d 119, 129 (Cal. Ct. App. 1989)).  And since

18 any violation of the FAL is necessarily a UCL violation, Plaintiffs

19 argue that the FAL supports their UCL claim.  Id. (citing Williams

20 v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)).

21    The Court finds that Plaintiffs' pleadings on the FAL are

22 impermissibly conclusory, and their opposition brief offers no

23 application of law to facts that would allow the Court or

24 Defendants to respond to Plaintiffs' arguments.  It is unclear what

25 Plaintiffs think constitutes false or misleading advertising in

26 this case, and the Court is not inclined to guess.  Stating that

27 Defendants engaged in "deceptive marketing and advertising in

28 California" is not enough to state a violation of the FAL, absent

any pleading of a statement to the public that could be actionable under the statute.  The Court finds that the FAL is not a predicate for Plaintiffs' claim under the unlawful prong of the UCL.

### 3.   <u>Section 1936</u>

Plaintiffs allege that Defendants violated three subsections of Section 1936: subsections (g)(1), (j), and (t)(2)(B).  The Court finds that Plaintiffs have failed to plead that Defendants violated Section 1936.

Section 1936(g) states that rental companies offering damage waivers in addition to the rental rate must disclose certain coverage-related information in their rental contracts (or the holders in which the contracts are placed), in signs posted in the company's office, and in locations visible to renters who are enrolled in the rental company's membership program.  Section 1936(g) also requires that rental companies make oral disclosures of possible duplication of waiver coverage at the time of rental, and that the companies' contracts must also include specific language about that issue.

Plaintiffs have failed to plead that Defendants violated Section 1936(g).  None of the Plaintiffs' facts as to Ms. McKinnon that would be relevant to Section 1936(g) occurred in California.  Ms. McKinnon rented her vehicle and received her rental contract in Oklahoma, and nothing in Section 1936(g) purports to cover online reservations, even if they are made from California.  Plaintiffs' strongest argument on this point is that Section 1936(g)'s requirements about "oral disclosures" of potentially duplicative coverage should be read to apply to online communications as well -- an interpretation that would put Defendants on the hook for

10

**United States District Court**
For the Northern District of California

Section 1936(g) disclosures in California, even if the actual rental transaction and its attendant contracts, signs, and disclosures occur elsewhere.  See Opp'n at 7-8.  The Court finds Plaintiffs' proposed interpretation of Section 1936(g) unconvincing.  That subsection anticipates that rental companies are to make the requisite oral disclosure at the time the customer is presented with the rental agreement itself, at which point the customer should initial an acceptance or declination of the damage waiver.  The Court finds that because Ms. McKinnon received her rental agreement in Oklahoma, not California, Defendants could not have breached Section 1936(g), because it applies only in California.  See, e.g., Speyer v. Avis Rent a Car System, Inc., 415 F. Supp. 2d 1090, 1098-99, 1100 (S.D. Cal. 2005) (reading a different subsection of Section 1936 to apply only to California).

Section 1936(j) concerns advertisements in California, and Plaintiffs have not pointed to any advertisements.  The Confirmation is not an advertisement.  It is a reservation, and those are governed by separate parts of Section 1936 that Plaintiffs do not cite in support of their UCL claim.  The Court finds that Section 1936(j) cannot be a predicate to Plaintiffs' claim under the UCL's unlawful prong.

Section 1936(t)(2)(B) only applies to renters enrolled in the rental company's membership program, which Plaintiffs do not claim to have been.  The Court finds that this subsection cannot support Ms. McKinnon's claim under the UCL's unlawful prong.

Plaintiffs' arguments about the policy rationale behind Section 1936 do not override the statute's plain text.  Plaintiffs describe a situation in which Section 1936 arguably does not match

**United States District Court**
For the Northern District of California

1   the expectations of the modern customer who probably begins the

2   car-rental process online.  But only the California legislature,

3   not the Court, may properly address this issue.

