United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   SANDRA MCKINNON and KRISTEN       )  Case No. CV 12-cv-04457-SC
    TOOL, individually and on behalf  )
10  of others similarly situated,     )  ORDER DENYING WITHOUT PREJUDICE
                                      )  PLAINTIFFS' MOTION FOR CLASS
11          Plaintiffs,               )  CERTIFICATION
                                      )
12      v.                            )
                                      )
13  DOLLAR THRIFTY AUTOMOTIVE GROUP,  )
    INC. d/b/a DOLLAR RENT A CAR;     )
14  DOLLAR RENT A CAR, INC.; DTG      )
    OPERATIONS, INC. d/b/a DOLLAR     )
15  RENTA A CAR; et al.,              )
                                      )
16          Defendants.               )
    _____   )
17

18        Plaintiffs Sandra McKinnon and Kristin Tool (collectively

19   "Plaintiffs") bring this putative class action against Dollar

20   Thrifty Automotive Group, Inc., d/b/a Dollar Rent A Car, Dollar

21   Rent A Car, Inc., and DTG Operations, Inc., d/b/a Dollar Rent A

22   Car, which are now wholly-owned by Hertz Global Holdings, Inc.

23   (collectively "Dollar" or "Defendants").  Plaintiffs, customers of

24   Defendants, allege in their third amended complaint that Defendants

25   defrauded Plaintiffs and other customers in California and

26   Oklahoma.  ECF No. 79 ("TAC").  Plaintiffs now move to certify two

27   plaintiff classes, a "California Class" and an "Oklahoma Class."

28

ECF No. 92 ("Mot.") at 1.  The motion is fully briefed.[1]  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for disposition without oral argument.  For the reasons set forth below, Plaintiffs' motion is DENIED.  Defendants' motion to exclude the expert testimony of Donald Lichtenstein in support of Plaintiffs' motion for certification (ECF No. 105) is also DENIED as moot.

**I.  BACKGROUND**

    **A.   Facts**

Dollar is one of the nation's largest car rental companies. In addition to providing car rentals, Dollar offers customers different types of liability coverage and damage waivers.  This case focuses on the sale of three of those products in California and Oklahoma: Loss Damage Waiver ("LDW"), Supplemental Liability Insurance ("SLI"), and roadside assistance service ("RoadSafe") (collectively "Add-On Products").

LDW is an agreement with the customer that relieves the customer of financial responsibility for unintentional damage to the rental car.  In California, the sale of LDW is regulated by Section 1936 of the California Civil Code.  Oklahoma does not have laws or regulations that specifically address LDW.

SLI is a liability insurance product that provides coverage against claims by third parties arising from accidents involving the rental car.  In California, SLI is subject to California insurance law.  See Cal. Ins. Code § 1758.86.

///

---

[1] ECF Nos. 110 ("Opp'n"); 120 ("Reply"); 126 ("Sur-Reply").

RoadSafe provides assistance in the event of problems that may arise with the rental car that are caused by the customer, such as draining the battery, locking a key in the car, or running out of gas.

Many customers' personal automobile insurance and/or credit cards already provide protections similar to Dollar's LDW offering, subject to various limits and deductibles.  In part for that reason, California requires that car rental companies provide customers with oral and written disclosures concerning the potential overlap.[2]  The disclosures must be made "in the rental contract or holder in which the contract is placed and, also, in signs posted at the place, such as the counter, where the renter signs the rental contract."  Cal. Civ. Code 1936(g).  In addition, the rental car company must provide oral disclosures, and the customer's receipt of those disclosures must be demonstrated by initialing a document.  Id.  Finally, "[a] rental company that disseminates . . . an advertisement containing a rental rate [is required to] include in that advertisement a clearly readable statement of the charge for a damage waiver and a statement that a damage waiver is optional."  Id. at (h)(i).

---

[2] The disclosure must include the following:
    (A) the nature of the renter's liability . . . (B) the extent of the renter's liability . . . (C) the renter's personal insurance policy or the credit card used to pay for the car rental transaction may provide coverage for all or a portion of the renter's potential liability, (D) the renter should consult with his or her insurer to determine the scope of insurance coverage, including the amount of the deductible, if any, for which the renter is obligated, (E) the renter may purchase an optional damage waiver to cover all liability, subject to whatever exceptions the rental company expressly lists that are permitted under subdivision (f), and (F) the range of charges for the damage waiver.
Cal. Civ. Code § 1936(g).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Dollar trains its agents in California to disclose orally that
2    LDW is optional and may overlap with other sources of coverage.
3    ECF Nos. 107-2 ("Capsanes Decl.") ¶¶ 21, 31; 107-4 ("Hayes Decl.")
4    ¶ 7; 107-3 ("Lainez Decl.") ¶ 14; 107-5 ("Raman Decl.") ¶ 8.
5    Dollar's agents, however, cannot advise customers on the specific
6    terms of any third-party product that might be duplicative of the
7    coverage provided by Dollar's LDW or other Add-On Products.
8    Capsanes Decl. ¶ 21; Hayes Decl. ¶ 8; Lainez Decl. ¶ 10; Raman
9    Decl. ¶ 9.  Customers at Dollar's California locations also have to
10   confirm their product elections and that they have been provided
11   oral disclosures on a console known as a "SigCap."

12   After confirming product elections, the customer signs the
13   SigCap console and then receives a print-out of the rental
14   agreement, which states the estimated cost of the rental, including
15   line-items for all optional products, and a "rental jacket"
16   containing further terms and conditions.  Lainez Decl. ¶ 20; Raman
17   Decl. ¶ 13; Hayes Decl. ¶ 13; Perring Decl. ¶ 11.  Dollar's
18   California locations also include written disclosures on the rental
19   agreement and rental jacket as required by Civil Code Section 1936.
20   ECF No. 110-14 ("Selco Decl.") ¶ 9.  In addition to those
21   disclosures, Dollar's California locations provide the same
22   disclosures on signs, placemats, brochures, and pamphlets.
23   Capsanes Decl. ¶ 34; Lainez Decl. ¶¶ 22-23; Raman Decl. ¶¶ 11-13;
24   Hayes Decl. ¶¶ 14-15; ECF No. 126-7 ("Lainez Dep.") at 61:23-65:19;
25   ECF No. 126-5 ("Hayes Dep.") at 46:12-47:6; ECF No. 126-1; ECF No.
26   126-2; ECF-No. 126-3; ECF No. 126-4.  Plaintiffs, however, have
27   presented evidence showing that such disclosures may sometimes be
28   absent at certain locations.  See ECF Nos. 120-14; 120-15.

