UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **SANDRA MCKINNON, ET AL.,**<br><br>          Plaintiffs,<br><br>     v.<br><br>**DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., ET AL.,**<br><br>          Defendants. | Case No. 12-cv-04457-YGR<br><br>**ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 133 |

Plaintiffs[1] bring this putative class action again defendants Dollar Thrifty Automotive Group, Inc., Dollar Rent a Car, Inc., and DTG Operations, Inc. The gravamen of the case concerns defendants' alleged practice of selling collision or liability damage waiver policies ("LDW") in connection with vehicle rentals to plaintiffs without providing adequate notice (through signage, oral statements, and otherwise) that the coverage might be duplicative of other policies (e.g., through auto insurance or credit card protection plans) already held by plaintiffs.

Plaintiffs now move for class certification a second time, having been denied certification upon their first motion prior to the reassignment of this case to the undersigned. (Dkt. No. 133.)[2]

---

[1] The putative class action was instituted by Sandra McKinnon. (Dkt. No. 1.) The First Amended Complaint added Kristen Tool as a named plaintiff. (Dkt. No. 26.) On November 18, 2015, the Court granted the unopposed request by Melinda Basker and Chanh Tran to intervene in the case and file a Fourth Amended Complaint naming them as Plaintiff-Intervenors. (Dkt. No. 148.) For purposes of clarity, the Court herein refers to all four individuals collectively as "plaintiffs."

[2] Plaintiffs rely largely on the same evidence used in connection with their initial class certification motion. They present some new evidence, however, including declarations from counsel (and attached photographs) regarding visits to certain Dollar locations in California in 2015, demonstrating a lack of LDW signage at the counter; declarations from new plaintiffs Basker and Tran affirming their allegations in the complaint; and interrogatory responses from defendants indicating they derive substantial revenue from LDW sales. (Dkt. Nos. 133-1 through 133-4.) In reply, plaintiffs present additional evidence for the first time, including deposition transcript excerpts relating to the absence of LDW signage. (Dkt. No. 159-1.) In light of these circumstances, the Court **GRANTS** defendants' request to file a sur-reply (Dkt. No. 162) addressing

Plaintiffs assert their claims "on behalf of themselves and a Class of persons comprised of all consumers either residing or who rented cars in California, Oklahoma and such other states within the United States the Court finds appropriate who paid for [LDW], insurance or other products from Dollar that they either declined or were charged for without obtaining proper consent during the past four years." (Dkt. No. 150 ("4AC") ¶ 41.) Specifically, they now seek certification of two narrower classes:

> Class 1:
> All residents of the United States who, since January 1, 2009, obtained a car rental from Dollar Rent A Car at one of the following locations in the State of California: Los Angeles International Airport, San Diego International Airport, John Wayne (Orange County) International Airport, or any other Dollar rental car airport location in California that did not post the signage or obtain from individuals the initials required by Cal. Civ. Code Sections 1936(g)(1) and (2), were charged for Loss Damage Waiver ("LDW") and who had his or her own automobile insurance coverage that applied to a rental motor vehicle or used a credit card that provided automobile insurance coverage that applied to the use of a rental motor vehicle.
>
> Class 2:
> All residents in the State of California who, since January 1, 2009, made a car reservation through www.dollar.com in California, were charged for LDW and who had his or her own automobile insurance coverage that applied to a rental motor vehicle or used a credit card that provided automobile insurance coverage that applied to the use of a rental motor vehicle.
>
> Excluded from these Class 1 and Class 2 are persons: (a) who incurred LDW as part of a pre-paid tour reservation or previously approved LDW as part of a Dollar membership program, (b) who made a claim with Defendants and received full coverage under the LDW provision, or (c) who received a full refund of all LDW charges with interest per C.C.P. Section 3287.

(4AC ¶ 41.)

Plaintiffs move to certify the classes pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3). They put forth Basker as representative of Class 1 and McKinnon and Tran as representatives of Class 2, with the Whatley Kallas LLP firm as class counsel.