4               **4. <u>Conclusion on the Unlawful Prong</u>**

5        As explained above, Plaintiff has failed to state a claim

6   under the unlawful prong of the UCL.  Defendants' motion to dismiss

7   that claim is GRANTED, and the claim is DISMISSED WITH LEAVE TO

8   AMEND.

9          **ii.   <u>Unfair and Fraudulent Prongs</u>**

10       Though the parties effectively briefed only the issue of

11  whether any California statutes are predicates for the UCL's

12  unlawfulness prong, the question remains whether Plaintiffs' have

13  pled valid claims for violations of the UCL's unfairness or

14  fraudulent prongs.  <u>See</u> SAC ¶¶ 41-49 (unfairness prong), 50-56

15  (fraudulent prong).  These two claims are based on Plaintiffs'

16  theory that Defendants' reservation system, coupled with its

17  alleged practice of tricking customers into paying add-on fees once

18  they rent their cars, amounts to a "bait and switch" scheme that

19  renders Defendants' quoted reservation prices unfair or fraudulent.

20  <u>See</u> <u>id.</u> ¶¶ 41-56.  The Court must first consider whether

21  Plaintiffs' pleadings as to these two prongs can overcome

22  California's presumption against extraterritorial application of

23  its laws.

24       In support of their argument that the UCL applies even though

25  the allegedly fraudulent transaction itself occurred in Oklahoma,

26  Plaintiffs cite a recently decided Ninth Circuit case, <u>AT&T</u>

27  <u>Mobility LLC v. AU Optronics Corp.</u>, 707 F.3d 1106 (9th Cir. 2013).

28  In that case, the district court had dismissed a group of telecom

United States District Court
For the Northern District of California

corporation plaintiffs' state law antitrust claim under the Cartwright Act against several international electronics corporations.  See id. at 1108-09.  The plaintiffs appealed.  Id. The Cartwright Act provides a private cause of action for indirect purchasers of price-fixed goods, though other states' laws do not. Id. at 1108.  The district court held that since the plaintiffs had purchased the allegedly price-fixed goods outside California, the Due Process Clause of the Fourteenth Amendment forbade applying California antitrust law to those claims, since the Due Process Clause requires plaintiffs asserting state law causes of action to allege that the "occurrence or transaction giving rise to the litigation" occurred in that state.  See id. at 1109.

The Ninth Circuit reversed and remanded, holding that the antitrust law in question could lawfully be applied without violating Due Process when "more than a de minimis amount" of the allegedly actionable activity took place in California.  Id. at 1113.  This required the district court to consider, for each individual defendant, whether the plaintiffs had alleged sufficient conspiratorial conduct within California that is not "slight and casual," such that the application of California law to that defendant is "neither arbitrary nor fundamentally unfair."  Id. at 1107; see also In re TFT-LCD, No. C 10-4945 SI, 2013 WL 1891367, at *1-4 (N.D. Cal. May 6, 2013) (applying AT&T on remand). Significantly, the Ninth Circuit stated that its analysis was equally applicable to the UCL, even though its holdings specifically discussed the Cartwright Act, since the UCL borrows violations from other laws and makes them independently actionable. AT&T, 707 F.3d at 1107 n.1.

AT&T concerned whether application of the California statutes to that case's defenses violated the United States Constitution's Due Process Clause. 707 F.3d at 1107. That constitutional question is different from California's presumption against extraterritorial application in that it places additional limitations on the extraterritorial application of state law. See Sullivan, 51 Cal. 4th at 1207 n.9. As to extraterritoriality specifically, California courts and federal courts applying California law have held consistently that while out-of-state conduct can be actionable when it results in injury to an out-of-state plaintiff in California, courts must draw a territorial line between actionable and non-actionable conduct under the UCL based on the plaintiff's citizenship and the actionable conduct's connection to California. See Speyer, 415 F. Supp. 2d at 1099-1100; Norwest, 72 Cal. App. 4th at 222-24; Yu v. Signet Bank/Virginia, 69 Cal. App. 4th 1377, 1381-82 (Cal. Ct. App. 1999).

Plaintiffs' pleadings have raised new facts suggesting that the Court's analysis should change -- specifically, Plaintiffs explain how Ms. McKinnon was harmed by reserving a car in California, being promised a certain price, and then being defrauded by a widespread scheme that Defendants have engineered to produce exactly the outcome she suffered. In this case, regardless of whether the Court applies the Ninth Circuit's holding from AT&T analogically, or considers the precedent and policy articulated in cases like Norwest, Yu, and Speyer, the Court finds that Defendants' conduct within California, as pled, plausibly suggests that the UCL should apply to Ms. McKinnon.