**United States District Court**
For the Northern District of California

Dollar's customers make reservations with Dollar through multiple channels, including through Dollar's website, third-party travel services (such as Priceline or Expedia), over the telephone, or by walking into a Dollar location.  Regardless of how they make reservations, customers are first presented with the opportunity to purchase Add-On Products when they go to pick up their car rental at the Dollar rental counter.  The conversations between customers and agents at the Dollar rental counter vary depending on the customer's questions, the types of products customers are interested in purchasing, and other factors.  Perring Decl. ¶ 8; Capsanes Decl. ¶ 26; Hayes Decl. ¶¶ 4, 9; Lainez Decl. ¶¶ 4, 6-7; Raman Decl. ¶¶ 5-6.

Sales of Add-On Products are a significant part of Dollar's revenue.  ECF No. 94-10, Ex. 14.  Dollar agents are trained to sell Add-On Products to as many customers as possible using a variety of persuasive techniques, and they are paid commissions, in part, based on such sales.  See ECF No. 94-8, Ex. 5; ECF No. 94-9, Ex. 8. For example, agents are instructed on how to overcome customer objections such as "I'm fully covered" and "My credit card covers me" by noting that the customer may still want to purchase Dollar's coverage so that the customer's insurance or credit card company does not have to get involved in the event coverage is needed.  Id.

**B.    The Named Plaintiffs**

Plaintiff Sandra McKinnon rented a car at Dollar's Tulsa, Oklahoma airport location from March 29 to April 13, 2012.  Mot. at 12.  Ms. McKinnon's partner booked the reservation for the car on Ms. McKinnon's behalf through the Southwest Airlines website.  TAC ¶ 13.  Ms. McKinnon herself did not view any of the information

5

**United States District Court**
For the Northern District of California

presented during the reservation process.  ECF No. 107-12, Ex. B

("McKinnon Dep.") at 41:6-11, 43:19-22.  Ms. McKinnon alleges that,

once at Dollar's rental counter, an agent tried to up-sell her on a

variety of products, including LDW, but that she orally declined

those offers.  TAC ¶ 14; McKinnon Dep. at 62:23-63:17.  She then

signed an electronic signature pad and initialed the areas the

Dollar agent allegedly indicated to her were to be checked to

decline Add-On Products.  TAC ¶ 14.  Ms. McKinnon was then handed a

folded copy of a vehicle rental contract inside a rental contract

jacket.  Id.  The information regarding the additional fees for LDW

was printed on the contract, allegedly in tiny font with faded ink.

Id.  Dollar charged Ms. McKinnon for LDW, but not for any other

Add-On Product.  Mot. at 14-15.  After returning her rental car,

Ms. McKinnon sent Dollar a letter demanding a return of the money

she paid for LDW, but Dollar rejected her request.  Id.

Plaintiff Kristen Tool rented a car at Dollar's San Francisco

airport location form August 31 to September 9, 2012.  Mot. at 15-

16.  Ms. Tool's sister made the reservation for the rental on a

travel broker's website, and Ms. Tool herself did not participate

in making the reservation.  ECF No. 107-12, Ex. C ("Tool Dep.") at

19:10-20.  Ms. Tool alleges that, once at the Dollar counter, she

orally declined to purchase LDW and SLI and checked the required

boxes on the SigCap in order to decline those options.  TAC ¶ 16.

Nevertheless, Dollar charged her $231 for those products.  Id. at

47:6-10, 91:17-24.  After unsuccessfully appealing those charges

with Dollar, Ms. Tool disputed the charges with her credit card

company and received a refund.  TAC ¶ 17.  Ms. Tool also alleges

that she was not provided with oral disclosures at the rental

counter, did not receive an advance copy of the Dollar contract or folder, and did not see a sign at the rental counter providing disclosures as required by California Civil Code Section 1936.  <u>Id.</u> at 16.

Based on the facts described above, Plaintiffs' TAC asserts eight causes of action against Defendants: (1-3) violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>), for unlawful, unfair, and fraudulent business acts and practices; (4) violation of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 <u>et seq.</u>); (5) violation of the Oklahoma Consumer Protection Act ("OCPA") (Okla. Stat. 15, § 751 <u>et seq.</u>); (6) breach of contract and breach of the covenant of good faith and fair dealing; (7) declaratory relief; and (8) unjust enrichment.

C.   **Plaintiffs' Motion for Class Certification**

Plaintiffs seek to represent and have the Court certify two classes (collectively "the Class").  The California Class is defined as "all persons in the United States either residing in or who rented cars in California from Dollar since January 1, 2009 and were charged for Loss Damage Waiver ('LDW'), SLI and/or Road Safe by Dollar other than as part of a pre-paid tour reservation."  Mot. at 1.  The Oklahoma Class is defined as "all persons in the United States either residing in or who rented cars in Oklahoma from Dollar since January 1, 2009 and were charged for Loss Damage Waiver ('LDW'), SLI and/or Road Safe by Dollar other than as part of a pre-paid tour reservation."  <u>Id.</u>

Plaintiffs' motion relies heavily on the claim that Dollar's website fails to provide disclosures in violation of California

United States District Court
For the Northern District of California

Civil Code Section 1936(h).  Plaintiffs do not explain, however, how this alleged violation creates a common factual or legal issue as to class members who purchased Add-On Products other than LDW or who purchased LDW outside of California.  In addition, Plaintiffs fail to address the Court's earlier order which held that Section 1936 does not apply to a car rental company's website.  See ECF No. 68 ("MTD Order") at 10-12.