---

these new matters and has considered the sur-reply in question (Dkt. No. 162-3) in ruling on the instant motion. The Court **STRIKES** the supplemental declaration filed by plaintiffs after briefing was concluded and without first seeking leave of Court. (Dkt. No. 164.) Regardless, the material submitted in the supplemental declaration would not have impacted any of the findings herein.

Having carefully considered the papers submitted,[3] the record in this case, and the arguments of counsel, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff Sandra McKinnon instituted this putative class action on August 24, 2012, accusing defendants of various claims arising out of defendants' purported "scheme to defraud consumers" by tricking them into purchasing unnecessary add-on policies (including, but not limited to, LDW) when renting defendants' vehicles. (*See* Dkt. No. 1 ¶ 10.) Plaintiffs' Third Amended Complaint, filed by McKinnon and Tool, included the following class definition:

> [A]ll consumers either residing or who rented cars in California, Oklahoma and such other states within the United States the Court finds appropriate who paid for CDW, insurance or other products from Dollar that they either declined or were charged for without obtaining proper consent during the past four years.

(Dkt. No. 79 ¶ 27.)

On December 30, 2014, plaintiffs moved for certification of two classes, a California Class and an Oaklahoma Class, with the following definitions:

> all persons in the United States either residing in or who rented cars in [California or Oklahoma, respectively] from Dollar since January 1, 2009 and were charged for Loss Damage Waiver ("LDW"), SLI and/or Road Safe by Dollar other than as part of a pre-paid tour reservation.

(Dkt. No. 92 at 1.)

On July 27, 2015, Judge Samuel Conti denied plaintiffs' initial motion for class certification with leave to file an amended motion. (Dkt. No. 132 ("Conti Order").) Judge Conti found the proposed definition overbroad and neither precise nor ascertainable. (Conti Order at 16.) Judge Conti also found that the proposed class failed to meet the commonality or typicality

---

[3] Defendants filed two administrative sealing motions in connection with their briefing on class certification and their related *Daubert* motion. (Dkt. Nos. 152, 154.) The material in question was subject to an earlier motion to seal that was granted before reassignment to the undersigned and includes purportedly trade secret business information, including internal sales metrics. The Court finds the requests are sufficiently justified under the applicable "good cause" standard and therefore **GRANTS** the motions to seal the designated, narrowly-tailored excerpts of the documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006).

requirements of Federal Rule of Civil Procedure 23(a) and that plaintiffs McKinnon and Tool were not adequate representatives. (*Id*. at 23-27.)

Thereafter, plaintiffs filed a Fourth Amended Complaint and an amended motion for class certification. The Fourth Amended Complaint asserts seven causes of action: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), under the "unlawful" prong, by violating various provisions of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), violating Cal. Civ. Code §§ 1936(g), (j), (k), and (n), and for other purportedly illegal conduct; (2) violation of the UCL through purportedly "unfair" practices; (3) violation of the UCL through purportedly "fraudulent" business practices; (4) violation of the CLRA; (5) violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 §§ 751 *et seq*.; (6) breach of contract and breach of the covenant of good faith and fair dealing; and (7) a claim for declaratory relief.[4]

Plaintiffs generally allege defendants have undertaken a "scheme to defraud consumers" by selling LDW which may be duplicative of policies already held by the customer (e.g., through their cardholder agreements or auto insurance policies). (4AC ¶ 14.) In some instances, these sales allegedly occur even though customers have "specifically declined" to purchase the add-on policies. (*Id*.) Moreover, in California, defendants have purportedly sold LDW in violation of California Civil Code section 1936, which regulates the sale of LDW by car rental companies within the state. (*Id*.)

Among other requirements, California Civil Code section 1936(g)(1) provides that the rental company selling LDW must "clearly and conspicuously disclose" certain information both "in the rental contract or holder in which the contract is placed" and "in signs posted at the place, such as the counter, where the renter signs the rental contract." Specifically, the notices must explain the following:

> (A) the nature of the renter's liability, such as liability for all collision damage regardless of cause, (B) the extent of the renter's

---

[4] At the hearing, plaintiffs confirmed they are not seeking certification of the breach of contract or Oklahoma state law claims.