Defendants' conduct in California does not only amount to the

14

**United States District Court**
For the Northern District of California

provision of a price quote and the completion of an automated

reservation process.  Based on Plaintiff's reasonably specific

pleadings, Defendants have a national scheme involving providing

low reservation rates and then tricking customers into paying more

once they pick up their cars.  Plaintiffs' second amended complaint

sufficiently makes clear that the presumption against

extraterritoriality does not apply to limit Plaintiffs' action in

this case, and that Defendants' conduct is more than mere endemic

dishonesty -- it is actionable under the UCL as an unfair and

fraudulent business practice.  Moreover, under <u>AT&T</u>, Defendants'

conduct is not "slight and casual," such that the application of

California law to that defendant would be "neither arbitrary nor

fundamentally unfair."  707 F.3d at 1107.

Plaintiffs' UCL claims for unfair and fraudulent business

practices therefore survive as to Ms. McKinnon.  Defendants' motion

is therefore DENIED as to these claims.

### 5. **<u>The CLRA</u>**

Like the UCL, the CLRA prohibits "unfair methods of

competition and unfair or deceptive acts or practices."  Cal. Civ.

Code § 1770.  And like the UCL, the CLRA is not meant to apply

extraterritorially.  <u>See, e.g.</u>, <u>Murphy v. DirecTV, Inc.</u>, No. 2:07-

cv-06465-JHN-VBKx, 2011 WL 3325891, at *3 (C.D. Cal. Feb. 11, 2011)

(since wrongful conduct did not occur in California, plaintiff

could not plead CLRA claim).  Since Plaintiffs' CLRA pleadings as

to Ms. McKinnon are virtually identical to their UCL pleadings,

Plaintiffs' CLRA claim survives per the Court's discussion above,

and Defendants' motion is DENIED as to this claim.  The Court's

holding on this issue does not address Plaintiffs' standing to

pursue damages or other remedies under the CLRA.

   **B.   Breach of Contract**

        "To state a cause of action for breach of contract, a party
must plead [1] the existence of a contract, [2] his or her
performance of the contract or excuse for nonperformance, [3] the
defendant's breach, and [4] resulting damage." Mora v. U.S. Bank,
N.A., No. 11-6598 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012)
(citing Harris v. Rudin, Richman & Appel, 74 Cal. App. 4th 299, 307
(Cal. Ct. App. 1999)).   Additionally, if the plaintiff alleges the
existence of a contract, the plaintiff may set forth the contract
verbatim, attach it as an exhibit, or plead it according to its
legal effect.   See Lyons v. Bank of America, N.A., No. 11-01232 CW,
2011 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011).

        In their first amended complaint, Plaintiffs cited Defendants'
rental contracts as bases for their breach of contract claim,
alleging that Defendants somehow breached those contracts by
tricking Plaintiffs into signing them.   See Order I at 15.   The
Court dismissed Plaintiffs' breach of contract claim because
Plaintiffs did not cite, attach, or explain in real detail the
contract provisions that Defendants allegedly breached, suggesting
that their claim sounds more in fraud than in contract.   See id.
Plaintiffs allege the same facts about the rental contracts in
their SAC, and to the extent those facts are bases for Plaintiffs'
breach of contract claims, the claims are DISMISSED as to those
contracts.

        Plaintiffs allege new facts in their second amended complaint.
They claim that the Confirmation and other online rental
confirmations, provided after Plaintiffs completed the online

reservation process, are initial rental agreements that Defendants breached by charging at their rental desk more than Plaintiffs originally agreed to pay.  See SAC ¶ 74.  Plaintiffs state that (1) the online reservations are valid contracts; (2) Plaintiffs fulfilled the contracts by (among other things) picking up, returning, and refueling their rental cars; (3) Defendants breached the contracts by not providing Plaintiffs with the benefit of paying the amount they originally agreed to pay; and (4) Plaintiffs sustained damage by being overcharged.  See Opp'n at 11-13.

The parties dispute whether Defendants breached any contract. Defendants claim that Plaintiffs do not identify any provision of any agreement that was breached, and that in any event, Defendants lawfully offered Plaintiffs add-ons after Plaintiffs received the Confirmation.  MTD at 6.  Plaintiffs respond that Defendants breached the Confirmation by charging more than the total charges and taxes listed on the Confirmation, for example.  Opp'n at 13. (Plaintiffs do not append any of Ms. Tool's agreements, but they appear to plead that hers would have substantially resembled Ms. McKinnon's Confirmation.)  Plaintiffs add that Defendants miss the point in their second argument about the add-ons having been properly confirmed at the rental desk, since any additional products offered to Plaintiffs at the rental desk were either not properly accepted or were added to Plaintiffs' bills by mistake or fraud.  Id.