Plaintiffs also argue that Dollar violated Section 1936 by failing to provide written disclosures on signage at the rental counter and by failing to provide oral disclosures in violation of California Civil Code Section 1936.  Plaintiffs do not explain, however, how these alleged violations create common factual or legal issues as to class members who purchased Add-On Products other than LDW or who purchased LDW outside of California.  Even within California, Plaintiffs do not provide evidence showing that Dollar systematically failed to provide such disclosures throughout its California locations.[3]

Finally, Plaintiffs claim that Dollar trains its employees to use deceptive practices to induce customers into purchasing Add-On Products.  As evidence, Plaintiffs assert that they have reviewed hundreds of complaints by consumers who claim that they were

---

[3] Plaintiffs provide declarations from customers who claim that Dollar did not have signs at the specific locations where they rented cars and that they were not provided with oral disclosures. Dollar has presented evidence, however, showing that such signs are present at its California locations (except under certain circumstances, such as when an office is undergoing renovations) and that its agents are trained to provide oral disclosures.  The evidence suggests that signs were not always present at every California location.  It also suggests that there were at least some occasions when oral disclosures were not provided.  However, Plaintiffs do not provide evidence demonstrating that signs were generally absent throughout Dollar's California locations or that Dollar agents systemically failed to provide oral disclosures.

**United States District Court**
For the Northern District of California

pressured and deceived into purchasing Add-On Products.  Plaintiffs also point to training materials used to teach Dollar agents how to persuade customers to purchase Add-On Products and to the fact that agents are paid a commission based on how many Add-On Products they sell.  Although Plaintiffs' evidence establishes specific examples of deception by particular Dollar agents, it does not point to specific company-wide practices, trainings, or policies; describe how those specific practices, trainings, or policies are deceptive; or provide evidence showing that the alleged practices, trainings, and policies were applied uniformly to all members of the class.

## II.  <u>LEGAL STANDARD</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011) (internal quotations and citations omitted).  "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Id.</u> (internal citations omitted).  Under Rule 23(a), four prerequisites must be satisfied for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

1    Fed. R. Civ. P. 23(a).  In addition, "apart from the explicit

2    requirements of Rule 23(a), the party seeking class certification

3    must demonstrate that an identifiable and ascertainable class

4    exists."  <u>Wolph v. Acer Am. Corp.</u>, 272 F.R.D. 477, 482 (N.D. Cal.

5    2011).

6        A plaintiff also must satisfy one or more of the separate

7    prerequisites set forth in Rule 23(b):

8        A class action may be maintained if Rule 23(a) is
         satisfied and if:
9
10       . . .

11       (2) the party opposing the class has acted or refused to
         act on grounds that apply generally to the class, so that
         final injunctive relief or corresponding declaratory
12       relief is appropriate respecting the class as a whole; or

13       (3) the court finds that the questions of law or fact
         common to class members predominate over any questions
14       affecting only individual members, and that a class
         action is superior to other available methods for fairly
15       and efficiently adjudicating the controversy.

16   Fed. R. Civ. P. 23.

17       If a case does not qualify for class certification because of

18   individualized issues relating to damages, a court can still allow

19   it to proceed as a class action by certifying particular liability

20   issues pursuant to Rule 23(c)(4).  Fed. R. Civ. P. 23(c)(4) ("When

21   appropriate, an action may be brought or maintained as a class

22   action with respect to particular issues.").

23       On a motion for certification, the plaintiff holds the burden.

24   Thus, "Rule 23 does not set forth a mere pleading standard.  A

25   party seeking class certification must affirmatively demonstrate

26   his compliance with the Rule -- that is, he must be prepared to

27   prove that there are in fact sufficiently numerous parties, common

28   questions of law or fact, etc."  <u>Dukes</u>, 131 S. Ct. at 2551

United States District Court
For the Northern District of California

(emphasis deleted); see also Massa v. American Honda Motor Co., 666
F.3d 581, 588 (9th Cir. 2012) ("The party seeking class
certification has the burden of affirmatively demonstrating that
the class meets the requirements of Federal Rule of Civil Procedure
23."). A court's analysis of these factors "generally involves
considerations that are enmeshed in the factual and legal issues
comprising the plaintiff's cause of action." Id. at 2552 (internal
quotations and citations omitted). "Nor is there anything unusual
about that consequence: The necessity of touching aspects of the
merits in order to resolve preliminary matters, e.g., jurisdiction
and venue, is a familiar feature of litigation." Id.

## III. DISCUSSION

Plaintiffs' motion for class certification is DENIED because
the proposed class definition is overbroad; it fails to satisfy
Rule 23(a) requirements of commonality, typicality, and adequacy of
representation; and it fails to satisfy the requirements of Rules
23(b)(2), 23(b)(3), and 23(c)(4).

### A.   Adequacy of the Class Definition

"A class definition should be precise, objective, and
presently ascertainable." O'Connor v. Boeing N. Am., Inc., 184
F.R.D. 311, 319 (C.D. Cal. 1998). "The class definition must be
sufficiently definite so that it is administratively feasible to
determine whether a particular person is a class member." Wolph,
272 F.R.D. at 482. Though there is a split among district courts
in the Ninth Circuit on the issue, the Court has followed the
guidance of the Third Circuit in requiring plaintiffs to "show, by
a preponderance of the evidence, that the class is currently and

1  readily ascertainable based on objective criteria." <u>Carrera v.</u>
2  <u>Bayer Corp.</u>, 727 F.3d 300, 306 (3d Cir. 2013). "Administrative
3  feasibility means that identifying class members is a manageable
4  process that does not require much, if any, individual factual
5  inquiry." <u>Id.</u> at 307-08.

6      Although Plaintiff's class as currently defined can be
7  identified through objective proof, it is overbroad.  It
8  encompasses three different products; transactions that have no
9  connection to California or Oklahoma; and purchasers who benefited
10 from their purchase, were provided with adequate disclosures, were
11 never exposed to any of the alleged deceptive practices, and/or
12 received refunds.