4

> liability, such as liability for damage or loss up to a specified amount, (C) the renter's personal insurance policy or the credit card used to pay for the car rental transaction may provide coverage for all or a portion of the renter's potential liability, (D) the renter should consult with his or her insurer to determine the scope of insurance coverage, including the amount of the deductible, if any, for which the renter is obligated, (E) the renter may purchase an optional damage waiver to cover all liability, subject to whatever exceptions the rental company expressly lists that are permitted [elsewhere under the statute], and (F) the range of charges for the damage waiver.

Cal. Civ. Code § 1936(g)(1).[5]

Additionally, the rental company must orally disclose "that the damage waiver may be duplicative of coverage that the customer maintains under his or her own policy of motor vehicle insurance." Cal. Civ. Code § 1936(g)(2). The renter must initial a section of the contract waiving or accepting LDW. *Id*. Those initials shall also serve to acknowledge receipt of the requisite oral disclosure and feature an adjacent disclosure that LDW is optional. *Id*. Additionally, the contract must "include a clear and conspicuous written disclosure that the damage waiver may be duplicative of coverage that the customer maintains under his or her own policy of motor vehicle insurance." *Id*.

According to the operative complaint, plaintiff McKinnon, from her home in San Ramon, California, made a reservation to pick up a rental car from defendants in Tulsa, Oklahoma in 2012. (4AC ¶ 15.) The online system allegedly did not contain any of the disclosures referenced in California Civil Code § 1936. (*Id*.) When she picked up the car in Tulsa, she declined the sales agent's offer of LDW, explaining she was covered by other policies. (*Id*. ¶ 16.) Using an electronic signature pad, she initialed areas she was told would signify declining LDW. (*Id*.) She was handed her rental agreement and receipt in a folder. (*Id*.) Upon returning the vehicle, she was informed that she had "accepted" and would be charged for LDW. (*Id*.) Defendants refused to issue a refund. (*Id*.)

In 2013, plaintiff Tran made an online reservation, "having reviewed www.dollar.com," to

---

[5] The Court notes that differing requirements are applied by the statute in the case of rental company membership programs.

pick up a car from defendants in Minneapolis-St. Paul, Minnesota. (4AC ¶ 28.)[6] The online system did not include LDW disclosures. (*Id.* ¶ 29.) When he picked up the vehicle, the agent allegedly told him that he was required under Minnesota law to purchase LDW. (*Id.* ¶ 30.)

Finally, plaintiff Basker made an online reservation to pick up a car from defendants in San Diego, California in 2014. (4AC ¶ 20.) When she picked up her vehicle, she purportedly did not see any Section 1936 signage. (*Id.* ¶ 22.) In speaking with the sales agent, she "made it clear she wanted no optional coverages because she had her own insurance." (*Id.* ¶ 24.) She initialed where told on "some screens." (*Id.*) Only after returning the vehicle did she discover she had been charged for LDW. (*Id.* ¶ 25.)

Plaintiffs allege defendants incentivize their employees to sell LDW through commissions. (4AC ¶ 34.) Defendants train their employees on selling "revenue products," including LDW. (*See, e.g.*, Dkt. No. 94-25 at 3-4.) Defendants also train their employees to provide the oral disclosures regarding LDW required by law in California locations and such disclosures are often provided. (*See, e.g.*, Dkt. No. 107-2 ¶ 21; Dkt. No 162-5 at 81:18-83:3.)[7] Since at least 2009, defendants' California locations also include LDW-related disclosures in their rental agreements. (Dkt. No. 110-14 ¶¶ 7-8.) Often, but not always, agents would highlight the LDW provision of the agreements and have customers initial it. (*See, e.g.*, Dkt. No. 162-4 at 26:13-18.) LDW signs are posted in California locations, including near the rental counter, but have been occasionally absent due to remodeling, relocations, cleaning, or inadvertence. (*See, e.g.*, Dkt. No. 107-3 ¶ 22 (regarding the San Francisco Airport location), Dkt. No. 107-4 ¶ 14 (regarding the Oakland location); Dkt. No. 107-5 (regarding the San Jose Airport location); Dkt. No. 162-4 at 36:16-21 (regarding the Orange County location); Dkt. No. 162-5 at 15:2-16, 17:2-22, 18:11-25 (regarding the San Diego locations); Dkt. No. 162-6 at 19:4-20:13 (regarding the Los Angeles Airport