Plaintiffs offer three bases for Defendants' alleged breach: (1) Defendants charged Plaintiffs more than they claim to have agreed to pay in the Confirmation, (2) Defendants tricked Plaintiffs into signing ups for add-ons, or (3) Defendants did not

17

provide disclosures in accord with California law.  See SAC ¶¶ 15,
17, 74; Opp'n at 12-13.

The third option is not a ground for breach, as discussed in
Section IV.A.a.i, supra: Section 1936 does not require the
disclosures that Plaintiffs envision.  Nor is the second option an
appropriate ground for breach, since as the Court discussed in
Order I, Plaintiffs neither pled nor referenced any contract that
could be breached by Defendants' agents' conduct, which resembles
the basis of a fraud claim more than a contract action.

Only the first option -- whether Defendants breached the
Confirmation by allegedly tricking Plaintiffs into paying more for
add-ons at the rental counter -- could be the basis of a breach of
contract claim.  Based on Plaintiffs' new pleadings, the Court
finds Plaintiffs' breach of contract claim sufficient as to the
Confirmation.  Plaintiffs agreed, through a contract of adhesion,
to pay what they thought was a fair price -- after all, if they
knew that Defendants would defraud them and make them pay more
money, they would have rented cars from a more honest dealer.
Defendants' refusal to honor the Confirmation price in any way, and
in fact to convince Plaintiffs of the price's validity and then to
alter it secretly, was a breach.  Defendants' motion is therefore
DENIED as to this claim.

C.    **Breach of the Implied Covenant of Good Faith and Fair
Dealing**

"The covenant of good faith and fair dealing, implied by law
in every contract, exists merely to prevent one contracting party
from unfairly frustrating the other party's right to receive the
benefits of the agreement actually made."  Guz v. Bechtel Nat'l

United States District Court
For the Northern District of California

_Inc._, 24 Cal. 4th 317, 349 (Cal. 2000).  The covenant thus prevents a contracting party from taking an action that, although technically not a breach, frustrates the other party's right to the benefit of the contract.  _Love v. Fire Ins. Exchange_, 221 Cal. App. 3d 1136, 1153 (Cal. Ct. App. 1990).  The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." _Guz_, 24 Cal. 4th at 349-50.  The elements of a claim for breach of the covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

_Woods v. Google, Inc._, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

In their first complaint, Plaintiffs alleged that Defendants breached the covenant of good faith and fair dealing by implementing systemic policies and practices meant to trick or mislead customers into buying unwanted services, despite having been placed on notice that those practices were taking place nationwide.  Plaintiffs did not, however, point to a specific part of the contract that serves as the premise for their claim.  The Court dismissed Plaintiffs' breach of the implied covenant claim with leave to amend.

United States District Court
For the Northern District of California

1   Now Plaintiffs allege, as they did in their breach of contract

2   claim, that their initial reservation agreements were contracts

3   that obliged Defendants to rent cars to Plaintiffs at particular

4   prices.  See SAC ¶¶ 13-17, 72-77; Confirmation at 1-2.  For reasons

5   similar to those discussed in the breach of contract section above,

6   the Court finds Plaintiffs' new pleadings sufficient to state a

7   claim for breach of the implied covenant.  Even if the benefit

8   under the Confirmation was the agreement to rent a car at something

9   roughly equivalent to the price Plaintiffs expected, Defendants

10  breached their duty of good faith and fair dealing by hiding their

11  plan to overcharge Plaintiffs until it was too late.  Defendants'

12  motion is therefore DENIED as to this claim.

13

14  **V.   CONCLUSION**

15  As explained above, the Court GRANTS Defendants' motion to

16  dismiss Plaintiffs' UCL unlawfulness claim.  However, the Court

17  DENIES Defendants Dollar Thrifty Automotive Group, Inc., Dollar

18  Rent A Car, Inc., and DTG Operations, Inc.'s motion to dismiss

19  Plaintiffs' other claims.

20  Plaintiffs have thirty (30) days from the signature date of

21  this Order to file an amended complaint addressing the deficiency

22  described above.  If they do not, that claim may be dismissed with

23  prejudice.

24

25  IT IS SO ORDERED.

26

27  Dated: July 3, 2013

    _____
    UNITED STATES DISTRICT JUDGE

28