13     Plaintiffs' definitions include every customer that purchased
14 any one of three different products from Dollar -- LDW, SLI, or
15 RoadSafe -- with no explanation as to why those products should be
16 treated together.  While LDW is subject to certain statutory
17 requirements in California (<u>see</u> Cal. Civ. Code § 1936), SLI is
18 subject to an entirely different set of rules (<u>See</u> Cal. Ins. Code §
19 1758.86), and no such requirements apply to RoadSafe in California
20 or to any of the products in Oklahoma.  While it is true that
21 "[d]ifferences as to the various products purchased . . . do not
22 negate a finding of typicality, provided the cause of action arises
23 from a common wrong" (<u>In re Cathode Ray Tube (CRT) Antitrust</u>
24 <u>Litig.</u>, MDL No. 1917, 2013 WL 5429718, at *10 (N.D. Cal. June 20,
25 2013)), the common wrong in this case centers on alleged violations
26 of California Civil Code Section 1936.  Section 1936, however, only
27 applies to <u>LDW</u> sold <u>in California</u>.
28 ///

**United States District Court**
For the Northern District of California

What is more, Plaintiffs include in their class definition customers who "reside in" California and Oklahoma but who purchased Add-On Products in other states.  In its order on Defendants' motion to dismiss, the Court expressly held that the statutes that are the focus of Plaintiffs' motion -- particularly Section 1936 of the California Civil Code -- do not have extraterritorial application.  MTD at 8-15.  Nevertheless, Plaintiffs have included in their class definition transactions that have no connection whatsoever to California or Oklahoma.[4]

Plaintiffs attempt to hold their proposed class together with alleged "<u>per se</u>" violations of California Civil Code Section 1936. <u>See</u> Mot. at 4, 6, 18-19, 30.  Section 1936, however, only applies to <u>one</u> of the Add-On Products -- LDW -- and only LDW that is sold <u>in California</u>.

Even with regard to customers who purchased LDW in California, Plaintiffs fail to provide evidence of a uniform violation applicable to all California class members.  Plaintiffs' motion leans heavily on the fact that Dollar's website does not contain Section 1936 disclosures.  The Court has already held, however, that the disclosure requirements of Section 1936 do not apply to Dollar's website.  <u>See</u> MTD Order at 8-12.  As to other potential Section 1936 violations, the evidence shows that many, if not the vast majority, of California customers are provided with the disclosures mandated by Section 1936.  <u>See</u> Capsanes Decl. ¶¶ 21, 31, 34; Lainez Decl. ¶¶ 14, 20, 22-23; Raman Decl. ¶¶ 8, 11-13;

---

[4] For example, California law would not apply to a California resident who, upon arriving at an airport in New York, approaches Dollar for the first time to reserve a car and purchase Add-On Products.

United States District Court
For the Northern District of California

1  Hayes Decl. ¶¶ 7, 13-15; Perring Decl. ¶ 11; Hayes Dep. at 29:13-
2  32:5, 37:24-38:5, 46:12-47:6; Lainez Dep. at 61:23-65:19, 79:21-
3  80:11; Raman Dep. at 30:8-13, 31:7-11; ECF No. 126-1; ECF No. 126-
4  2; ECF-No. 126-3; ECF No. 126-4.

5       In addition to purported "per se" violations of Section 1936,
6  Plaintiffs allege that the Defendants engaged in a variety of
7  deceptive practices, including training employees on how to
8  persuade customers to purchase Add-On Products, paying employees
9  commissions based on how many Add-On Products they sell, and
10 failing to adequately respond to customer complaints regarding Add-
11 On Products.  Plaintiffs, however, fail to specify which aspects of
12 these practices are deceptive.  Separately, Plaintiffs' class
13 definition is flawed because it includes persons who were not
14 exposed to any of the alleged practices, or who received a benefit
15 as a result of their purchase.  See Diacakis v. Comcast Corp., No.
16 C 11-3002 SBA, 2013 WL 1878921, *4 (N.D. Cal. 2011) (rejecting as
17 overbroad a definition that "includes anyone who purchased [the
18 product], irrespective of whether he or she was deceived").  It
19 also includes people who received a full refund for their purchase
20 of the Add-On Products.  See Turcios v. Carma Labs., Inc., 296
21 F.R.D. 638, 645 (C.D. Cal. 2014) (finding class was overbroad
22 "because it would include consumers who already received refunds
23 and, therefore, have not suffered any damages").

24      Mazza v. American Honda Motor Co. is instructive.  666 F.3d
25 581 (9th Cir. 2012).  In Mazza, the Ninth Circuit reversed a
26 district court's decision to certify a class of all consumers who
27 purchased or leased Acura RLs equipped with a Collision Mitigation
28 Braking System ("CMBS").  Plaintiffs alleged that certain

United States District Court
For the Northern District of California

advertisements misrepresented the characteristics of the CMBS and omitted material information on its limitations in violation of California's Unfair Competition Law (UCL) and other statutes. Plaintiffs further argued that class certification was appropriate because reliance as to the class as a whole could be inferred in a UCL class action.  The Ninth Circuit, however, held that the class definition was overbroad insofar as it was not "defined in such a way as to include only members who were exposed to [the] advertising . . . ."  Id. at 596; see also Berger v. Home Depot USA, Inc., 741 F.3d 1061 (9th Cir. 2014) (holding that a presumption of reliance in a UCL class action does not apply where there is no uniform exposure to the alleged deceptive practice); In re Clorox Consumer Litig., 301 F.R.D. 436, 444 (N.D. Cal. 2014) (denying certification where plaintiffs sought to certify an "all purchasers" UCL class on the basis of an allegedly misleading advertisement where the evidence showed that a substantial portion of class members likely never saw the advertisement); Davis-Miller v. Automobile Club of S. Cal., 201 Cal. App. 4th 106, 125 (2011) ("An inference of classwide reliance [under the UCL] cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class.").

Here, Plaintiffs have neither alleged facts nor presented evidence establishing that all members of the class were exposed to a deceptive practice.  Plaintiffs argue that lack of exposure to a deceptive practice should not defeat their motion because exposure to an alleged deceptive practice is "not an element of their claims."  Reply at 4.  In support, they cite Astiana v. Kashi Co., a class action involving alleged deceptive advertising by a cereal

manufacturer.  291 F.R.D. 493 (S.D. Cal. 2013).  The <u>Astiana</u> court, however, explicitly held that "all class members were exposed to [the alleged deceptive] representations . . . ."  <u>Id.</u> at 500; <u>see also</u> <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 324 (presuming reliance where "[t]he class, as certified, consists of members of the public who were exposed to defendants' allegedly deceptive advertisements and misrepresentations").