---

[6] Plaintiffs' carefully worded allegations surrounding Tran's reservation is apparently to avoid acknowlegement of the fact, discussed more fully below, that he apparently did not place his reservation on the dollar.com website, but rather through a third-party site.

[7] The fact that plaintiffs' expert, Donald Lichtenstein, believes commissions would incentivize sales agents against providing this oral disclosure does not preclude a finding, in light of the evidence, that such disclosures were nevertheless offered in many instances.

location).)  During three visits to California locations by plaintiffs' counsel in late 2014 and early 2015, counsel observed no LDW signage on or near the counters.[8] (Dkt. No. 133-2.)

## II.  LEGAL STANDARD

Rule 23, which governs class certification, contains two sets of distinct requirements plaintiffs must meet before the Court may certify either class.  First, plaintiffs must meet all of the requirements under Rule 23(a).  Second, each class must meet at least one of the asserted prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Courts refer to these four requirements as "numerosity, commonality, typicality and adequacy of representation."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement: that the members of the class are readily ascertainable.  *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D.Cal. 2011) ("[T]he party seeking certification must demonstrate that an identifiable and ascertainable class exists."); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666. 672 (N.D.Cal. 2011).  "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement . . . [that] its members can be ascertained by reference to objective criteria . . . [and] the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D.Cal. 2010) (internal citations and quotations omitted), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).

Once plaintiffs establish that the threshold requirements of Rule 23(a) are met, plaintiffs

---

[8] The Court need not address whether the attorney could even serve as a trial witness.

7

1  must then show "through evidentiary proof" that a class is appropriate for certification under one
2  of the provisions in Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

3  Rule 23(b)(2) requires that a plaintiff show that "the party opposing the class has acted or
4  refused to act on grounds that apply generally to the class, so that final injunctive relief or
5  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.
6  23(b)(2).

7  Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to
8  class members predominate over any questions affecting only individual members, and that a class
9  action is superior to other available methods for fairly and efficiently adjudicating the
10 controversy." Fed. R. Civ. P. 23(b)(3).  The shared legal or factual issues must be of sufficient
11 importance to the case that the Court is convinced that the most efficient, fair, and sensible method
12 of adjudication is through a class action.  CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL Ch. 10-
13 C § 10:274 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).  Therefore, the predominance
14 inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by
15 representation." *Hanlon. v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting
16 *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks omitted)).
17 Where questions common to class members represent significant issues that can be resolved in a
18 single adjudication, "there is clear justification for handling the dispute on a representative rather
19 than on an individual basis." *Id.* (internal quotation marks and citation omitted).

20 "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap
21 with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust
22 Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,
23 2551 (2011)); *see also Mazza*, 666 F.3d at 588.  The Court considers the merits to the extent that
24 they overlap with the Rule 23 requirements.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983
25 (9th Cir. 2011).  The Court must resolve factual disputes to the extent "necessary to determine
26 whether there was a common pattern and practice that could affect the class *as a whole*." *Id.*
27 (emphasis in original).  "When resolving such factual disputes in the context of a motion for class
28 certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto*

8

*v. Verizon Cal., Inc.*, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982). Ultimately, the district court must exercise its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

**III. DISCUSSION**

As to Class 1, defendants argue the motion fails on grounds of commonality, typicality, and adequacy of representation by the named plaintiffs, as well as in regards to ascertainability of the class. As to Class 2, defendants argue the lack of a named plaintiff who falls within the definition warrants denial of certification. The Court addresses each issue in turn.