Because Plaintiffs' proposed class definition is overbroad, the Court finds that it is neither "precise" nor "ascertainable". <u>See</u> <u>O'Connor v. Boeing N. Am., Inc.</u>, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

**B.   Rule 23(a) Requirements**

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation.  <u>See</u> <u>Mazza</u>, Inc., 666 F.3d at 588.

**1.   Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that the proposed classes be "so numerous that joinder of all members is impracticable."  Generally, "classes of forty or more are considered sufficiently numerous." <u>Delarosa v. Boiron, Inc.</u>, 275 F.R.D. 582, 587 (C.D. Cal. 2011).  Plaintiffs demonstrate using documents produced by Dollar that at least 1.75 million customers purchased one or more of the Add-On Products when renting a car from Dollar in California or Oklahoma during the relevant period. Defendants do not contest these claims.  The Court finds that the numerosity requirement of Rule 23 is met.

**2.   Commonality**

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Supreme Court

**United States District Court**
For the Northern District of California

16

**United States District Court**
For the Northern District of California

1  noted that this requirement is easy to misread, "since '[a]ny

2  competently crafted class complaint literally raises common

3  questions.'"  Dukes, 131 S. Ct. at 2551.  The claims must depend

4  upon a "common contention" that is "of such a nature that it is

5  capable of classwide resolution -- which means that determination

6  of its truth or falsity will resolve an issue that is central to

7  the validity of each one of the claims in one stroke."  Id.  What

8  matters "is not the raising of common questions -- even in

9  droves -- but rather the capacity of a classwide proceeding to

10  generate common answers apt to drive the resolution of the

11  litigation."  Id.

12      As a common claim applicable to all, Plaintiffs focus on

13  alleged "per se" violations of California Civil Code Section 1936.

14  Mot. at 4-6, 18-20, 30.  Specifically, they argue that Dollar fails

15  to provide disclosures required by sub-sections (j) and (g) for

16  reservations made through Dollar's website.  The Court already

17  rejected this approach in its order on Defendants' motion to

18  dismiss.  See MTD Order at 10-12 ("[N]othing in Section 1936(g)

19  purports to cover online reservations . . . The Court finds

20  Plaintiff's proposed interpretation of Section 1936(g) unconvincing

21  . . . Section 1936(j) concerns advertisements in California . . .

22  The Confirmation is not an advertisement.").  In any event, even if

23  the reservations made through Dollar's website constituted a per se

24  violation of Section 1936, it is undisputed that many of the

25  proposed class members did not use Dollar's website to make a

26  reservation.

27      At other points in their motion and reply, Plaintiffs claim

28  that Dollar engaged in per se violations of Section 1936 by failing

**United States District Court**
For the Northern District of California

1   to provide required disclosures in advertisements and signage.

2   Mot. at 18.  The evidence shows, however, that Dollar has in fact

3   posted signs providing Section 1936 disclosures at its California

4   locations.  Lainez Decl. ¶ 22, Hayes Decl. ¶ 14, Raman Decl. ¶¶ 11-

5   12.  Although Plaintiffs have provided evidence showing that Dollar

6   may have sometimes failed to provide adequate disclosures at

7   certain locations, determining whether Dollar failed to provide the

8   required signage is an individualized matter that would depend on

9   the specific location visited and the date of that visit.  See

10  Berger, 741 F.3d at 1069 (holding that varying LDW signage "over

11  time and among the different locations" is a "crucial issue" that

12  the "district court reasonably held must be resolved on an

13  individual rather than a class-wide basis").

14      Plaintiffs also assert that Dollar representatives failed to

15  provide oral disclosures required by Section 1936.  Plaintiffs do

16  not present any evidence, however, demonstrating that Dollar

17  representatives throughout California uniformly failed to provide

18  such disclosures.[5]  Thus, determining whether a Dollar

19  representative failed to provide oral disclosures would require a

20  level of individualized analysis incompatible with a class action.

21  See Berger, 741 F.3d at 1069 ("[O]ral notice given by employees

22  about the optional nature of the damage waiver during a particular

23  rental transaction would necessarily be a unique occurrence.").

24      Even if Plaintiffs had effectively argued for an alleged "per

25  se" violation of Section 1936 as a common claim applicable to all,

26  _____

27  [5]  In fact, the evidence suggests that Dollar's representatives
    generally provide such oral disclosures.  Lainez Dep. at 79:21-
    80:11; Hayes Dep. at 46:12-47:6; ECF No. 126-6 ("Raman Dep.") at

28  30:8-13, 31:7-11; Capsanes Decl. ¶¶ 21, 31; Hayes Decl. ¶ 7; Lainez
    Decl. ¶ 14; Raman Decl. ¶ 8.

United States District Court
For the Northern District of California

this claim would only apply to persons who purchased LDW in California. It would not apply to class members who rented cars from Dollar in Oklahoma or class members who reside in California but did not purchase LDW in California. Further, even with respect to the California class members who made their purchase in California, Section 1936 does not apply to customers who purchased SLI or RoadSafe.

Since there is no "per se" violation applicable to all class members, Plaintiffs' motion turns on whether Plaintiffs can establish a scheme to defraud customers that is sufficiently uniform and widespread that it poses common questions of law and fact. Plaintiffs' theory is that Defendants' reservation system, coupled with its alleged practice of tricking customers into paying add-on fees once they rent their cars, amounts to a "bait and switch" scheme that renders Defendants' quoted reservation prices unfair or fraudulent. Plaintiffs' allegations are vague, but they seem to include the following: omission of "material information to customers" (Reply at 10-12),[6] deceptive marketing efforts (Reply at 11),[7] paying commissions that encourage deceptive behavior by

---

[6] Plaintiffs point out that Dollar does not offer "advice, input or instruction on the coverage [that] consumers likely already have." Reply at 12. There is nothing deceptive about Dollar not providing advice about third party products. Moreover, Dollar representatives explain that "every coverage is different" and a customer should "talk to [his/her] credit card or insurance" carrier. Raman Dep. at 32:15-23, 37:20-38:2, 39:14-23.