**A. Class 1: Rule 23(a) Threshold Requirements**

**1. Numerosity**

The numerosity requirement under Rule 23(a)(1) is met here and defendants do not contend otherwise. Plaintiffs submit evidence that roughly 1.4 million consumers purchased LDW from defendants during the class period, suggesting many thousands purchased LDW at a California location during the relevant time period.[9] Thus, the Court agrees that numerosity is satisfied.

**2. Commonality**

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. The existence of a common question itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification . . . is. . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. at 2551. Under the commonality inquiry, "[p]laintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide

---

[9] This calculation likely overstates, to some extent, the number of potential class members, as the estimate did not account for the likelihood of multiple transactions by certain customers.

resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2556).

Here, plaintiffs propose two common questions as suitable for determination on a classwide basis. The first is whether defendants provided "the disclosures and material information required by the applicable law in a timely, clear, and conspicuous manner, if at all." (Mot. at 14-15.) The second is the appropriate relief to address such practices, if they are found. (Mot. at 15.) Defendants do not contest that the threshold fundamental *question* is common to all class members. Rather, defendants argue that common *evidence* does not exist to reach a common *answer* in "one stroke" as to all class members. The Court agrees.

As detailed above, defendants practices were not uniform. The placement of signs, the provision of oral disclosures, and initialing procedures all varied temporally and by location. Judge Conti reached the same finding, noting that "determining whether Dollar failed to provide the required signage is an individualized matter that would depend on the specific location visited and the date of that visit." (Conti Order at 18.) The Ninth Circuit similarly held that "variance [of signage] over time and among the different Home Depot locations throughout California is a crucial issue, which the district court reasonably held must be resolved on an individual rather than a class-wide basis." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (finding "any oral notice given by Home Depot employees about the optional nature of the damage waiver during a particular rental transaction would necessarily be a unique occurrence" requiring individualized proof); *see also Knapp v. AT & T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 944 (2011) (affirming a denial of class certification based on lack of commonality in a putative class action asserting UCL and CLRA claims where "an individual inquiry would be required to determine whether the representations received by each proposed class member constituted misrepresentations, omissions, or nondisclosures").

While some common evidence might exist specific to each location and within specific timeframes, plaintiffs have not put forward a more narrow class subject to such proof.

### 3. Typicality

Next, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*.

Here, Basker's claims are not typical of the class claims because of the varied presence or absence of signage, oral disclosures, and initialing discussed above. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

Her claims are also not typical for the additional reason that her theory of harm is entirely different from the class theory. As detailed above, Basker alleges that she specifically declined LDW because she knew she was otherwise insured, but was nevertheless fraudulently charged for LDW. The complaint does not allege a systematic practice of such fraud, and instead the class-wide allegations appear focused on defendants' purported failure to provide the statutorily required disclosures. Thus, each of Basker's claims differs substantially from those of putative class members. Basker herself may lack standing to assert a claim premised merely on the absence of mandatory LDW disclosures, because—on the face of the pleadings—she cannot demonstrate that the absence of such disclosures caused her purported injury. At the same time, the only claims apparently susceptible to class-wide treatment are premised upon the absence of such signage injuring absent class members who—unlike Basker—failed to opt out of LDW. For the typicality requirement to be satisfied, the representative plaintiff would need to be similarly situated to the absent class members by having intentionally purchased LDW in circumstances in which the requisite disclosures were lacking.

11

**4. Adequacy of Representation**

The final hurdle to certification under Rule 23(a) requires plaintiffs to demonstrate that they will fairly and adequately protect the interests of their class. Fed. R. Civ. P. 23(a)(4). To determine whether plaintiffs will be adequate class representatives, the Court must consider "(1)[whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if]the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Judge Conti previously held that plaintiffs' counsel were adequate representatives and defendants do not contest that point. However, the Court finds that Basker is not an adequate representative for the class claims in light of the unusual factual circumstances surrounding her purchase of LDW—namely, that she explicitly declined the policy but was nevertheless charged for it. Plaintiffs have not demonstrated that evidence of such fraudulent conduct will be forthcoming in the case of any absent class members. Instead, it appears that the case would focus on whether sufficient statutory disclosures were provided regarding LDW. Thus, Basker's individual case involves additional claims, a different legal theory, and is susceptible to different defenses from the claims of other putative class members, rendering her inadequate as a representative for Class 1.