[7] Plaintiffs list practices that they characterize as deceptive, such as training agents how to persuasively sell Add-On Products, only offering Add-On products at the rental desk, and training agents not to ask a consumer if they have coverage through another source. Reply at 11. As a general matter, there is nothing obviously or inherently deceptive about these practices. Before class certification can be granted, Plaintiffs must identify the deceptive aspects of these practices with some amount of specificity and then articulate the common issues of fact and law, if any, that apply to the proposed class as a whole.

1  Dollar agents (Mot. at 7), using a dark electronic pad that

2  prevents customers from being able to review the terms of their

3  rental agreement (Mot. at 7), and implementing a customer complaint

4  system designed to deflect complaints about Add-On Products (Mot.

5  at 8).

6      The Ninth Circuit's decision in Berger v. Home Depot USA, Inc.

7  is instructive.  741 F.3d 1061 (9th Cir. 2014).  There, the

8  plaintiff alleged that Home Depot automatically imposed a ten

9  percent surcharge for a damage waiver on tool rentals in its

10  California stores, and although that fee was to be optional, Home

11  Depot's failure to inform customers of their ability to decline the

12  surcharge allegedly violated California's Unfair Competition Law

13  ("UCL"), the California Consumer Legal Remedies Act, and common-law

14  theories of unjust enrichment.  Id.  In affirming the district

15  court's denial of class certification, the Ninth Circuit held that

16  "variance over time and among the different Home Depot locations,

17  and any oral notice given by Home Depot employees about the

18  optional nature of the damage waiver during a particular

19  transaction would necessarily be a unique occurrence."  Id. at

20  1069; see also Szabo v. Bridgeport Machines, Inc., 249 F.3d 672,

21  673-74 (7th Cir. 2001) (rejecting class certification where "[i]t

22  is unlikely that dealers in different parts of the country said the

23  same things to hundreds of different buyers"); In re Life USA

24  Holding Inc., 242 F.3d 136, 146 (3d Cir. 2001) (rejecting class

25  action based on representatives made to 280,000 purchasers by

26  30,000 sales agents); Herskowitz v. Apple, Inc., 301 F.R.D. 460,

27  481 (N.D. Cal. 2014) (rejecting class certification in case

28  ///

United States District Court
For the Northern District of California

1   involving "Apple's variable conduct in the course of diverse,
2   individualized transactions").

3       As in Berger, whether Dollar violated the UCL by engaging in
4   unfair or deceptive practices depends on what particular agents
5   said to particular customers.  Although Plaintiffs claim that
6   Dollar engaged in "uniform" deceptive practices in violation of the
7   UCL, they do not describe with any precision the deceptive aspects
8   of the alleged practices or the extent to which all members of the
9   proposed class were exposed to those practices.  As a result, there
10  is no commonality.  See Herskowitz, 301 F.R.D. at 476 (holding that
11  a business practice that allegedly violates the UCL must be
12  "amenable to some degree of precise definition" or the commonality
13  analysis will "devolve into an individualized inquiry into
14  [Defendants'] behavior in the course of specific transactions").

15      Commonality also fails as to Plaintiffs' CLRA claim because
16  the CLRA requires that "each potential class member have both an
17  actual injury and show that the injury was caused by the challenged
18  practice."  Mazza, 741 F.3d at 1069.  Plaintiffs' class definition,
19  however, includes individuals who were not injured because they
20  were not deceived or because they benefited from the additional
21  coverage.  Further, although an inference of reliance can sometimes
22  be made, a plaintiff must "point to some type of common proof" of
23  materiality.  Badella v. Deniro Marketing LLC, 2011 WL 5358400, at
24  *7-9 (N.D. Cal. 2011).  Plaintiffs have not pointed to common
25  proof.  Instead, they allege facts that apply only to some
26  customers, at some locations, some of the time.

27      Likewise, there is no commonality as to Plaintiffs' OCPA claim
28  because Plaintiffs do not provide any evidence of uniform unlawful

United States District Court
For the Northern District of California

1    conduct across all of the transactions that took place in Oklahoma.

2    Nor do they provide evidence of class-wide "loss or injury

3    resulting from a violation of the [OCPA]."  Walls v. American

4    Tobacco Co., 11 P.3d 626, 630 (Okla. 2000).

5        Finally, the individualized inquiries at issue in the case

6    defeat commonality as to the Plaintiffs' breach of contract and

7    unjust enrichment claims.  While Plaintiffs allege that an on-line

8    reservation is a contract that is breached by additional products

9    sold at the rental counter, the parties are free to change a prior

10   agreement.  Whether a class member agreed to make a change to the

11   agreement is an individualized question.[8]  Similarly, whether a

12   sale of Add-On Products is unjust is an individualized question

13   that focuses on the individualized circumstances of the sales based

14   on the oral transactions between the class members and the Dollar

15   agents.  See Berger, 741 F.3d at 1070 ("Whether receipt of funds

16   for the damage waiver was unjust or inequitable . . . necessarily

17   rests on individualized determinations . . . [including the] oral

18   representations from employees.").

19       The cases cited by Plaintiffs are distinguishable.  In the

20   Schwartz case, the court found that commonality could be shown

21   because the plaintiff "will be able to prove this element using

22   common evidence given the fact that Avis entered into a standard

23   form contract . . . over the class period and that the surcharge

24   information was presented in a similar manner to most Avis

25   customers for that period."  Schwartz v. Avis Rent A Car System,

26   LLC, No. 11-4052 (JLL), No. C 10-03908 CRB, 2014 WL 4272018, at *9

27

28   [8] Further, many members of the proposed class did not reserve a
     rental ahead of time, and most did not use Dollar's website.  As a
     result, there was no preexisting contract for those customers.

1   (D.N.J. Aug. 28, 2014).  In <u>Sobel</u>, the court found common questions

2   where the class members' claims arose "out of Hertz's standard

3   practice of quoting and charging unbundled [surcharge for airport

4   concession fees] at Nevada airports."  <u>Sobel v. Hertz Corp.</u>, 291

5   F.R.D. 525, 541 (D. Nev. 2013).  In contrast, the information

6   regarding the Add-On Products in this case was not presented

7   through a contract applicable to all class members or in a

8   standardized way such as through a script.[9]  The evidence shows

9   that what the class members were told or understood regarding the

10  products, and their reasons for purchasing the products, could have

11  varied greatly depending on their individualized communications

12  with Dollar agents.