**B. Class 1: Ascertainability**

To establish ascertainability for purposes of class certification, plaintiffs must demonstrate that members of the proposed class are readily identifiable by objective criteria and that it is administratively feasible to determine whether a particular person is a member of the class. *See Xavier*, 787 F. Supp. 2d at 1089.

Here, defendants argue members of the proposed Class 1 are not readily identifiable because doing so would require a factual determination, for all class members, as to whether they: (1) held duplicative third-party coverage at the time in question; (2) purchased LDW on a date, time, and location where the statutorily required LDW signage was lacking; and (3) were asked to initial the appropriate section of the rental agreement. The Court agrees with defendants that Class 1 is not ascertainable based on the second and third grounds. The Court addresses those grounds

12

first.

With respect to ascertaining whether a particular individual purchased LDW in circumstances in which the requisite disclosures were lacking, for the same reasons discussed above as to commonality and typicality, the Court agrees that it is not feasible to resolve this question on a class-wide basis. *See Tidenberg v. Bidz.com*, No. CV 08-5553 PSG FMOX, 2010 WL 135580, at *3 (C.D. Cal. Jan. 7, 2010) (rejecting a proposed class definition that "essentially requires resolving the merits of each individual's claim" in order to determine membership in the class). Moreover, most individuals would not reliably recall the presence or absence of such notice years later, and so self-identification on a claims form would not be a reasonable solution.

With regard to determining which class members were told to initial the rental agreement, defendants have presented evidence that certain customers were asked to initial paper agreements, but apparently the customers and not defendants kept those initialed agreements. It is unlikely that many potential class members would maintain copies of the rental agreement or recall years later whether they were asked to initial the printout. Thus, ascertainability on this basis is also lacking.

Given the Court's ruling on the other two grounds, it need not address defendants' contention that a particular class member was not harmed if she did not hold a duplicative policy at the time in question, and that it would not be administratively feasible to determine which class members held such policies. *See Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014) (affirming a district court's finding that a putative class was not ascertainable where there was "no reasonably efficient way to determine which of the hundreds of thousands of individuals" in a class used a personal credit card, instead of a business card, for the relevant transaction).

**C.     Class 2: Adequacy or Typicality of Representation**

As noted above, defendants argue certification of Class 2 should be denied because the "sole" proffered representative for the class—plaintiff Tran—does not fall within the proposed class definition. (Dkt. No. 153 ("[T]he sole representative Plaintiffs identify for this class, Mr. Tran, made his reservation on a website operated by a third party, Expedia.").) In such cases, a class should not be certified as adequate representation is lacking. *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (discussing "the fundamental requirement that

13

1   the representative plaintiff must be a member of the class he represents").

2   Class 2 covers only those individuals who "made a car reservation through
3   www.dollar.com in California." Defendants contend Tran in fact made his reservation through
4   Expedia, not www.dollar.com. (Dkt. No. 152-62 (declaration by Expedia employee attaching
5   company records showing Tran's November 2013 reservation was made through Expedia); Dkt.
6   No. 152-64 ¶¶ 7-10 (declaration by a Dollar employee noting Dollar's records show Tran's
7   November 2013 reservation was made through Expedia).) Plaintiffs appeared to dispute this
8   contention in their reply brief but, at the hearing, conceded that Tran is not a member of the
9   proposed Class 2.