13      For these reasons, the Court finds that the commonality

14  requirements of Rule 23(a) have not been met.

15      **3.   <u>Typicality</u>**

16      Typicality requires that "the claims or defenses of the

17  representative parties are typical of the claims or defenses of the

18  class."  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit has

19  interpreted the typicality requirement permissively.  For example,

20  although class representatives' claims must be "reasonably co-

21  extensive with those of absent class members[,] they need not be

22  substantially identical."  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011,

23  1020 (9th Cir. 1998).  "In determining whether typicality is met,

24  the focus should be on the defendants' conduct and plaintiff's

25  _____

26  [9] Plaintiffs make reference to scripts throughout their motion and
    reply and cite to training materials that instruct Dollar agents on
27  how to persuade customers to purchase Add-On Products.  Plaintiffs
    fail to identify, however, the deceptive aspects of these
28  "scripts," nor do they establish that all class members were
    exposed to them.

United States District Court
For the Northern District of California

legal theory, not the injury caused to the plaintiff.  Typicality does not require that all class members suffer the same injury as the named class representative."  <u>Simpson v. Fireman's Fund Ins. Co.</u>, 231 F.R.D. 391, 396 (N.D. Cal. 2005).  Typicality is not satisfied, however, when "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 399 (6th Cir. 1998). Moreover, "[c]ourts of appeal have held that unique defenses bear on . . . typicality."  <u>In Re Hurethane Antitrust Litig.</u>, 251 F.R.D. 629, 642 (D. Kan. 2008) (citing <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 296 (3rd Cir. 2006)); <u>see also</u> <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (holding that the typicality requirement precludes certification "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it").

The requirement of typicality has not been met for many of the same reasons that the requirement of commonality was not met. Because there are not sufficient legal and factual issues common to the class, Plaintiffs' cases are not typical of class members. This makes sense given that "[t]he commonality and typicality requirements tend to merge."  <u>Gen. Telephone Co. v. Falcon</u>, 457 U.S. 147, 157 n.13 (1982).  "Both serve as guideposts for determining whether [in] the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  <u>Id.</u>

///

**United States District Court**
For the Northern District of California

1    The named Plaintiffs are also not typical of the other class
2 members as a whole because they are subject to unique factual
3 circumstances and defenses such that proof of their own claims
4 would not necessarily prove the other class members' claims.
5 Plaintiffs' motion argues that class members were deceived into
6 purchasing the Add-On Products as a result of deceptive sales
7 techniques and omitted disclosures.  However, neither named
8 Plaintiff alleges that she was misled into purchasing the Add-On
9 Products.  Rather, Ms. Tool and Ms. McKinnon both claim they knew
10 they did not wish to purchase the Add-On Products, expressly
11 declined to purchase the Add-On Products at the counter, but were
12 charged for Add-On Products nevertheless.  That is a fundamentally
13 different set of facts from Plaintiffs' averments on behalf of the
14 class as a whole, which center on alleged practices (primarily a
15 failure to provide disclosures) that induced class members to
16 purchase Add-On Products that they would not have otherwise
17 purchased.

18    Plaintiffs argue that their claims "are typical of the claims
19 of the Class because all Dollar customers in California and
20 Oklahoma that purchased Add-On Products were subjected to Dollar's
21 uniform advertising and sales practices."[10]  Mot. at 20.
22 California and Oklahoma customers, however, were not exposed to
23 uniform advertising and sales practices.  For example, most class
24 members did not use Dollar's website.  Further, most Dollar
25 ///

26
27 [10] Plaintiffs cannot satisfy the requirements of Rule 23 by stating
in conclusory fashion that Dollar engaged in "uniform advertising
28 and sales practices."  They must be specific, and they must provide
evidence to support their claims.

**United States District Court**
For the Northern District of California

locations in California provided disclosures orally and on rental contracts, contract sleeves, signs placemats, and other materials.

There are various other typicality problems.  Plaintiff Tool received a refund for her purchase.  In a case against Dollar involving an identical set of facts, the District of Colorado found in that a plaintiff who received a refund does not satisfy the typicality requirement because the refund "negat[es] any claimed injury."  <u>Friedman v. Dollar Thrifty Auto. Grp., Inc.</u>, 304 F.R.D. 601, 612 (D. Colo. Jan. 27, 2015).  Further, neither Ms. McKinnon nor Ms. Tool purchased all three products at issue.  <u>See Wiener v. Dannon Co., Inc.</u>, 255 F.R.D. 658, 666 (C.D. Cal. 2009) (holding that "named plaintiff that purchased a different product than that purchased by unnamed plaintiffs fails to satisfy the typicality requirement").  This is particularly important given that Defendants' liability as to each product differs as a result of the different regulations and legal theories that apply to each (especially with regard to the disclosure requirements of California Civil Code Section 1936, which only appliy to LDW sold in California).

For these reasons, the Court finds that the typicality requirement of Rule 23(a) has not been met.

### 4.   <u>Adequacy of Representation</u>

This requirement ensures that plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit applies a two-part test to determine the adequacy of class representation.  First, the representative plaintiffs and their counsel must not have conflicts of interest with other class members.  Second, the representative plaintiffs

1   and their counsel must prosecute the action vigorously on behalf of

2   the class.  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir.

3   2003).

4        This factor is satisfied as to Plaintiffs' law firm, Whatley

5   Kallas, LLP, an experienced consumer class action firm.  Further,

6   Plaintiffs' counsel possess the skill, time, and resources needed

7   to pursue this case to resolution, and they have vigorously

8   prosecuted this action on the Class's behalf.

9        Plaintiffs are not adequate representatives, however.  As

10  already discussed, Plaintiffs have conflicts with other class

11  members due to their unique factual circumstances and the unique

12  defenses Defendants will likely assert against them that are not

13  applicable to the class as a whole.

14       For these reasons, the Court finds that the adequacy of

15  representation requirement of Rule 23(a) has not been met.