10  The Court finds that the evidence supports a finding that Tran did not make a reservation
11  through www.dollar.com. In light of this finding, Tran is not an adequate class representative.
12  Moreover, even if the evidence on this point were inconclusive, the typicality requirement of Rule
13  23(a) would not be satisfied because it is "predictable that a major focus of the litigation will be on
14  a defense unique to" Tran—namely, that he did not actually make a reservation through
15  www.dollar.com. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

16  As noted above, plaintiffs conceded Tran is not a member of Class 2, but sought class
17  discovery to find another representative. (*See* Dkt. No. 159 at 11 n.5 ("If the Court finds Mr. Tran
18  could not represent Class 1 [*sic*], Plaintiffs should be permitted to conduct discovery from Class
19  members.").) However, upon its further review of the motion, the Court discovered that Tran was
20  not the "sole" named plaintiff proffered for Class 2—plaintiffs also put forward McKinnon. (Dkt.
21  No. 133 at 25 ("[T]he Court should enter an order . . . appointing Ms. Basker as representative of
22  Class 1 and Ms. McKinnon and Mr. Tran as representatives of Class 2 . . . .").)[10] Thus, the Court
23  conducted an independent review of the voluminous record to determine, in the absence of
24  sufficient briefing or citations to the evidence, whether McKinnon appears to be an adequate
25  representative for the Class. McKinnon's interrogatory responses reveal that she did not

---

[10] Presumably defendants' mischaracterization of the motion, and plaintiffs' failure to correct the record in reply or at the hearing, were the result of inadvertence by the parties.

14

personally visit dollar.com to make a reservation. Instead, her "partner made the on-line reservation at issue on [her] behalf." (Dkt. No. 94-28 at 31.) Under these circumstances, and in the absence of any briefing by plaintiffs addressing this issue, the Court finds plaintiffs have failed to carry their burden of establishing McKinnon as an adequate and typical class representative. McKinnon arguably does not fall within the class definition. Moreover, her claims are subject to unique defenses, including that she lacks standing to assert the claims relating to insufficient disclosures, having specifically declined LDW at the rental location.

Thus, the motion as to Class 2 is **DENIED**. The Court denies plaintiffs' request for additional class discovery at this juncture as this is plaintiffs' second failed attempt at class certification.

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that plaintiffs have not met their burden to put forth sufficient evidence to satisfy each of the threshold requirements for class certification in Rule 23(a). Because the Court finds that the threshold requirements of Rule 23(a) are not met, the Court does not proceed to considering whether a class could be certified under Rule 23(b)(2) or 23(b)(3). Notwithstanding the foregoing, it is possible that a much more narrow class focused on the sole issue of lack of signage for specific locations within a specific time period may be appropriate. Accordingly, the Court **DENIES** plaintiffs' second motion for class certification **WITHOUT PREJUDICE** to the filing of a new motion on the basis identified. Any such motion must be filed by **May 3, 2016**,[11] or plaintiffs shall file a statement explaining their plans to prosecute

---

[11] Given the evidentiary burdens created with plaintiffs' instant motion, the Court **ORDERS** briefing on any further motion to comply with the following requirements: Courtesy copies of the parties' briefs on any new class certification motion shall be delivered to Chambers in binders and on a CD, DVD, or USB drive in Word and PDF format, each including hyperlinks. Specifically, all citations to the evidence shall be made available in hyperlink form; clicking on the hyperlinks shall result in the relevant PDF document opening up to the pages cited. Importantly, although clicking on the hyperlink should jump to the appropriate pin-cited page of the record document, the relevant record document in its entirety should open upon clicking the hyperlink (not merely an excerpt thereof), thus permitting the Court to review the cited material in its full context. The CD/DVD/USB drive label shall include the names of the parties, the case number, and a description of the documents. To meet their burden, plaintiffs must provide specific, pin-cited citations to the evidence and not merely provide conclusory statements about the state of the record. (*See, e.g.*, Dkt. No. 133 (referring, without specific citation, to plaintiffs' declarations).)

this matter further by that same deadline.

The Court **DENIES** as moot defendants' *Daubert* motion regarding the declaration of plaintiffs' expert Donald Lichtenstein (Dkt. No. 155), because certification is not justified even if those opinions are given appropriate weight.

This Order terminates Docket Numbers 133, 152, 154-155, 162.

**IT IS SO ORDERED.**

Dated: March 8, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**