16       **C.   <u>Rule 23(b) Requirements</u>**

17       In addition to satisfying the requirements of Rule 23(a), a

18  class action must fit at least one of the categories defined in

19  Rule 23(b).  Plaintiffs assert that this class action qualifies

20  under Rule 23(b)(2) and Rule 23(b)(3).

21            **1.   <u>Rule 23(b)(2)</u>**

22       Rule 23(b)(2) states that "a class action may be maintained if

23  Rule 23(a) is satisfied and if . . . the party opposing the class

24  has acted or refused to act on grounds that apply generally to the

25  class, so that final injunctive relief or corresponding declaratory

26  relief is appropriate respecting the class as a whole."  Rule

27  23(b)(2) does not authorize class certification therefore in the

28  context of "diverse, individualized transactions" that vary

**United States District Court**
For the Northern District of California

1    "depending on the specific facts giving rise to the individual

2    customer's claim." Herskowitz, 301, F.R.D. at 481.  Further, Rule

3    23(b)(2) "does not authorize class certification when each class

4    member would be entitled to an individualized award of money

5    damages." Dukes, 131 S. Ct. at 2557.  Nor is certification under

6    Rule 23(b)(2) permitted where plaintiffs seek monetary relief for

7    the class and such relief is not merely incidental to the

8    injunctive or declaratory relief.  Kanter v. Warner-Lambert Co.,

9    265 F.3d 853, 860 (9th Cir. 2001); see also Robertson v. North

10   American Van Lines, No. C-03-2397, 2004 WL 5026265, *4 (N.D. Cal.

11   2004) (holding that injunctive relief must be the "primary relief

12   sought").

13       As already discussed, liability in this case turns on

14   individualized interactions between Dollar agents and customers

15   involving unique facts and defenses that make it unsuitable for

16   certification under Rule 23(b)(2).  Algarin v. Maybelline, LLC, 300

17   F.R.D. 444, 459 (N.D. Cal. 2014) (denying Rule 23(b)(2)

18   certification because the facts would require an "assessment of

19   each class member's claim . . . [such as] which products she

20   purchased").  Certification under Rule 23(b)(2) is also

21   inappropriate because Plaintiffs primarily seek individualized

22   monetary damages, including "actual, compensatory, statutory,

23   and/or exemplary damages" and "restitution of all monies paid for

24   unwanted products." TAC ¶¶ 27, 38.  Finally, certification under

25   Rule 23(b)(2) is inappropriate because "Plaintiffs have not

26   adequately defined what injunctive/declaratory relief is applicable

27   to the entire class, i.e., Plaintiffs have not specified the class-

28   ///

1   wide injunction that would be appropriate to all class members."

2   _Friedman_, 304 F.R.D. at 614.

3           **2.   Rule 23(b)(3)**

4       Rule 23(b)(3) requires the Court to find that "questions of

5   law or fact common to class members predominate over any questions

6   affecting only individual members, and that a class action is

7   superior to other available methods . . . ." Fed. R. Civ. P.

8   23(b)(3).   The burden of demonstrating that common questions

9   predominate lies with the party seeking class certification.

10  _Zinser v. Accufix Research Inst., Inc._, 253 F.3d 1180, 1188 (9th

11  Cir. 2001).

12      As already discussed, the Plaintiffs have not met the

13  commonality requirements of Rule 23(a).   Because "[t]he commonality

14  preconditions of Rule 23(a)(2) are less rigorous than the companion

15  requirements of Rule 23(b)(3)," the Court need not provide

16  additional analysis on predominance.   _Hanlon_, 150 F.3d at 1019.

17  Thus, the Court finds that questions of law or fact common to class

18  members do not predominate over questions affecting only individual

19  members.   _See generally_, _Berger_, 741 F.3d 1061 (affirming the

20  district court's denial of class certification because common

21  questions did not predominate over individual issues where

22  liability turned on the oral representations made during each

23  transaction); _Stearns v. Ticketmaster Corp._, 655 F.3d 1013, 1020

24  (9th Cir. 2011) ("We do not, of course, suggest that predominance

25  would be shown in every California UCL case. For example, it might

26  well be that there was no cohesion among the members because they

27  were exposed to quite disparate information from various

28  representatives of the defendant."); _Friedman_, 304 F.R.D. at 616

1   (rejecting plaintiffs' argument "that the case involves standard

2   sales practices that are uniform to all class members").

3       **D.    Rule 23(c)(4) Requirements**

4       Rule 23(c)(4) states that "[w]hen appropriate, an action may

5   be brought or maintained as a class action with respect to

6   particular issues."  The rule "authorizes certification even if

7   common issues do not predominate over the individual questions

8   because the common issues can be separated by the court and

9   certified for independent treatment."  Emig v. Am. Tobacco Co.,

10  Inc., 184 F.R.D. 379, 395 (D. Kan. 1998).  For example, a class may

11  be certified for liability purposes only, leaving individual

12  damages calculations to subsequent proceedings.  See Slaven v. BP

13  Am., Inc., 190 F.R.D. 649, 658 (C.D. Cal. 2000).

14      As discussed above, individualized damage and liability issues

15  pervade this matter.  Because no efficiency will be achieved in

16  light of those issues, Plaintiffs' motion to certify under Rule

17  23(c)(4) is DENIED.

18

19  **IV.  CONCLUSION**

20      For the reasons set forth above, Plaintiffs' motion for class

21  certification is DENIED WITHOUT PREJUDICE.  Plaintiffs may, if they

22  choose, file a new motion for class certification with a revised

23  class definition within thirty (30) days of this order.  As set

24  forth above, Plaintiffs' revised definition must identify common

25  issues of fact and law -- for example, by identifying specific

26  deceptive practices applicable to all members of the proposed

27  class.  The revised definition cannot be overbroad, and the claims

28  of the named Plaintiffs must be typical of the class as a whole.

Plaintiffs revised definition must also satisfy the requirements of
Rule 23(b).

Defendants' motion to exclude the expert testimony of Donald
Lichtenstein is also DENIED as moot.

IT IS SO ORDERED.

Dated:  July 27, 2015          

UNITED STATES DISTRICT JUDGE